1   JEFFREY M. SHOHET, Bar No. 067529
    jeffrey.shohet@dlapiper.com
2   CHRISTOPHER J. BEAL, Bar No. 216579
    cris.beal@dlapiper.com
3   DLA PIPER LLP (US)
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6   ELIZABETH ROGERS BRANNEN, Bar No. 226234
    elizabeth.brannen@oracle.com
7   500 Oracle Parkway
    Redwood City, CA 94065
8   Tel: 650.506.5200
    Fax: 650.506.7114

9
    Attorneys for Plaintiff
10  Oracle America, Inc.

**FILED**

2010 DEC 10  A 10: 13

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

HRL

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  ORACLE AMERICA, INC.,                 CASE NO. **CV 10   5604**

16          Plaintiff,                    **COMPLAINT FOR DAMAGES AND
                                          INJUNCTIVE RELIEF FOR:**
17      v.
                                          **(1) LANHAM ACT VIOLATION;**
18  MYRIAD GROUP AG,                      **(2) COPYRIGHT INFRINGEMENT;**
                                          **(3) BREACH OF CONTRACT; AND**
19          Defendant.                    **(4) UNFAIR COMPETITION (CAL. BUS. &
                                          PROF. CODE § 17200 et seq.)**

20

21          Plaintiff Oracle America, Inc. ("Oracle America"), through its undersigned attorneys, by

22  and for its Complaint, upon personal knowledge as to its own acts, and on information and belief

23  as to all others based upon its own and its attorneys' investigation, alleges as follows:

24                          **NATURE OF THE CASE**

25          1.      Plaintiff seeks injunctive relief and damages against defendant arising from

26  defendant's repudiation of its obligations under licensing agreements relating to the Java™

27  Technology.  The Java™ Technology comprises and supports a standardized application

28

1    programming environment that affords software developers the opportunity to create and

2    distribute a single version of programming code that is capable of operating on many different,

3    otherwise incompatible systems platforms and browsers.  The Java™ Technology has proven to

4    be an invaluable tool to program developers and product manufacturers and has resulted in

5    efficiencies that have produced significant savings to consumers.  For over eight years, defendant

6    and its predecessors have licensed Java™ Technology from plaintiff and its predecessors for use

7    in the development of software for mobile communication devices.  Defendant recently notified

8    plaintiff that it would no longer abide by the terms of its  Java™ Technology licenses with

9    plaintiff.  Despite its repudiation of its Java™ Technology licenses and refusal to pay the agreed

10   royalties under its Java™ Technology licenses, defendant continues to use plaintiff's protected

11   intellectual property and holds itself out as producing products that are compliant with the Java™

12   Technology covered by its licenses with plaintiff.  In this Complaint, plaintiff seeks relief under

13   the trademark and copyright laws of the United States as well as for breach of contract and unfair

14   competition under California law.

15                               **THE PARTIES**

16         2.        Oracle America, successor-in-interest to Sun Microsystems, Inc. ("Sun"), is a

17   Delaware corporation with its principal place of business in Redwood City, County of San Mateo,

18   State of California.  On or about February 15, 2010, Oracle USA, Inc. merged with and into Sun

19   Microsystems, Inc.  Sun Microsystems, Inc., the surviving corporation, was then renamed "Oracle

20   America, Inc."  Oracle America designs, manufactures, markets, and services network computing

21   infrastructure solutions worldwide.  Oracle America is also the creator, developer, and licensor of

22   Java™ Technology.  The simplicity, cross-platform compatibility, and rapid development cycles

23   provided by the Java™ programming environment significantly increase the productivity of

24   software development and dramatically reduce the costs and burdens of establishing and

25   supporting computer networks.

26         3.        Upon information and belief, Myriad Group AG ("Myriad") is a mobile software

27   company and licensee of Oracle America's Java™ Technology.  It provides browsers, messaging,

28   Java™, social networking, user interfaces and middleware for all types of mobile phones, from

-2-

DLA PIPER LLP (US)
SAN DIEGO          WEST\22134237.5          COMPLAINT

1   low cost handsets to advanced smartphones. Myriad was formed as the result of a merger

2   between Purple Labs and Esmertec AG ("Esmertec"). Esmertec was also a former licensee of

3   Oracle America's, then doing business as Sun. Upon its formation, Myriad became the

4   successor-in-interest to Esmertec's various licenses with Sun. Myriad's principal place of

5   business is in Dubendorf Zurich Switzerland, but it also maintains an office in San Mateo,

6   California.

### JURISDICTION AND VENUE

7

8       4.    This action arises under the Federal Trademark Act of 1946, known as the Lanham

9   Act (15 U.S.C. §§ 1051-1127), and the Federal Copyright Act (17 U.S.C. § 101 et seq.), and is for

10   trademark infringement, unfair competition, and copyright infringement under those statutes and

11   related claims under state law.

12       5.    This Court has subject matter jurisdiction over Oracle America's claims pursuant

13   to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a). The Court also has original subject matter

14   jurisdiction of this action under 28 U.S.C. § 1332(a)(2), in that this is a civil action between a

15   citizen of a State and a citizen of a foreign state.

