GEOFFREY M. EZGAR (SBN 184243)
gezgar@kslaw.com
KING & SPALDING LLP
101 Second Street
Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

KEVIN R. SULLIVAN (*Pro Hac Vice Pending*)
krsullivan@kslaw.com
TIMOTHY J. SULLIVAN (*Pro Hac Vice Pending*)
tjsullivan@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-4707
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737

BRIAN A. WHITE (*Pro Hac Vice Pending*)
bwhite@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

Attorneys for Defendant
Myriad Group A.G.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC. | Case No. 10-CV-5604-SBA |
| Plaintiff, | Honorable Judge Saundra Brown Armstrong |
| v. | |
| MYRIAD GROUP A.G. | **MYRIAD GROUP A.G.'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION** |
| Defendant. | |

Date:    April 5, 2011
Time:    1:00 p.m.
Place:   Courtroom 1

### TABLE OF CONTENTS

NOTICE OF MOTIONS AND MOTIONS…………………………………………………1

DEFENDANT MYRIAD A.G.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS, OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION……………………………………………1

STATEMENT OF ISSUES…………………………………………………………………1

INTRODUCTION AND FACTUAL BACKGROUND……………………………………2

    A.    Contractual Background……………………………………………………2

    B.    Commencement of Litigation………………………………………………4

ARGUMENT……………………………………………………………...............6

I.    THE COURT SHOULD DISMISS AND/OR QUASH ORACLE'S SERVICE OF PROCESS………………………………………………………..6

    A.    Service of Process That is Procured by a Plaintiff's False Representations is Invalid…………………………………………………………………..6

    B.    Oracle's Actions Made the Service of Process Invalid……………………………………………………………………8

    C.    The Court Should Dismiss the Complaint, or Alternatively Quash the Service of Process………………………………………………………………...11

II.    IF THE COURT DOES NOT DISMISS ORACLE'S ACTION FOR IMPROPER SERVICE, IT SHOULD STAY THE INSTANT ACTION AND COMPEL ARBITRATION………………………………………………………11

    A.    The Parties Have Entered Into a Broad-Form Arbitration Agreement, Thereby Creating A Presumption in Favor of Arbitration…..……………………11

    B.    The Principle of Competence-Competence and the Selection of the UNCITRAL Arbitral Rules in the SCSL Demonstrates The Parties' Intent to Have An

ii

Arbitrator Decide the Validity of the Arbitration Clause…………………………..13

C.    Even If This Court Were to Determine the Scope of the Arbitration Clause,
      Oracle's Claims Are Subject to Arbitration………………………………………...15

      1.  Where A Contract Contains a Broad-Form Arbitration Clause,
          Any Dispute that "Touches Matters" Relating to the Contract Should Be
          Arbitrated…..………………………………….......................................16

      2.  The Exception to the Arbitration Clause Must Be Construed Narrowly,
          and Does Not Apply to Oracle's Claims…………………………………18

CONCLUSION………………………………………………………………………………..22

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Apollo Computer, Inc. v. Berg*
    886 F.2d 469 (1st Cir. 1989).........................................................................14

*Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*
    203 F.R.D. 677 (S.D. Fla. 2001 ...................................................................14

*Comedy Club, Inc. v. Improv West Assocs.*
    553 F.3d 1277 (9th Cir. 2009) ......................................................................20

*Commercial Mutual Accident Co. v. Davis*
    213 U.S. 245 (1909)........................................................................................7

*Coyne v. Grupo Indus. Trieme, S.A. de C.V.*
    105 F.R.D. 627 (D.D.C. 1985).................................................................7, 8, 11

*Dean Witter Reynolds Inc. v. Byrd*
    470 U.S. 213 (1985).......................................................................................21

*E.E.O.C. v. Waffle House, Inc.*
    534 U.S. 279 (2002).......................................................................................12

*E/M Lubricants, Inc. v. Microfral, S.A.R.L*
    91 F.R.D. 235 (N.D. Ill. 1981).......................................................................11

*First Options of Chicago, Inc., v. Kaplan*
    514 U.S. 938 (1995)..................................................................................13, 14

*Fischer v. Munsey Trust Co.*
    44 App. D.C. 212 (1915) ................................................................................7

iii

*Fitzgerald & Mallory Const. Co. v. Fitzgerald*
    137 U.S. 98, 105 (1890) ..................................................................................7

*Grynberg v. BP PLC*
    596 F. Supp. 2d 74 (D.D.C. 2009) ..........................................................14, 15

*Henkel Corp. v. Degremont, S.A.*
    136 F.R.D. 88 (E.D. Pa. 1991)........................................................................8

*K Mart Corp. v. Gen-Star Industries Co., Ltd.*,11
    0F.R.D. 310 (E.D. Mich.1986) ............................................................7, 8, 11

*Liveware Publ'g, Inc. v. Best Software, Inc.*
    252 F. Supp. 2d 74 (D. Del. 2003)...............................................................21, 22

*May Dept. Stores Co. v. Wilansky*
    900 F. Supp. 1154 (E.D. Mo. 1995)................................................................7

*Mediterranean Enter., Inc. v. Ssangyong Corp.*
    708 F.2d 1458 (9th Cir. 1983) .......................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
    473 U.S. 614 (1985)...........................................................................12, 13, 20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983)..........................................................................................20

*Oliver v. Cruson*
    153 F. Supp. 74 (D. Mont. 1957)....................................................................7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*
    388 U.S. 395 (1967)................................................................................ 11-12

*Quizno's Master v. Kadriu*
    No. 04 C 4771, 2005 U.S. Dist. LEXIS 7626 (N.D. Ill. Apr. 4, 2005)..................................19

*Scherk v. Alberto-Culver Co.*
    417 U.S. 506 (1974)......................................................................................13

*Schoenduve Corp. v. Lucent Technologies, Inc.*
    442 F.3d 727 (9th Cir. 2006) .........................................................................17

*Shaw Grp. v. Triplefine Int'l Corp.*
    322 F.3d 115 (2d Cir. 2003)...........................................................................14

*Simitar Entertainment, Inc. v. Silva Entertainment, Inc.*
    44 F.Supp.2d 986 (D. Minn. 1999)................................................................21