16       6.    This Court has supplemental jurisdiction over Oracle America's claims arising

17   under the laws of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related

18   to Oracle America's claims under federal law that they form part of the same case or controversy

19   and derive from a common nucleus of operative fact.

20       7.    This Court has personal jurisdiction over Myriad by reason of Myriad's

21   solicitation of and transaction of business within the State of California and the Northern District.

22       8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and

23   § 1400(a) because Myriad is a resident of this judicial district.

### INTRA-DISTRICT ASSIGNMENT

24

25       9.    Pursuant to Civil L.R. 3-2(c), this Intellectual Property Action shall be assigned on

26   a district-wide basis.

27   /////

28   /////

DLA PIPER LLP (US)
SAN DIEGO

WEST\22134237.5    COMPLAINT

1

**FACTUAL ALLEGATIONS**

2       10.    One of the principal goals of the computer industry has been to achieve a universal

3 programming environment whereby different computers would conveniently interact with one

4 another over electronic networks. The computer industry, however, has long been stymied by the

5 widespread proliferation of different operating systems which are incompatible with one another.

6 Because of this incompatibility, application programs created to function on one systems platform

7 generally cannot function on other systems platforms.

8       11.    Through its Java™ Technology, however, Sun developed a secure and effective

9 means of achieving cross-platform compatibility by creating a standardized application

10 programming environment that can be implemented and supported on different platforms. In this

11 way, programs written to the specifications and APIs that define the standardized environment

12 (here, Java™) will function on each of the platforms supporting the standardized environment.

13 The task of building, implementing, and maintaining such a universal, standardized application

14 programming environment requires enormous capital investment and technical prowess.

15       12.    Equally important, however, the creation of such a standardized application

16 programming environment requires the firm agreement and mutual commitment of each systems

17 manufacturer and browser developer across whose platforms compatibility is to be achieved to

18 implement the same set of specifications and APIs that define the standardized environment in a

19 consistent, compatible manner.

20       13.    Systems manufacturers who fully and completely implement the set of

21 specifications and APIs that define the standardized programming environment in their systems

22 platforms will thereby support an application programming environment that affords software

23 developers the opportunity to write a single version of program code that will run, not only on

24 that manufacturer's systems platform, but also on every other manufacturer's systems platform

25 that fully and consistently implements the same set of specifications and APIs.

26       14.    In this sense, each subscriber to the standardized programming environment,

27 including consumers, software developers, and systems manufacturers, is relying and dependent

28 upon each other subscriber to fully implement and faithfully adhere to the set of specifications

DLA PIPER LLP (US)
SAN DIEGO     WEST\22134237.5     COMPLAINT

1    and APIs that define the standardized programming environment.  Sun/Oracle America maintains

2    and enforces a set of requirements and protocols essential to this system through its licensing

3    program.

### Oracle America's Licensing Program

5        15.    In approximately the mid-1990s, and to encourage the rapid and widespread

6    adoption and compatible implementation of the Java™ programming environment on multiple

7    systems platforms, Sun published the set of Java specifications and Java APIs that define the

8    Java™ Technology, offering them for use under certain license conditions, so that software

9    developers and systems manufacturers can design and build products in accordance with them.

10       16.    In approximately 1998, to further encourage the development and adoption of

11   Java™, Sun initiated the Java Community Process ("JCP").  The JCP became the mechanism for

12   developing standard technical specifications for Java technology.  As an open process, anyone

13   can register to become a JCP member and participate in reviewing and providing feedback for

14   any Java Specification Requests ("JSRs").  Moreover, any participant can submit its own JSR

15   Proposals and serve as Spec Lead for any Java specification developed under the JCP.

16       17.    Although Sun/Oracle America published its Java specifications and Java APIs, it

17   has not unconditionally granted rights under its intellectual property to use or implement the

18   Java™ Technology without restriction.  Instead, Oracle America has established a licensing

19   program to promote the widespread compatible implementation and adoption of the Java™

20   Technology as described below.

21       18.    The central goal of Oracle America's licensing program is to achieve and maintain

22   cross-platform compatibility among the various licensees of its Java™ Technology.

23       19.    Consequently, to protect against the risk of incompatible implementations of the

24   Java™ Technology by different systems manufacturers and browser developers, the licenses

25   granted by Oracle America to manufacturers or software developers expressly require that all

26   products they distribute that implement the Java™ Technology must first pass a detailed series of

27   tests designed to ensure compliance with Oracle America's published set of Java specifications

28   and Java APIs that define the Java™ Technology.  Oracle America licenses and provides these

DLA PIPER LLP (US)
SAN DIEGO          WEST\22134237.5          COMPLAINT

1 tests in its Technology Compatibility Kits ("TCKs").