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) ....................................................12, 16, 17, 18

iv

*Stevens v. Security Pac. Nat. Bank*
   538 F.2d 1387 (9th Cir. 1976) ....................................................................11

*Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'Ship*
   432 F.3d 1327 (11th Cir. 2005) ..................................................................14

*TES Franchising, LLC v. Loveman*
   No. 3:04cv219, 2004 U.S. Dist. LEXIS 7101 (D. Conn.) .......................................19

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*
   363 U.S. 574 (1960)..............................................................................12, 15

*Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210 (5th Cir. 1993) ...........................17

*Voice Systems Marketing Co. v. Appropriate Technology Co.*
   153 F.R.D. 117 (E.D. Mich. 1994) ............................................................ 7- 9, 11

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*
   489 U.S. 468 (1989).................................................................................13

**OTHER CASES**

*Commercial Bank & Trust Co. v. District Court of Fourteenth Judicial Dist.*
   605 P.2d 1323 (Okla.1980)...........................................................................8

*State ex rel. Ellan v. District Court of Eighth Judicial Dist.*, 33 P.2d 526 (Mont. 1934)...............7

**FEDERAL STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 3, 4, and 206 (2010)...........................................1

Federal Rule of Civil Procedure 12(b)(5) ........................................................1, 6

Rule 408 of the Federal Rules of Civil Procedure ...................................................5

**OTHER AUTHORITIES**

H.H. Henry, *Attack on Personal Service as Having Been Obtained by Fraud or Trickery*,
   98 A.L.R.2d 551 (1964)..............................................................................7

Doak Bishop, *A Practical Guide for Drafting International Arbitration Clauses*1 Int'l
   Energy L. & Tax'n Rev. 16 (2000)..................................................................19

Gary B. Born, *International Arbitration and Forum Selection Agreements: Drafting and
   Enforcing* 42 (Kluwer Law International 2006) ......................................................20

v

**NOTICE OF MOTIONS AND MOTIONS**

TO NONPARTIES AND PLAINTIFF ORACLE AMERICA, INC. AND ALL ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that the following motions will be heard at 1 p.m. on April 5, 2011, or as soon thereafter as counsel may be heard, in Courtroom 1 of the United States Courthouse, 1301 Clay Street, 4th Floor, Oakland, California, before the Honorable Judge Saundra Brown Armstrong.

Defendant Myriad Group A.G. ("Myriad") will and hereby does move this Court for an order dismissing Oracle's Complaint and/or quashing service of process under Federal Rule of Civil Procedure 12(b)(5), on the ground that Oracle improperly obtained service of process under the guise of conducting a settlement negotiation. In the alternative, Myriad moves this Court for an order staying the action and compelling arbitration under Sections 3, 4 and 206 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, and 206 (2010), on the ground that Oracle's claims are governed by an arbitration clause.

Prior to the filing of this Motion, the parties met and conferred regarding this suit and have thus complied with this Court's Standing Order.

**DEFENDANT MYRIAD GROUP A.G.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS, OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION**

Defendant Myriad, a Swiss corporation, hereby files this Memorandum of Law in Support of its Motion to Dismiss and/or Quash Service of Process, or, In the Alternative, To Stay Action and Compel Arbitration.

**STATEMENT OF ISSUES**

1) Whether the Complaint should be dismissed—or service should be quashed—because Plaintiff Oracle America, Inc. (formerly Sun Microsystems, Inc., and hereafter "Oracle"), a Delaware corporation, attempted to effect service by trickery. Specifically, Oracle induced

Myriad's representatives to travel from Europe to Washington, D.C. for the ostensible purpose of conducting settlement discussions.  Instead, Oracle filed its Complaint while the parties were meeting and then attempted to effect service during the settlement discussions.

2)  Whether the Court should compel arbitration pursuant to (1) the parties' broad-form international arbitration agreement; (2) the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), which is a treaty that is binding on the United States of America and enforceable in the U.S. Courts; and (3) the Federal Arbitration Act (the "FAA"), which implements the New York Convention and requires arbitration of international disputes that are subject to a valid arbitration agreement.

## INTRODUCTION AND FACTUAL BACKGROUND

A.     Contractual Background

The claims asserted in the instant action by Plaintiff Oracle against Myriad arise out of and relate to a contractual dispute between the parties regarding the prices Myriad must pay in exchange for the licensing of Java technology.  "Java" refers to a programming language, as well as to a number of computer software products and specifications intended to allow different programs to be developed and deployed for use on a wide range of devices.  The widespread adoption of Java has been the result of the Java Community Process (JCP), a collaborative effort among technology companies (including Myriad) to create new specifications for Java implementations.  Oracle neither owns the JCP nor is the driving force behind it; rather, the JCP relies largely on other companies that contribute their own intellectual property to the JCP. However, in order to enter into the JCP, Myriad and a number of other companies entered with Oracle into cross-licensing agreements, known as the Java Specification Participation Agreement ("JSPA").  Through these licenses, the members of the JCP allow other members to use their intellectual property rights under certain conditions and all members have access to the Java language.

The development of a new Java Specification in the JCP consists of the creation of three types of output: the Java Specification itself, which is a description of how Java technology should work in a given type of device and/or software environment; the Reference Implementation (RI), which is a prototype or proof-of-concept compliant implementation; and the Technology Compatibility Kit (TCK), a suite of tests, tools and documentations that is the only permissible method for determining whether a particular instance of software complies with the specification, and thus qualifies as an implementation. Pursuant to the JSPA, the company overseeing the development of a new specification, known as the "Spec Lead," holds licenses under all the IP rights relevant to the specification that belong to JCP members. The Spec Lead, in turn, must grant licenses under these rights to any party interested in creating its own Java implementations or distributing the RI Code. The licenses must include access to TCKs and RI code, and must be either free of charge under a fully-paid, royalty-free license or licensed at fair, reasonable, and non-discriminatory (FRAND) rates, depending on the context.