2   20. In conjunction with its licensing program for the Java™ Technology, Sun created

3 distinctive design marks generally consisting of a stylized steaming cup of coffee coupled with

4 one of the following: "Java™ Compatible", "Java™ Compatible Enterprise Edition", "Java™

5 Powered", or "Java™ Licensee" (the "Java logos"). Under license from Oracle America, a

6 systems manufacturer or software developer is licensed to distribute products incorporating the

7 Java™ Technology, provided that all license conditions are met, including the product having

8 passed the appropriate TCK, being otherwise fully compatible, and displaying the appropriate

9 Java logo.

10   21. Sun/Oracle America has devoted and continues to devote substantial time, effort,

11 and resources to the development and refinement of the Java™ Technology in order to ensure that

12 products implementing it and bearing the Java logo will fulfill the promise of cross-platform

13 compatibility. Since at least as early as 1995, systems manufacturers and software developers,

14 including Myriad and its predecessor Esmertec, have participated in Sun/Oracle America's Java

15 compatibility licensing program and obtained the right to use and subsequently have used the

16 Java™ logo on and in connection with products that implement the Java™ Technology and pass

17 the appropriate TCK. As a result of Sun's devotion of effort and resources, the Java logo has

18 come to symbolize and embody the reputation and substantial goodwill Sun has earned in the

19 marketplace as a result of its introduction and continuing development of the Java™ Technology

20 and the cross-platform compatibility it provides. The success and goodwill associated with Sun's

21 Java™ Technology has benefited and continues to benefit Oracle America's overall business by

22 enhancing its reputation and stature for supplying valuable innovative solutions for consumers of

23 information technology.

24   **Oracle America's Licensing Relationship with Myriad and Its Predecessor**

25   **The Sun Commercial Source License and Commercial Use Licenses for CLDC and**

26 **Related Technologies**

27   22. On or about March 20, 2002, Sun and Esmertec, Defendant's predecessor, entered

28 into a Sun Community Source License ("Source License") and Attachment D: Commercial Use

1    Licenses for the use of the Connected Limited Device Configuration ("CLDC") and Mobile

2    Information Device Profile ("MIDP") Version 2.0, which were developed under the Java

3    Platform, Micro Edition ("Java ME").

4        23.    CLDC was developed within the Java Community Process as Java Specification

5    Request ("JSR") 139 and Sun is its Spec Lead.  MIDP was also developed within the Java

6    Community Process as JSR-37 (Version 1.0) and JSR-118 (Version 2.0), and later JSR-271

7    (Version 3.0).  Sun, however, was not the Spec Lead for any version of MIDP.  Rather, Motorola

8    is Spec Lead for Version 1.0 and Aplix Corporation is Spec Lead for Versions 2.0 and 3.0.

9        24.    Java ME provides a robust, flexible environment for applications running on

10    mobile and other embedded devices, such as mobile phones, personal digital assistants, TV set-

11    top boxes, and printers.  Java ME technology is delivered in API bundles called configurations,

12    profiles, and optional packages.  A Java ME application environment includes both a

13    configuration like CLDC and a profile like MIDP.  A configuration like CLDC provides the basic

14    set of libraries and Java virtual-machine features that must be present in each implementation of a

15    Java ME environment.  A profile is a set of standard APIs that support a narrower category of

16    devices within the framework of a chosen configuration.  A specific profile is combined with a

17    configuration like CLDC to provide a complete Java application environment for the target device

18    class.

19        25.    The Connected Limited Device Configuration and its associated profiles are

20    designed for resource-constrained, network-connected devices with limited processing power,

21    memory, and graphical capability.  That is, CLDC was developed to deploy Java in devices like

22    cellular phones, pagers, and low-end personal organizers.

23        26.    Under the terms of its licensing agreement with Sun, among other things, Esmertec

24    was licensed to use the specifications (CLDC and MIDP) and certain of Sun's proprietary source

25    code (sometimes referred to as "Covered Code" or "Original Code" therein) from which it could

26    develop Compliant Covered Code; that is, any Java ME implementation that successfully passed

27    the appropriate TCK.  Esmertec downloaded Sun's source code and, upon information and belief,

28    used it in developing its own Compliant Covered Code.

-7-

27.   As explained further below, as Spec Lead for CLDC, Sun was required to develop a Reference Implementation of that specification as a "proof-of-concept." While the Reference Implementation source code was included within the Commercial Use License grant, Sun also provided other source code, including source code for MIDP applications.

28.   The Commercial Use License granted Esmertec the right to reproduce and distribute "Compliant Covered Code" to "Customers." That is, as defined by the agreement, Esmertec could sell its Java software products—provided they pass the appropriate TCK and were therefore confirmed to be Java compliant—to original equipment manufacturers with which Sun had a licensing relationship for the same technology.

29.   The Commercial Use License also required Esmertec to pay a per-unit royalty to Sun on a quarterly basis. Along with this payment, the license obligated Esmertec to report certain information concerning its volume of shipments of Compliant Covered Code, to whom those shipments were made, for what devices, and other similar information.

30.   The March 20, 2002 Source License also provided a separate Technology Compatibility Kit license ("TCK License") as Attachment E. According to its terms, however, the TCK License became effective only upon the execution of a separate support agreement between Esmertec and Sun. As such, the TCK License contemplated that the rights and obligations found within were contingent upon an existing "Support Agreement" between the parties.