Both Oracle and Myriad create and market Java-based software products using a combination of the companies' own proprietary code and RI code. Oracle markets its Java products of this type under the Hotspot$^{TM}$ trade name. Myriad does not and never has used Oracle's Hotspot™ code in its products, but Oracle nevertheless insisted that Myriad enter into a Sun Community Source License (SCSL) along with a Master Service Agreement (MSA) for Hotspot™ Code in order to have RI and TCK access for Myriad's Java implementations.

The SCSL is an on-line, click-through agreement that includes several attachments, two of which are relevant to this dispute. Attachment D of the SCSL is a Commercial Use License ("Attachment D") for the use of RI and HotSpot™ code. Attachment E is a TCK license that only becomes effective upon the signing of the MSA.

The SCSL includes an arbitration clause at Section 8.6. The relevant portions of the

3

SCSL arbitration clause state[1]:

> a) Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights[2] or with respect to Your compliance with the TCK license.  Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and the United States.

> b) …Unless otherwise agreed, arbitration venue shall be in London, Tokyo, or San Francisco, whichever is closest to defendant's principal business office.

The parties do not dispute that the SCSL applies to the instant action.

> **B.**      Commencement of Litigation

Prior to the filing of the instant action, Myriad and Oracle agreed to meet to discuss a possible settlement of the two companies' potential claims against each other.  *See* Decl. of Kevin J. Sullivan in Support of Myriad Group A.G.'s Motion to Dismiss and/or Quash Service of Process, or In the Alternative, To Stay Action and Compel Arbitration ¶ 4 (hereinafter "Sullivan

---

[1] Because the SCSL was a "click-through" agreement that appeared only on a computer screen and disappeared once Myriad's predecessor-in-interest, Esmertec A.G., agreed to it, Myriad does not have an original copy, although it is possible that Oracle retains an electronic or hard copy of the original agreement.  The quotation in text is taken from a version found online, current as of 2001. *See* Exhibit A (attached).  Another version found online from 2004 incorporates the same arbitration clause.  According to Oracle's Complaint, Esmertec agreed to the SCSL on or about March 20, 2002.  Complaint ¶ 22.

[2] The SCSL defines Intellectual Property Rights as "worldwide statutory and common law rights associated solely with (i) patents and patent applications; (ii) works of authorship including copyrights, copyright applications, copyright registrations and "moral rights"; (iii) the protection of trade and industrial secrets and confidential information; and (iv) divisions, continuations, renewals, and re-issuances of the foregoing now existing or acquired in the future."

4

MYRIAD GROUP A.G'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION,  Case No. 10-CV-5604-SBA

Decl.").  Although Myriad preferred to meet in Paris, Oracle requested that the meeting take place in the United States. Eventually, the parties agreed to meet in Washington, D.C.  *Ibid.*  The meeting was conducted pursuant to a Nondisclosure Agreement and Rule 408 of the Federal Rules of Civil Procedure.  *Ibid.*

The meeting took place on Friday, December 10, 2010. *Ibid.*  Malcolm Dawe, Myriad's Chief Products Officer, John Ronco, Myriad's Product Director for Runtime products, and Cyrille Amar, Myriad's acting general counsel, came to the United States from France and England to attend the meeting.  *Id.* ¶ 6.  Over the course of the meeting, both parties made proposals but no settlement was reached.  *Id.* ¶¶ 8-10.  While the meeting was adjourned for lunch, at 1:13 p.m. Eastern time (10:13 a.m. Pacific time), Oracle filed its complaint in the present action in this Court.  *Id.* ¶ 9.  On information and belief, this filing took place at the express direction of Jeffrey Shohet, Oracle's counsel present in Washington for the settlement conference. *Id.* ¶¶ 7-8. Shortly thereafter, the meeting resumed.  Oracle did not reveal to Myriad that the lawsuit had been filed but instead continued the discussion.  *Id.* ¶¶9-10. At approximately 2:00 p.m., a courier delivered to Mr. Shohet a copy of the filed complaint in a plain white envelope.  *Id.* ¶ 9.  But Oracle still did not tell Myriad's representatives that the suit had been filed; instead, Oracle continued discussing the settlement for another hour.  *Id.* ¶ 10. Only at approximately 3:00 p.m—after the parties had taken another break in the discussion and then resumed again—did Mr. Shohet interrupt the continuing meeting and announce that a suit had been filed.  *Ibid.*  Mr. Shohet then purported to serve Myriad by handing Malcolm Dawe a copy of the complaint while seated at the negotiation table.[3]  *Ibid.*  The settlement conference

---

[3] Mr. Shohet subsequently represented to Myriad's counsel that Myriad had also been served in California.  Sullivan Decl. ¶ 11.  However, Myriad has no employees in California and has no agents authorized to receive service in California.  *Ibid.*  In its proof of service filed in this Court, Oracle relies only on Mr. Shohet's purported service to Mr. Dawe at the settlement conference. *See* Proof of Service, Dec. 14, 2010, ECF No. 7.

5

1   concluded without agreement.  *Ibid.*

2                                       **ARGUMENT**

3           Oracle induced its European adversaries in this case to travel to the United States under

4   the pretense of conducting a settlement conference, when its real purpose was to file a complaint

5   and use the conference as an occasion to attempt to effect easy service.   Under these

6   circumstances the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure

7   12(b)(5), and/or service of process must be quashed, because it has not been properly effected on

8   Myriad.

9           In the alternative, the Court should stay these proceedings and compel Oracle to engage

10  in arbitration of its claims, as required by the SCSL's arbitration clause.  First, the arbitration

11  clause is a broad-form clause encompassing all of Oracle's claims, and federal policy favors

12  arbitration.   Second, because the arbitration clause specifically incorporates the UNCITRAL

13  Arbitral Rules, under the principle of competence-competence, the arbitrator should decide the

14  scope of arbitrable issues.   Third, even if this Court chooses to determine the scope of the

15  arbitration clause, all of Oracle's claims are subject to mandatory arbitration.   Finally, the

16  poorly-drafted exception in the arbitration clause does not save Oracle's claims from arbitration

17  because the exception must be construed narrowly to make sense, and Oracle's claims do not fall

18  within a narrow interpretation of the exception.  Because the SCSL requires that arbitration take

19  place in San Francisco, London, or Tokyo based on which location is closest to the defendant's

20  principal place of business, the arbitration should take place in London, the closest location to

21  Myriad's principal place of business in Switzerland.

22  **I.       THE COURT SHOULD DISMISS AND/OR QUASH ORACLE'S SERVICE OF
23           PROCESS**

24          A.      Service of Process That is Procured by a Plaintiff's False Representations is
25                  Invalid.