31.   On or about June 30, 2006, Sun and Esmertec entered into a new Attachment D: Commercial Use License for CLDC implementations. In addition to licensing CLDC and MIDP technology, the new Commercial Use License also licensed Sun's Wireless Messaging API ("MWA") and Mobile Media API ("MMAPI"). As with CLDC and MIDP, both technologies were developed within the Java Community Process as separate Java Specification Requests. Sun was not the Spec Lead for either technology.

32.   This 2006 agreement obligated Esmertec to pay annual access fees and per-unit royalties and to report shipments of Covered Compliant Code. Upon information and belief, Esmertec continued to use Sun's proprietary source code in its development of software for use in

-8-

1    the Java ME environment.

2    33.    As of the filing of the instant Complaint, the March 20, 2002 Source License and

3    the June 30, 2006 Commercial Use License remain in effect between Sun and Myriad, but will

4    expire on December 31, 2010.  As described in more detail below, however, because no current

5    support agreement exists between the parties, Myriad's TCK License expired along with the

6    parties' Master Support Agreement on June 29, 2010.

7    **The Master Support Agreement**

8    34.    On or about March 20, 2002, Sun and Esmertec also entered into the separate

9    Master Support Agreement contemplated by the TCK License.  Among other things, the Master

10   Support Agreement set forth the terms under which Esmertec purchased technical support from

11   Sun and the support services provided by Sun.  The license's term ran for one year, but could be

12   renewed for subsequent one-year periods upon mutual written agreement of the parties.

13   35.    The Master Support Agreement provided specified support for certain "Supported

14   Products and Technologies."  When it was originally executed, the agreement provided support

15   for CLDC and the Mobile Information Device Profile ("MIDP").  On June 25, 2003, the Master

16   Support Agreement was amended to also include support for the Connected Device Configuration

17   ("CDC") implementation, for which Esmertec had entered into a separate Source License as

18   described below.  Further, as Myriad/Esmertec licensed additional Java specifications for

19   commercial use, the parties amended the Master Support Agreement to include these additional

20   JSRs.

21   36.    Among other "Support Features," the agreement provided that Esmertec would

22   have access to the TCK and source form for each Supported Product or Technology, the TCK

23   User Guide, and other information pertaining to the TCK.

24   37.    The term of the Master Support Agreement was extended from time to time by the

25   parties until it expired on June 29, 2010.  It has not been renewed.

26   38.    According to the terms of the Master Support Agreement, upon its expiration,

27   Esmertec—now Myriad—"must discontinue use of Support and Sun Confidential Information in

28   its control or possession." (Master Support Agreement, ¶ 2.2.)  The agreement defines

-9-

1   "Confidential Information" as including "all technical information and any source code which

2   Sun discloses to Customer under this Agreement." (Id., ¶ 1.1.) Thus, Myriad was required to

3   discontinue use of any TCKs for its Java™ software products.

4       **The Sun Commercial Source License and Commercial Use Licenses for CDC and**

5   **Related Technologies**

6       39.    On or about June 25, 2003, Sun and Esmertec, Defendant's predecessor, entered

7   into a Sun Community Source License ("Source License") and Attachment D: Commercial Use

8   License for the use of the Connected Device Configuration ("CDC"), Foundation Profile ("FP"),

9   Personal Basis Profile ("PBP"), and Personal Profile ("PP"). Each of these specifications was

10  developed within the Java Community Process as a JSR and Sun is the Spec Lead for each of

11  them.

12      40.    Like Sun's CLDC implementation, CDC and its related profiles are part of the

13  Java Platform, Micro Edition ("Java ME") family of standards. It also targets a broad range of

14  consumer and embedded devices like smart communicators, pagers, high-end personal digital

15  assistants, and set-top boxes.

16      41.    Under the terms of its licensing agreement with Sun, among other things, Esmertec

17  was licensed under Sun's proprietary source code (sometimes referred to as "Covered Code" or

18  "Original Code" therein) from which it could develop Compliant Covered Code—any Java ME

19  implementation using the CDC specification that successfully passed the CDC TDK. Upon

20  information and belief, Esmertec did obtain Sun's source code and used it in developing its own

21  Compliant Covered Code.

22      42.    Like the Commercial Use License for CLDC-related technologies, the Commercial

23  Use License for CDC-related technologies granted Esmertec the right to reproduce and distribute

24  "Compliant Covered Code" to "Customers." That is, as defined by the agreement, Esmertec

25  could sell its Java ME products—provided they passed the appropriate TCK and were therefore

26  Java compilant—to original equipment manufacturers with which Sun had a licensing

27  relationship for the same technology.

28      43.    The CDC Commercial Use license similarly required Esmertec to pay per-unit

1   royalties to Sun on a quarterly basis.  It also obligated Esmertec to report information concerning

2   its shipments of Compliant Covered Code to Sun.

3       44.     The June 25, 2003 Source License also provided a separate Technology

4   Compatibility Kit license ("TCK License") as Attachment E.  According to its terms, however,

5   the TCK License became effective only upon the execution of a separate support agreement

6   between Esmertec and Sun.  As such, the TCK License contemplated that the rights and

7   obligations found within were contingent upon an existing "Support Agreement" between the

8   parties.