26          It is a well-established rule "that if a person is induced by artifice or fraud to come within

27
28
                                                    6

the jurisdiction of the court for the purpose of procuring service of process, such fraudulent abuse of the writ will be set aside upon proper showing." *Commercial Mutual Accident Co. v. Davis*, 213 U.S. 245, 256 (1909) (citing *Fitzgerald & Mallory Const. Co. v. Fitzgerald*, 137 U.S. 98, 105 (1890)); *see also Fischer v. Munsey Trust Co.*, 44 App. D.C. 212, 216 (1915).   As another federal district court observed, "[t]he overwhelming majority of cases support th[is] view." *K Mart Corp. v. Gen-Star Industries Co., Ltd.*, 110 F.R.D. 310, 312 (E.D. Mich. 1986); *see also* H.H. Henry, *Attack on Personal Service as Having Been Obtained by Fraud or Trickery*, 98 A.L.R.2d 551 (1964) (collecting cases).

Denying litigants an opportunity to profit from this kind of subterfuge makes good practical sense.  "The law favors the compromise and settlement of disputed claims, and should protect a nonresident" who enters a jurisdiction on the other party's offer to discuss a possible settlement.  *Oliver v. Cruson*, 153 F. Supp. 74, 77 (D. Mont. 1957) (quoting *State ex rel. Ellan v. District Court of Eighth Judicial Dist.*, 33 P.2d 526, 530 (Mont. 1934)) (internal quotation marks and citation omitted).  To allow plaintiffs to obtain service of process by falsely offering to settle a case would reward bad behavior and would deter foreign parties from agreeing to pre-filing settlement discussions.

A number of courts have adopted "a bright-line rule prohibiting service of process where a plaintiff has induced a defendant to enter the jurisdiction for talks, unless the plaintiff first warns the defendant before he enters the jurisdiction that he may subject himself to service, or gives the defendant an opportunity to leave the jurisdiction before service is made if settlement talks fail." *May Dept. Stores Co. v. Wilansky*, 900 F. Supp. 1154, 1164 (E.D. Mo. 1995); *Coyne v. Grupo Indus. Trieme, S.A. de C.V.*, 105 F.R.D. 627, 630 (D.D.C. 1985) (noting "a strong presumption in favor of quashing service whenever a defendant enters the jurisdiction for settlement talks at plaintiff's invitation and the plaintiff has not clearly and unequivocally alerted the defendant before the trip that the defendant would be served"); *Voice Systems Marketing Co.*

7

MYRIAD GROUP A.G'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION,  Case No. 10-CV-5604-SBA

*v. Appropriate Technology Co.*, 153 F.R.D. 117, 119-120 (E.D. Mich. 1994); *Henkel Corp. v. Degremont, S.A.*, 136 F.R.D. 88, 96 (E.D. Pa. 1991); *Commercial Bank & Trust Co. v. District Court of Fourteenth Judicial Dist.*, 605 P.2d 1323, 1326 (Okla.1980).   This simple rule conserves judicial resources by "avoid[ing] inherently difficult determinations as to who initiated meetings, who relied on statements made by whom, and whether the plaintiff engaged in good faith settlement." *K Mart*, 110 F.R.D. at 313.

Fairness, sound policy and the interest of the United States in maintaining a reputation as hospitable to foreign business activity dictate that this rule should be enforced with special zeal in cases where foreign citizens or subjects travel to this country—at the express request of a U.S. business—in a good-faith attempt to resolve a dispute with United States citizens. *Cf. K Mart*, 110 F.R.D. at 315.

### B.   Oracle's Actions Made the Service of Process Invalid.

At  Oracle's  request,  Myriad  sent  its  agents  to  the  United  States  for  settlement discussions.  Oracle did not warn Myriad that it would potentially subject itself to service by sending its representatives to the U.S. to attend the settlement conference.  Nor did Oracle wait until the settlement talks failed to reach a resolution and give Myriad's representatives an opportunity to leave the United States.  Instead, Oracle's attorney handed Oracle's complaint to Myriad's Mr. Dawe while the parties' settlement discussions were ongoing.  Sullivan Decl. ¶ 10. Thus, consistent with the bright-line rule followed in the *May Department Stores*, *Coyne*, *K Mart*, and other cases, the service was improper and no further inquiry is necessary.

Even if the Court believes that an inquiry into Oracle's intentions is required, it should reach the same conclusion.  Analysis of Oracle's actions reveals that Oracle acted in bad faith. As noted above, Oracle filed its complaint while the settlement meeting was on a lunch break. *Id.* ¶ 8.  Knowing that the complaint had been filed, Oracle said nothing to Myriad and continued the discussion for nearly two more hours, taking another break and resuming discussions yet

8

again.  *Id.* ¶¶ 8-10.  Even after receiving a hard copy of the complaint, Mr. Shohet and Oracle continued the negotiations for nearly an hour before finally revealing that the suit had been filed and purporting to serve Mr. Dawe.  *Id.* ¶ 10.

The conduct of Oracle and its attorneys is a textbook example of bad faith.  Myriad's representatives came to the negotiation without a hidden agenda and with the hope and expectation that a mutually-agreeable settlement could be reached without resorting to the judicial process.[4]  Instead, they were blindsided by being handed a complaint in the middle of the parties' discussions.  The clear inference is that by resuming the settlement negotiations after filing the complaint, Oracle—which had requested that the discussions take place in the United States—was attempting to prolong the parties' discussions so that it could attempt to serve Myriad's representatives while they were not only in the country but engaged in a meeting with Oracle's representatives.  Once it filed suit, the most obvious reason Oracle could have had to continue the discussions without disclosing the filing was a desire to serve Myriad's representatives before they returned to Europe.