9       45.     On or about June 30, 2006, Sun and Esmertec entered into a new Attachment D:

10  Commercial Use License for CDC implementations.  In addition to licensing CDC, FP, PP, and

11  PBP, the new agreement also included Java TV, an API providing a platform for interactive

12  television services.  Java TV was also developed within the Java Community Process and Sun is

13  its Spec Lead.

14      46.     This 2006 agreement obligated Esmertec to pay annual access fees (some of which

15  were in lieu of support fees otherwise due under the MSA) and per-unit royalties and to report

16  shipments of Covered Compliant Code.  Also, upon information and belief, Esmertec continued

17  to use Sun's proprietary source code in its development of software for use in the Java ME

18  environment.

19      47.     On or about June 25, 2009, Sun and Myriad entered into the current Attachment D:

20  Commercial Use License for CDC implementations.  This most recent Commercial Use License

21  included licensing rights and obligations for Sun proprietary optimized implementations and for

22  several different JSRs for which Sun is not the Spec Lead, including MIDP, WMA, and MMAPI.

23      48.     Again, the current agreement obligates Myriad to pay per-unit royalties and report

24  shipments of Covered Compliant Code.  Upon information and belief, Myriad continued to use

25  Sun's proprietary source code in its development of software for use in the Java ME environment.

26      49.     As of the filing of the instant Complaint, the June 25, 2003 Source License

27  remains in effect between Sun and Myriad, although Myriad is in material breach of its

28  obligations under that license.  It will expire on December 31, 2012.  Because no current Support

-11-

1    Agreement exists between the parties, as described in more detail below, Myriad's TCK License

2    for CDC-related technologies expired along with the parties' Master Support Agreement on June

3    29, 2010.

4         **The Java Specification Participation Agreement**

5         50.    As part of its efforts to coordinate the development of Java among the many

6    hardware and software developers involved in the Java ecosystem, in or about December 1998,

7    Sun issued *The Java Community Process (sm) Program Manual: The formal procedures for*

8    *using the Java Specification development process.*  In this manual, Sun unfolded a "formal

9    process for developing Java™ specifications." The specifications referred to were those for the

10   APIs making up the Java environment.  The manual discussed the procedures that were to be

11   followed from the stage of requesting a new specification, the drafting of the specification by an

12   expert group, and a wider review process, to its final release and maintenance.  To participate in

13   drafting a new Java specification, one had to be a Participant and sign the Java Specification

14   Agreement ("JSPA").

15        51.    While a Spec Lead for a JSR must offer a "fully paid-up, royalty free" license for

16   the specification, the JSPA does not require such a license for the Reference Implementation—the

17   proof of concept for the specification—or for the TCK.

18        52.    Nor does the JSPA prohibit a Spec Lead from charging fees including up-front

19   payments, annual access or support fees, or per-unit royalties for an RI and/or TCK license.  A

20   Qualified Not-for-Profit or Qualified Individual may obtain a TCK license separately from the

21   Reference Implementation at no charge.  (*Id.*)  Myriad, however, is neither a Qualified Not-for-

22   Profit nor a Qualified Individual.

23        53.    Depending upon a licensee's needs or requirements, under its Commercial Use

24   Licenses, Oracle America licenses not only a specification for which it is the Spec Lead and the

25   associated Reference Implementation, but also it will license other source code for that JSR (for

26   example, modifications or optimized implementations) and source code for other JSRs for which

27   it is not the Spec Lead.

28        54.    Esmertec was a member of the Java Community Process at least as early as March

-12-

1    2005, when it served on the initial experts group for JSR 271: Mobile Information Device Profile

2    3, an update to the MIDP specification that it was then licensing from Sun.

3    **Myriad Disputes Its Licensing Obligations, Demands a Royalty-Free TCK License,**

4    **and Fails to Pay Royalties or Report Shipments**

5    55.    In fall 2009, mere months after having negotiated and executed the June 25, 2009

6    Commercial Use License for CDC-related technologies, Myriad demanded that it be provided

7    new licensing terms "under the JSPA" for those CDC-related and CLDC-related Java

8    specifications for which it was already licensed under separate Sun Community Source Licenses.

9    56.    Sun provided its standard pricing for the various Java specifications for which

10    Myriad already had Sun Community Source Licenses, which Myriad rejected.

11    57.    In December 2009, Myriad informed Sun for the first time that it was "working

12    under the JSPA" and "that its independent implementations, as such, do not require the

13    commercial licenses but are to be granted royalty free as required by the JSPA." Because Sun

14    had not provided a royalty-free pricing structure for its TCKs—nor was it required to—Myriad

15    refused to pay any royalties. Myriad stated that it would continue to supply quarterly reports

16    under the parties' existing agreements, "though they will show zero units sold under the

17    commercial agreements." Finally, Myriad claimed that it was owed a substantial credit for

18    royalties previously paid under the existing Sun Community Source Licenses and associated

19    Commercial Use Licenses.

20    58.    As of the filing of the instant Complaint, Myriad last provided a Royalty Report

21    for the quarter ended September 2009. That report reflected $0 royalties owed and provided none

22    of the information required to be provided by the parties' Commercial Use Licenses, including

23    the number of products shipped, to which customers, and for what devices.