The facts here are similar to those encountered by the District Court for the Eastern District of Michigan in *Voice Systems*.  In *Voice Systems*, the plaintiff induced the defendant into remaining in the jurisdiction for another day with the ostensible purpose of continuing settlement discussions, but with the secret intent to serve the defendant with process.  153 F.R.D. at 120. The court concluded that the plaintiff's deception made the service invalid.  *Ibid.*

The Court should reach the same conclusion here.  The Court need not decide whether Oracle began the negotiations in good faith, because Oracle certainly acted in bad faith by continuing the negotiations for two hours after filing its complaint, for the apparent purpose of

---

[4] There is no doubt that both parties expected that litigation would follow if a settlement could not be reached, but that expectation is common to all pre-filing settlement discussions. Allowing the conduct that occurred here to be successful will have the effect of chilling pre-filing

9

keeping Myriad's representatives in the country.   The most likely inference from Oracle's behavior is that it was attempting to attain a strategic advantage over Myriad.

Indeed, Oracle's deceptive conduct, if approved by the Court, will give Oracle a significant and unfair advantage over Myriad in resolving this dispute.   Prior to the filing of the instant suit, both sides realized there was a significant chance settlement negotiations would fail, and that litigation would be the inevitable result.   Oracle is incorporated in Delaware, Compl. ¶ 2, and could reasonably have anticipated that its European adversaries would prefer to litigate there rather than on the West Coast.   In fact, after Myriad learned that Oracle had filed suit, Myriad quickly entered its own Complaint in Delaware.   *See* Complaint, Myriad Group A.G. v. Oracle America, Inc., No. 1:10-cv-01087-SLR (D. Del. Dec. 10, 2010).   Now Oracle takes the position that Myriad's Delaware claims should be raised as compulsory counterclaims in this suit, because it was filed and served first.[5]

This conduct, combined with Oracle's attempt to evade arbitration which is also discussed herein, amounts to blatant forum-shopping on Oracle's part.   Oracle drafted the SCSL, an online, click-through adhesion contract, with an arbitration clause that would require arbitration in its home field, San Francisco, anytime a party to an SCSL sued Oracle.   On the other hand, the SCSL specifies that if Oracle is the plaintiff, the dispute could be submitted to one of three locations that may or may not be the home field of the defendant.   Oracle has now tried to evade the terms of the clause it drafted by deceptively enticing Myriad to the U.S. to attempt to effect easy service requiring litigation in California and by ignoring the terms of the SCSL's arbitration clause, which would require arbitration in London.

---

settlement discussions.

[5] Myriad's Complaint in the Delaware action asserts claims for breach of the JSPA, violation of the Lanham Act, tortious interference with Myriad's prospective economic advantages, and unfair competition under California state law.   None of these claims concern the validity or interpretation of the SCSL, and therefore Myriad does not believe these claims fall within the

10

If Oracle's gambit succeeds, Myriad will have to spend significant amounts of money and time sending its representatives across the world to litigate its dispute with Oracle in Oracle's home district.  Myriad is a much smaller company than Oracle and can ill afford to squander its limited resources in such a way.  The judicial system should not tolerate such gamesmanship by Oracle, and should instead declare the service of process to be invalid so that the dispute between Oracle and Myriad can be resolved after proper service, in a location that is fair to both parties.

     C.     <u>The Court Should Dismiss the Complaint, or Alternatively Quash the Service of Process.</u>

"The choice between dismissal and quashing service of process is in the district court's discretion."  *Stevens v. Security Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976). Because Oracle's conduct demonstrated bad faith, dismissal is the appropriate remedy.  Other courts have concluded that dismissal was the appropriate response to a plaintiff's trickery in attempting to obtain service.  *See E/M Lubricants, Inc. v. Microfral, S.A.R.L,*  91 F.R.D. 235, 238 (N.D. Ill. 1981); *Coyne,* 105 F.R.D. at 631; *K Mart,* 110 F.R.D. at 315; *Voice Systems,* 153 F.R.D. at 120. However, if the Court decides not to exercise its discretion to dismiss the complaint in its entirety, it should at least quash the process purportedly served on Myriad via Mr. Dawe.  Both established caselaw and basic fairness make that remedy necessary at a minimum.

**II.    IF THE COURT DOES NOT DISMISS ORACLE'S ACTION FOR IMPROPER SERVICE, IT SHOULD STAY THE INSTANT ACTION AND COMPEL ARBITRATION**

     A.     <u>The Parties Have Entered Into a Broad-Form Arbitration Agreement, Thereby Creating A Presumption in Favor of Arbitration</u>

Section 8.6 of the SCSL is a broad-form arbitration clause requiring arbitration of "[a]ny dispute arising out of or relating to this License."  Broad-form clauses are distinguished from "narrow" arbitration agreements that may be expressly limited to specific issues.  *See Prima*

SCSL's arbitration clause.

*Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (arbitration clause applying to all disputes "arising out of or relating to [the parties'] agreement" was a "broad arbitration clause"); *compare Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) (broad-form clause applying to all disputes "arising in connection with" the agreement between the parties applies to any dispute connected in any way with the parties' agreement) with *Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (narrow arbitration clause limited to disputes "arising hereunder" applies only to disputes relating to performance or interpretation of contract).  Oracle implemented the SCSL in order to license its technology internationally in an environment where it is common to have arbitration as the preferred method of dispute resolution.  Seen in light of the strong federal policy favoring arbitration, the broad language of the SCSL's arbitration clause requires that all of Oracle's claims be submitted to arbitration.

The FAA embodies a clear federal policy in favor of arbitration.  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Simula*, 175 F.3d at 719.  This policy creates a presumption that, because the parties entered into an arbitration agreement, they intended to arbitrate all of their  disputes.  *See United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-583 (1960) (arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage").  Moreover, because the SCSL's arbitration clause relates to an international transaction, the presumption in favor of arbitration is heightened.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 640 (1985) (holding that the presumption in favor of arbitration applies with "special force in the field of international commerce"); *Simula* 175 F.3d at 726 ("the emphatic federal policy in favor of arbitral dispute resolution applies with special force in the field of international commerce" (*quoting Mitsubishi Motors*, 473 U.S. at 631)).  Furthermore, the presumption in favor of arbitration applies with equal force to claims arising in contract, in tort, or pursuant to

12

statute. *See, e.g.*, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989) (applying presumption favoring arbitration to breach of contract claim); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) (same regarding claims under the Securities Exchange Act); *Mitsubishi Motors*, 473 U.S. 614 (same regarding claims under the Sherman Act).