24    59.    Upon information and belief, Myriad has created and distributed, and continues to

25    distribute, Compliant Covered Code for which it owes royalties under its various Commercial

26    Use Licenses with Sun. Plaintiff estimates that, as of July 30, 2010, Myriad owes royalties to Sun

27    in excess of $3.5 million.

28    60.    Myriad's deliberate and willful failure of its reporting obligations and failure to

DLA PIPER LLP (US)
SAN DIEGO

WEST\22134237.5    COMPLAINT

1  pay royalties under its Commercial Use Licenses constitutes material breaches of those

2  agreements.

3      **Myriad's Unfair Competition and Copyright Infringement**

4      61.    As noted above, the Master Support Agreement between Oracle America (as

5  successor to Sun) and Myriad (as successor to Esmertec) expired on June 29, 2010.  For Myriad

6  software products created or modified before June 29, 2010, and which have also been tested

7  against the appropriate TCK and properly self-certified as compliant, Myriad may continue to

8  ship such products under its existing Sun Commercial Source Licenses, because they continue to

9  be Compliant Covered Code under the terms of the parties' agreements.  For such products,

10 however, Myriad is still required to report its shipments and make royalty payments under its

11 Commercial Use Licenses.  Myriad's right to ship such products incorporating CLDC-related

12 technologies expires on December 31, 2010.

13     62.    Upon expiration of the Master Support Agreement, Myriad was no longer licensed

14 to use Sun's various TCKs.  As a consequence, for (1) any Java implementation created or

15 modified by Myriad after June 29, 2010; or (2) any Java implementation which either had not yet

16 passed the appropriate TCK by that date; or (3) any Java implementation which had not been

17 certified as compliant by that date (collectively, the "Noncompliant Products"), Myriad may no

18 longer brand such products with the Java Compliant logos or in any other way represent that such

19 products are Java compliant.

20     63.    Notwithstanding the fact that it is no longer licensed to use Sun's TCKs, upon

21 information and belief, Myriad continues to use those TCKs currently in its possession to test the

22 compatibility of its Noncompliant Products.  Myriad's unauthorized use of Sun's TCKs

23 constitutes infringement of its valuable intellectual property rights, including its copyright in the

24 TCKs.

25     64.    Further, notwithstanding the fact that it is no longer licensed to brand

26 Noncompliant Products as Java compliant, on information and belief, Myriad continues to pass

27 off its Noncompliant Products as "Java compatible" to its customers, when in fact they are not

28 and cannot be certified as Java compatible in the absence of an appropriate TCK license.

-14-

65. On information and belief, Myriad's representations of Noncompliant Products as "Java compatible" to its customers have deceived, or have the potential to deceive, a substantial segment of potential customers, the larger Java community and consumers of such products. Myriad's deception was and is material to its customer's purchasing decisions, as they would likely not purchase any Java implementation, including any Independent Implementation as defined under the JSPA, without that implementation first passing the appropriate TCK and without being appropriately licensed from Sun.

66. Myriad's failure and refusal to comply with its licensing obligations places it at an unfair competitive advantage over Oracle America's other licensees, business partners, and customers. Myriad's actions also threaten the continued vitality of the Java ecosystem and the community of Java developers, implementers, and users.

## FIRST CLAIM FOR RELIEF
### Violation of Lanham Act – False Designation of Origin and Unfair Competition
### 15 U.S.C. § 1125(a)

67. Plaintiff Oracle America realleges and incorporates by reference the allegations in paragraphs 1 through 76 as if fully set forth herein.

68. Defendant's acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69. In addition, Defendant's acts, practices, and conduct constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, mistake, or deception as to affiliation, connection, or association with Oracle America, and is also likely to cause confusion, as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Oracle America, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

-15-

1       70.    As a direct and proximate result of Defendant's infringement, Oracle America has

2  been and is likely to be substantially injured in its business, including its goodwill and reputation,

3  resulting in lost revenues and profits, and diminished goodwill.

4       71.    As a result of Defendant's unlawful conduct, Oracle America has been and

5  continues to be substantially and irreparably harmed. Defendant's unlawful conduct has caused

6  and will continue to cause irreparable harm for which Oracle America has no adequate remedy at

7  law, in that, among other things, (1) Oracle America's ownership of the Java™ trademark

8  constitutes a unique and valuable property right which has no readily determinable market value;

9  (2) Defendant's unlawful conduct in connection with the Java™ trademark interfere with Oracle

10  America's goodwill and relationship with its customers, business partners, vendors, the general

11  public, and the media; and (3) Defendant's activities, and the harm resulting to Oracle America, is

12  continuing.

13       72.    Unless enjoined by the Court, Defendant will continue to use and infringe the

14  Java™ trademarks, to Plaintiff's irreparable injury. The threat of future injury to Plaintiff's

15  business identity, goodwill, and reputation require injunctive relief to prevent Defendant's

16  continued use of the Java™ trademarks, and to ameliorate and mitigate Plaintiff's injuries.

17

18                         **SECOND CLAIM FOR RELIEF**
                              **Copyright Infringement**

19                        **17 U.S.C. § 101, et seq.**

20       73.    Plaintiff Oracle America realleges and incorporates by reference the allegations in

21  paragraphs 1 through 82 as if fully set forth herein.