There can be no dispute that the parties entered into a valid arbitration agreement. Moreover, the arbitration clause expressly incorporates the Rules of Arbitration of the United Nations Commission on International Trade Law (the "UNCITRAL Rules"). Rule 23 of the UNCITRAL Rules expressly states that the Arbitral Tribunal has the power to rule on its own jurisdiction. Under these circumstances, the scope of the arbitration clause—*i.e.*, the question of which claims are subject to arbitration and which (if any) might be litigated—must be decided by the Arbitral Tribunal and not the Court. Thus, as a threshold matter the Court must stay this litigation and compel arbitration in order to permit the arbitrator to decide the scope of the arbitration agreement.

Finally, even if the Court were permitted to determine the scope of the arbitration agreement, the plain language of the agreement and the strong presumption in favor of international arbitration would require the Court to stay this action and compel arbitration of all of Plaintiff's claims.

B.   The Principle of Competence-Competence and the Selection of the UNCITRAL Arbitral Rules in the SCSL Demonstrates The Parties' Intent to Have An Arbitrator Decide the Validity of the Arbitration Clause

The parties expressly agreed that the arbitrator and not the Court must decide whether Plaintiff's claims are subject to arbitration when they incorporated the UNCITRAL Rules into the arbitration agreement. This agreement is binding on the parties and this Court must enforce it by staying this litigation and requiring the parties to arbitrate this threshold issue pursuant to the rule laid down by the Supreme Court in *First Options of Chicago, Inc., v. Kaplan*, 514 U.S. 938

13

(1995).  In *First Options,* the Supreme Court squarely confronted the question of "whether the arbitrators or the courts have the primary power to decide whether the parties agreed to arbitrate a dispute."  *Id.*  The Supreme Court held that the default rule is that arbitrability is a question for the Court, not the arbitrator.  *Id.* at 944.  The Court further held, however, that the parties are free to opt out of this default rule and to agree that the arbitrator should decide arbitrability provided they "objectively revealed an intent to submit the arbitrability issue to arbitration."  *Id.*

Courts have consistently held that the incorporation of arbitral rules granting the arbitrator the power to decide arbitrability—including the UNCITRAL Rules—satisfies the *First Options* test.  *See Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'Ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA rules … the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *see also Grynberg v. BP PLC*, 596 F. Supp. 2d 74, 79 (D.D.C. 2009) (*citing Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, 1999 WL 1079625 at *2 (9th Cir. 1999) (same holding with respect to UNCITRAL rules).[6]

Here, the arbitration clause expressly states that "Arbitration shall be administered: … (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein."  Moreover, Article 23 of the UNCITRAL Rules states that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement."  As the district court held in *Grynberg*, "incorporation of the UNCITRAL Rules demonstrates that the parties intended the arbitrator to determine whether

---

[6] *See also Shaw Grp. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122, 124-25 (2d Cir. 2003) (same holding with respect to ICC rules); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472-473 (1st Cir. 1989) (same holding with respect to ICC rules); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001) (same holding with respect to AAA rules), *aff'd on other grounds*, 312 F.3d 1349 (11th Cir. 2002).

14

plaintiff['s …] claims can be arbitrated." *Grynberg v. BP PLC*, 596 F. Supp. 2d at 79 (*citing Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, 1999 WL 1079625 at *2 (9th Cir. 1999)). Although *Grynberg* was decided under the 1976 UNCITRAL Rules, the 2010 Rule on competence-competence is no different.   Thus, the parties' express incorporation of the UNCITRAL Rules into the arbitration clause reflects their intent that the arbitrator determine the scope of the arbitration clause, and therefore this Court must compel arbitration so that the arbitrator can determine his or her own jurisdiction.

> C.     Even If This Court Were to Determine the Scope of the Arbitration Clause, Oracle's Claims Are Subject to Arbitration

Even if the parties had not incorporated the UNCITRAL Rules into the SCSL's arbitration clause, the Court should still compel arbitration. "Unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration should not be denied.  *United Steelworkers of America*, 363 U.S. at 582-583. Any doubts "should be resolved in favor of coverage."  *Id.*  Because each of Oracle's claims "aris[es] out of or relat[es]" to the SCSL, *see* SCSL, Article 8.6(a), the arbitration clause applies to the instant dispute by its plain terms.

First, Oracle's primary claim is that Myriad has breached the SCSL, specifically Attachment D (referred to by Oracle as the "Commercial Use License"), by "failing to pay royalties and failing to report shipments as required under those licenses."  Complaint ¶¶ 55-60. Oracle's breach of contract claim arises out of the SCSL, and certainly relates to it.

Second, to support its claims for unfair competition under the Lanham Act and California law and its copyright infringement claim, Oracle alleges that because the MSA expired, Myriad lost its license to use the TCKs licensed by Oracle and the corresponding ability to brand its products as Java-compliant, but has nevertheless continued to engage in both activities.

15

Complaint ¶¶ 61-66.  In other words, Oracle contends that Myriad no longer has a license to use Oracle's intellectual property and thus Myriad's use is infringing.[7]  These claims also arise out of and relate to the SCSL.  Attachment E of the SCSL is the TCK License that requires a separate MSA; the existence of the MSA depends entirely upon the parties first having entered into the SCSL.  Complaint ¶ 30.  The central inquiry of the parties' dispute with respect to Oracle's Lanham Act, unfair competition, and copyright infringement claims is whether Myriad's use of certain intellectual property is covered by the SCSL or the JSPA.  Thus, all of Oracle's claims are essentially contract claims "arising out of or relating to" the SCSL and therefore subject to mandatory arbitration.

### 1. Where a Contract Contains a Broad-Form Arbitration Clause, Any Dispute that "Touches Matters" Relating to the Contract Should Be Arbitrated

As discussed above, the instant arbitration clause is a broad-form clause, rather than a narrow clause, and thus any claim by Oracle that merely touches upon the SCSL should be arbitrated.  The Ninth Circuit squarely addressed the scope of arbitrable issues under a similar broad-form arbitration clause in *Simula v. Autoliv*, 175 F.3d 716.