22       74.    Oracle America owns all right, title, and interest in the copyrights to its TCKs at

23  issue in this action.

24       75.    Oracle America is informed and believes that Defendant has installed, copied, and

25  used unauthorized copies of its TCKs in violation of Oracle America's copyright in the TCKs.

26  Further, upon information and belief, Myriad continues to use Oracle America's TCKs, despite

27  having no license to do so, in determining the compatibility of its Noncompliant Products.

28       76.    By the actions alleged above, Defendant has infringed and may continue to

1     infringe Oracle America's copyrights in its TCKs.

2         77.     Defendant's unauthorized use of Oracle America's copyrighted software with

3     knowledge that the use was unauthorized and unlicensed constitutes willful copyright

4     infringement.

5         78.     Oracle America has suffered substantial actual damages as a result of Defendant's

6     unauthorized and illegal use of such copyrighted materials. As a result of Defendant's wrongful

7     actions, Oracle America is entitled to damages in an amount to be proven at trial but on

8     information and belief is alleged to be in excess of $75,000 plus interest and attorneys' fees.

9     Further, as an alternative to actual damages, Oracle America is entitled to statutory damages in an

10    amount to be proven, plus interest and attorneys' fees.

11        79.     Defendant's unlawful conduct will continue to damage Oracle America unless

12    Defendant is enjoined by this Court, and Oracle America has no adequate remedy at law.

13

14                     **THIRD CLAIM FOR RELIEF**
                           **Breach of Contract**

15

16        80.     Plaintiff Oracle America realleges and incorporates by reference the allegations in

17    paragraphs 1 through 89 as if fully set forth herein

18        81.     Oracle America and Defendant entered into a valid contract when they executed

19    the Sun Community Source Licenses and Commercial Use Licenses for CDC-related and CLDC-

20    related Java technologies.

21        82.     Oracle America has performed all of its obligations required under the Sun

22    Community Source Licenses and Commercial Use Licenses, except to the extent that such

23    performance was waived, or made impossible, by Defendant or excused by Defendant's conduct.

24        83.     Defendant unjustifiably failed to perform its obligations under the Sun Community

25    Source Licenses and Commercial Use Licenses by, among other things, failing to pay royalties

26    and failing to report shipments as required under those licenses.

27        84.     As a direct and proximate result of Defendant's breaches, Oracle America has

28    suffered damages in an amount to be proven at trial but believed to be in excess of $75,000 plus

DLA PIPER LLP (US)
SAN DIEGO    WEST\22134237.5      COMPLAINT

1    interest and attorney's fees.

2

3                        **FOURTH CLAIM FOR RELIEF**
                             **Unfair Competition**
4                        **Cal. Bus. & Prof. Code § 17200, et seq.**

5         85.    Plaintiff Oracle America realleges and incorporates by reference the allegations in

6    paragraphs 1 through 94 as if fully set forth herein.

7         86.    Defendant's use and marketing of Noncompliant Products as Java™ compatible,

8    as alleged above, constitutes unfair competition and an unlawful business practice in violation of

9    Sections 17200 et seq. of the California Business and Professions Code.

10        87.    Oracle America is informed and believes, and on that basis alleges, that

11   Defendant's unlawful conduct has deceived or is likely to deceive Defendant's customers and

12   potential customers and/or Oracle America's customers, potential customers, business partners,

13   vendors, the general public, and/or the media into believing that Defendant's products and

14   services and Oracle America's products and services, or the parties' businesses, are related,

15   and/or that Defendant's products and services are affiliated with, associated with, and/or sold by

16   Oracle America and/or that Oracle America's products and services are affiliated with, associated

17   with, and/or sold by Defendant.

18        88.    Further, as alleged above, through its various licenses with Oracle America,

19   Defendant has had access to and, upon information and belief, used Oracle America's source

20   code and other protected intellectual property.  Having enjoyed access to and use of that

21   intellectual property, Defendant's repudiation of its Sun Community Source Licenses and

22   Commercial Use Licenses with Oracle America; its continued use the intellectual property

23   licensed under those agreements in the development and sale of products employing the Java™

24   trademark; and its insistence on the right to a different  licensing relationship with Oracle

25   America as a purported Independent Implementer under the JSPA constitutes unfair competition

26   and an unlawful and/or unfair business practice in violation of Sections 17200 et seq. of the

27   California Business and Professions Code.

28        89.    As a result of Defendant's acts of unfair competition, Oracle America has been

-18-

1    injured and lost money or property, including its loss of valuable intellectual property.

2        90.    As a result of Defendant's acts of unfair competition, Oracle America has been

3    and continues to be substantially and irreparably harmed. If Defendant's unfair competition is

4    permitted to continue, further damage and irreparable injury will be sustained by Oracle America.

5        91.    Defendant's unlawful conduct will continue to injure Oracle America unless

6    Defendant is enjoined by this Court, and Oracle America has no adequate remedy at law

7                                **PRAYER FOR RELIEF**

8        WHEREFORE, Oracle America prays for judgment as follows:

9                            On the First Claim for Relief

10       1.    That Defendant be adjudged to have competed unfairly with Oracle America and

11   used a false designation of origin in violation of federal law.