Simula, a U.S. inventor of an automotive air-bag system, claimed that Autoliv's airbags replicated features of Simula's system.  Simula brought suit against Autoliv, alleging violations of the Sherman Act, Lanham Act, and tort claims for the alleged misappropriation of trade secrets, breach of non-disclosure agreements, and defamation.  *Simula*, 175 F.3d at 719.  Autoliv moved to compel arbitration of these claims pursuant to a broad-form arbitration clause stating that "all disputes arising in connection with this Agreement" shall be settled by arbitration.  *Id*. at 720.  The district court granted Autoliv's motion, and Simula appealed.

The Ninth Circuit affirmed the district court, holding that the parties' broad-form

---

[7] Myriad contends that its use of Oracle's intellectual property is covered by a separate license—the JSPA—and is not affected by the SCSL .

16

arbitration agreement compelled arbitration of all of Simula's claims.   The Court noted the distinction between narrow arbitration clauses applying to disputes "arising hereunder" or "arising out of" the relevant contract, and broad-form clauses such as those "arising in connection with" the relevant contract, that require a liberal interpretation. *Id*. at 720 n.3.   In recognition of the federal policy favoring arbitration, particularly in the field of international commerce, the Court held that it must "construe arbitration clauses expansively" to reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."   *Id*. at 720-721.   Simula's factual allegations needed only "touch matters" covered by the contract containing the arbitration clause to be subject to arbitration, and any doubts were to be resolved in favor of arbitrability.   *Id*. at 721. The Court considered Simula's antitrust, unfair competition, trade secret misappropriation, breach of non-disclosure agreements, and defamation claims to be dependent upon the agreement between Simula and Autoliv containing the arbitration clause, in that the claims either required the Court to interpret the agreement, concerned conduct which would not have occurred but for the existence of the agreement, or "formed a significant part of the business relationship" between the parties subsumed by the agreement containing the arbitration clause.  *Id*. at 721-725.

Here, the SCSL's arbitration clause uses the phrase "relating to," which is equally if not more expansive than the arbitration language at issue in *Simula*.  *See Schoenduve Corp. v. Lucent Technologies, Inc.*,  442 F.3d 727, 732 (9th Cir. 2006), *citing Valentine Sugars, Inc. v. Donau Corp.*, 981 F.2d 210, 213 n.2 (5th Cir. 1993) (when an arbitration clause calls for "any dispute 'relating to or arising out of' the agreement" to be submitted to arbitration, the court reads the clause "to reach all aspects of the relationship").  Given the breadth of such language, there is no doubt that all of Oracle's claims "touch matters" covered by the SCSL.  Like the parties in *Simula*, Oracle's claims require the Court to interpret the SCSL and the JSPA, concern conduct that would not have occurred but for the existence of the SCSL (since Oracle's Lanham Act,

unfair competition, and copyright infringement claims depend on the expiration of the MSA, the existence of which depends on the SCSL), and the SCSL forms a significant part of the parties' business relationship. Accordingly, as set forth in *Simula*, the Court should compel arbitration of each of Oracle's claims pursuant to the federal policy favoring arbitration, particularly in matters of international commerce, such as the instant dispute between Oracle and Myriad.

### 2. The Exception to the Arbitration Clause Must Be Construed Narrowly, and Does Not Apply to Oracle's Claims

Oracle may argue that its claims are not subject to arbitration because they fall within a carve-out to the arbitration agreement relating to intellectual property rights (the "IP Carve-Out"). The IP Carve-Out states that "either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights[8] or with respect to Your compliance with the TCK license." These claims would fail, because, as discussed above, Oracle's claims arise out of or relate to the SCSL and not out of its intellectual property rights. The IP Carve-Out must be interpreted narrowly to exclude claims like Oracle's, which are essentially contract claims that require the Court to consider only the SCSL and the JSPA for their resolution, and not any of Oracle's intellectual property rights. Any other interpretation would gut the arbitration provision of any meaning. To the extent the language of the IP Carve-Out is ambiguous, any tension between the arbitration clause and the IP Carve-Out must be resolved in favor of arbitration.[9]

---

[8] The SCSL defines Intellectual Property Rights as "worldwide statutory and common law rights associated solely with (i) patents and patent applications; (ii) works of authorship including copyrights, copyright applications, copyright registrations and "moral rights"; (iii) the protection of trade and industrial secrets and confidential information; and (iv) divisions, continuations, renewals, and re-issuances of the foregoing now existing or acquired in the future."

[9] Such a contention would also be inappropriate for the additional reason that, under the principle of competence-competence invoked by the parties' selection of the UNCITRAL rules, it is properly addressed to the arbitrator and not to this court. *See supra* Part II.B.

First, in order for the exception to apply to Oracle's claims, the Court would have to interpret the exception broadly. However, a broad interpretation of the exception would render the arbitration clause meaningless. Because the SCSL is a license for the use of Oracle's intellectual property, under Oracle's view of the exception any dispute arising under the SCSL would "relate to" Intellectual Property Rights. Moreover, any claim for breach of the SCSL—which would invariably involve allegations that Myriad has used Oracle's intellectual property outside the scope of the license—would "relate to" Oracle's intellectual property rights because all unauthorized, unlicensed uses of intellectual property are infringing. Such an interpretation of the arbitration clause would encompass almost all claims for breach of the SCSL and the exception would therefore swallow the rule.