12       2.    That Defendant be adjudged to have willfully and deliberately committed false

13   designations of origin and competed unfairly with Oracle America in violation of federal law.

14       3.    That Defendant, its officers, agents, servants, employees and all persons acting or

15   claiming to act on its behalf or under its direction or authority, and all persons acting or claiming

16   to act in concert or in participation with it or any of them, be permanently enjoined and restrained

17   from infringing the Java™ trademarks or name or engaging in unfair competition with Oracle

18   America in any manner, in the sale, promotion, distribution, purchase or advertising of

19   Defendant's goods and services, and, in particular, using the Java™ logo.

20       4.    That Defendant be required to deliver up to the Court or to a Court-designated

21   party any and all catalogues, marketing materials, or labels in its possession, custody or control,

22   or that of its owners, officers, agents, brokers, servants, or employees, that would, if used, or

23   marketed or otherwise distributed, violate the injunctive relief granted herein, for ultimate

24   destruction of such items, and to delete any use of the Java™ trademarks on its Internet web

25   pages.

26       5.    That Defendant be required to publish notice to all distributors, original equipment

27   manufacturers, original design manufacturers, brokers, retailers, tradeshows, sellers, and other

28   customers or others in the trade who may have seen, or heard of Defendant's use of the Java™

-19-

1  trademarks, or purchased or sold any of Defendant's products or services which were marketed

2  using the Java™ trademarks, which notice shall disclaim any connection with Oracle America

3  and shall advise them of the Court's injunction order and of Defendant's discontinuance from all

4  use of the Java™ trademarks.

5       6.    For an award of all damages to Oracle America and all profits heretofore realized

6  by Defendant from their infringing conduct, pursuant to 15 U.S.C. § 1117.

7       7.    For an award of three times the amount of Defendant's profits pursuant to 15

8  U.S.C. § 1117 (b).

9       8.    That Defendant be ordered to provide an accounting of its profits.

10       9.    For an award of costs and reasonable attorneys' fees.

11       10.    And for all other relief the Court deems just and proper.

12  On the Second Claim for Relief

13       11.    That Defendant be adjudged to have infringed Oracle America's copyrights for its

14  TCKs.

15       12.    That Defendant, and its agents, servants, employees, successors and assigns, and

16  all others in concert and privity with them, be preliminarily and permanently enjoined from

17  unauthorized copying and use of the TCKs, pursuant to 17 U.S.C. § 502.

18       13.    That Oracle America be awarded its lost profits and actual damages as against

19  Defendant, plus Defendant's profits, according to proof at trial, or statutory damages, and

20  enhanced damages for willful infringement pursuant to 17 U.S.C. § 504, as well as Oracle

21  America's costs of suit and reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

22       14.    That Defendant be ordered to provide an accounting of its revenues and profits.

23       15.    That Defendant, and its agents, servants, employees, successors and assigns, and

24  all others in concert and privity with Defendant be ordered to destroy all copies of the TCKs

25  found to have been made or used in violation of Oracle America's rights, pursuant to 17 U.S.C.

26  § 503, and all derivative works made therefrom.

27       16.    For an award of costs and reasonable attorneys' fees.

28       17.    And for all other relief the Court deems just and proper.

DLA PIPER LLP (US)
SAN DIEGO

On the Third Claim for Relief

18.     That Defendant be adjudged to have breached the Sun Community Source Licenses and Commercial Use Licenses.

19.     That Oracle America be awarded damages according to proof at trial but in an amount of at least $75,000 plus interest.

On the Fourth Claim for Relief

20.     That Defendant be adjudged to have engaged in "unfair competition" in violation of California law.

21.     That Defendant, its officers, agents, servants, employees and all persons acting or claiming to act on its behalf or under its direction or authority, and all persons acting or claiming to act in concert or in participation with it or any of them, be permanently enjoined and restrained from infringing the Java™ trademarks or name or engaging in unfair competition with Oracle America in any manner, in the sale, promotion, distribution, purchase or advertising of Defendant's goods and services, and, in particular, using the Java™ logo.

22.     That Defendant, its officers, agents, servants, employees and all persons acting or claiming to act on its behalf or under its direction or authority, and all persons acting or claiming to act in concert or in participation with it or any of them, be permanently enjoined and restrained from using, reproducing, have reproduced, selling, distributing, or otherwise transferring any Oracle America source code, copyrighted, or patented material, including any derivative works made therefrom.

23.     That Defendant be required to deliver up to the Court or to a Court-designated party any and all Oracle America source code or other copyrighted or patented material, including any derivative works made therefrom, for ultimate destruction of such material.

/////
/////
/////
/////
/////

1   24.   That Defendant be ordered to provide an accounting of its profits.

2   25.   For an award of costs and reasonable attorneys' fees.

3   26.   And for all other relief the Court deems just and proper.

4   Dated: December 10, 2010

5                                      DLA PIPER LLP (US)

6

7                                      By *Christopher J Beal*
                                           CHRISTOPHER J. BEAL
8                                          Attorney for Plaintiff
                                           Oracle America, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28