Exceptions in arbitration clauses that swallow the general provision are considered "pathological,"[10] and the Court should try to reform such exceptions so that they do not conflict with the general arbitration provision. *See, e.g.*, *TES Franchising, LLC v. Loveman*, No. 3:04cv219, 2004 U.S. Dist. LEXIS 7101 (D. Conn.) (denying request to enjoin arbitration on grounds that interpreting a breach of a licensing agreement to fall within an arbitration exception for claims "relating to" the validity and ownership of intellectual property would make arbitration clause meaningless); *Quizno's Master v. Kadriu*, No. 04 C 4771, 2005 U.S. Dist. LEXIS 7626, at *7-9 (N.D. Ill. Apr. 4, 2005) (declining to decide claim for post-termination remedies, even though claims arguably fell within the trademark exception to the arbitration clause, because they are "closely intertwined with questions of the contract's validity, which

---

[10] Pathological arbitration clauses may be defined as those drafted in such a way that they may lead to disputes over the interpretation of the arbitration agreement, may result in failure of the arbitral clause, or may result in the unenforceability of an award. See Doak Bishop, *A Practical Guide for Drafting International Arbitration Clauses*, 1 Int'l Energy L. & Tax'n Rev. 16 (2000). Defective arbitration clauses were first denominated as "pathological" in 1974 by Frederick Eisemann, who served at that time as the Secretary General of the ICC International Court of Arbitration. *Id*.

19

must be decided by the arbitrator"); *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009) (compelling arbitration of equitable claim where arbitration clause stated "parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose" because "it was a rational interpretation of the agreement to say that the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the arbitration").  Typically, parties incorporate intellectual property exceptions to arbitration clauses to cover disputes regarding the validity of intellectual property or claims for temporary injunctive relief. *See* Gary B. Born, *International Arbitration and Forum Selection Agreements: Drafting and Enforcing* 42 (Kluwer Law International 2006). The Court should construe the IP Carve-Out narrowly, in light of the presumption in favor of arbitration, to cover only disputes concerning the validity of Oracle's intellectual property.  Because all of Oracle's claims are essentially contract claims that are subject to mandatory arbitration and the IP Carve-Out does not apply.

At a minimum, by including an exception susceptible of a reading so broad as to swallow the rule, the drafters of the SCSL's arbitration clause rendered it ambiguous.  Reflecting the federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  As noted above, this presumption applies with "special force in the field of international commerce," in part out of a concern that a "refusal by the courts of one country to enforce an international arbitration agreement … would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.  *Mitsubishi Motors*, 473 U.S. at 631, 640.  The manner in which Oracle attempted to effect service on Myriad and its current attempt to forum-shop by evading arbitration illustrate the "unseemly and mutually destructive jockeying" that the United States Supreme Court in *Mitsubishi Motors* intended to

20

prevent by upholding the presumption in favor of arbitration.  Any ambiguity in the IP Carve-Out cuts in favor of upholding the parties' agreement to arbitrate.  The parties' inclusion of the UNICTRAL Rules dictates an intention of the parties to allow the arbitrator to determine its jurisdiction of Oracle's claims.

Finally, if an arbitrator or this Court determines that some of Oracle's claims are subject to arbitration but others are not, the claims that are subject to arbitration must go to arbitration and the Court should exercise its discretion to stay the non-arbitrable claims pending the outcome of that arbitration.  *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (requiring courts to "rigorously enforce" arbitration agreements, even if the result is "piecemeal litigation"); *Simitar Entertainment, Inc. v. Silva Entertainment, Inc.*, 44 F.Supp.2d 986, 997 (D. Minn. 1999) (expanding stay to encompass non-arbitrable claims is appropriate where arbitrable claims predominate, or where outcome of non-arbitrable claims will depend upon arbitrator's decision).  The court's opinion in *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 82-83 (D. Del. 2003), is instructive.  There, the arbitration provision excepted from arbitration all claims for equitable relief.  *Id.* at 82.  Thus, the plaintiff argued that its claims for equitable relief for the infringement of its intellectual property rights were, by the terms of the license, not to be arbitrated and must be heard before any arbitration can occur.  *Id.*  Noting the Supreme Court's categorical statement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and that there are "few things in the law that have been the subject of so consistent and insistent language from Congress and the courts as the deference that should be given to contractual agreements to arbitrate," the court disagreed with the plaintiff.  *Id.* at 81.  While the court found that the plaintiff had a right to address its equitable claims with the court, rather than an arbitrator, it did not follow "that any claim for equitable relief must be heard before there can be an arbitration," as that would "effectively prevent arbitration of the parties' competing claims respecting termination rights under the license."  *Id.*

21

at 82-83.   Because "any decisions about the termination rights will necessarily affect any determination of whether [the defendant's] actions were unlicensed and in violation of [the plaintiff's] copyright," not allowing those contract claims to first be decided by arbitration would "swallow the rest of the rights in the [arbitration] clause." *Id.* at 83.

Because all of Oracle's claims are essentially contract claims, they should be submitted to arbitration.   If the Court determines that litigation should proceed on some of Oracle's claims, those claims should be stayed pending resolution of the contractual issues would predominate over any of these claims.   Therefore the Court should stay litigation of such claims, pending the arbitrator's resolution of the contractual dispute between the parties.

## CONCLUSION

Myriad respectfully requests that this Court enter an order dismissing Oracle's complaint and/or quashing the purported service of process on Myriad.   In the alternative, Myriad requests that this Court compel arbitration in London and grant a stay of Oracle's action until the arbitration is complete.

MYRIAD GROUP A.G'S MOTION TO DISMISS AND/OR QUASH SERVICE OF PROCESS OR, IN THE ALTERNATIVE, TO STAY ACTION AND COMPEL ARBITRATION,  Case No. 10-CV-5604-SBA

DATED:  January 3, 2011

KING & SPALDING LLP


By:  /s/ Geoffrey M. Ezgar

GEOFFREY M. EZGAR (SBN 184243)
gezgar@kslaw.com
KING & SPALDING LLP
101 Second Street
Suite 2300
San Francisco, CA 94105
Telephone:  (415) 318-1200
Facsimile:   (415) 318-1300

KEVIN R. SULLIVAN (*Pro Hac Vice Pending*)
krsullivan@kslaw.com
TIMOTHY J. SULLIVAN (*Pro Hac Vice Pending*)
tjsullivan@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Ave, NW
Suite 200
Washington, D.C. 20006-4707
Telephone:  (202) 737-0500
Facsimile:   (202) 626-3737

BRIAN A. WHITE (*Pro Hac Vice Pending*)
bwhite@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 572-4600
Facsimile:   (404) 572-5100

Attorneys for Defendant
Myriad Group, A.G.

23