1   JEFFREY M. SHOHET, Bar No. 067529
    jeffrey.shohet@dlapiper.com
2   CHRISTOPHER J. BEAL, Bar No. 216579
    cris.beal@dlapiper.com
3   AMANDA C. FITZSIMMONS, Bar No. 258888
    amanda.fitzsimmons@dlapiper.com
4   DLA PIPER LLP (US)
    401 B Street, Suite 1700
5   San Diego, CA  92101-4297
    Tel:  619.699.2700
6   Fax:  619.699.2701

7   ELIZABETH ROGERS BRANNEN, Bar No. 226234
    elizabeth.brannen@oracle.com
8   500 Oracle Parkway
    Redwood City, CA 94065
9   Tel: 650.506.5200
    Fax: 650.506.7114
10
    Attorneys for Plaintiff
11  Oracle America, Inc.

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                              OAKLAND DIVISION

15

16  ORACLE AMERICA, INC.,                CASE NO.  10-CV-5604-SBA

17             Plaintiff,                **ORACLE AMERICA INC.'S OPPOSITION
                                         TO MYRIAD GROUP AG'S MOTION TO
18        v.                             DISMISS AND/OR QUASH SERVICE OF
                                         PROCESS OR, IN THE ALTERNATIVE,
19  MYRIAD GROUP AG,                     TO STAY ACTION AND COMPEL
                                         ARBITRATION**
20             Defendant.
                                         Date:      April 5, 2011
21                                       Time:      1:00 p.m.
                                         Place:     Courtroom 1
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF ISSUES ............................................................................................. 2

III. FACTUAL BACKGROUND .......................................................................................... 3

    A. The Parties .......................................................................................................... 3

    B. The Underlying Dispute ..................................................................................... 4

    C. Commencement of Litigation ............................................................................ 4

    D. Subsequent Proceedings .................................................................................... 6

IV. ARGUMENT ................................................................................................................... 7

    A. Oracle has properly served Myriad. ................................................................. 7

        1. Oracle's service on Mr. Dawe was proper. ......................................... 7

        2. Oracle properly served Myriad's agent in San Mateo, California. ............. 9

        3. Myriad is estopped from denying service on its San Mateo agent. .......... 10

        4. If the Court finds service ineffective, it should quash the service and give Oracle an opportunity to re-serve. ............................................... 11

    B. Oracle's claims are not subject to arbitration. ........................................... 11

        1. This Court has jurisdiction to determine arbitrability. ............................. 12

        2. Oracle's non-contract claims arise because Myriad allowed its Master Support Agreement—an agreement which is not part of the SCSL and does not have an arbitration provision—to lapse. ................... 15

        3. The SCSL's arbitration provision does not encompass Oracle's non-contract claims because they are specifically excepted from arbitration. ............................................................................................... 17

        4. Oracle's claims for injunctive relief are not arbitrable. ......................... 19

        5. Myriad has waived its right to compel arbitration. .................................. 19

        6. If the Court finds that any of Oracle's action must be arbitrated, it should permit the non-arbitrable claims to proceed concurrently ............ 23

V. CONCLUSION ............................................................................................................. 24

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

CASES

4

*AT&T Corp. v. Innocom Telecom LLC*,
   Case No. 06-cv-5400-EDL, 2007 WL 163193 (N.D. Cal. Jan. 17, 2007) ....................... 21, 22

5

6

*AT&T Corp. v. Vision One Sec. Sys.*,
   914 F. Supp. 392 (S.D. Cal. 1995) ........................................................................... 18, 20, 23

7

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) .................................................................................................... 13

8

9

*Bastanchury v. Times Mirror Co.*,
   68 Cal. App. 2d 217 (1945) ......................................................................................... 10

10

11

*Brooks v. Robert Larson Auto. Group*,
   Case No. C09-5016-FDB, 2009 WL 2853452 (W.D. Wash. 2009) ............................ 20

12

*Chauffeurs, Teamsters and Helpers, Local Union v. C.R.S.T., Inc.*,
   795 F.2d 1400 (8th Cir.) (en banc), *cert. denied*,
   479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986) ............................................... 17

13

14

*Comb v. Paypal, Inc*,
   218 F. Supp. 2d 1165 (N.D. Cal. 2002) ...................................................................... 12

15

16

*Comerica Bank-California v. Sierra Sales, Inc.*,
   No. C-94-20229-PVT, 1994 WL 564581 (N.D. Cal. Sept. 30, 1994) .......................... 8

17

18

*Commercial Mut. Accident Co. v. Davis*,
   213 U.S. 245 (1909) .................................................................................................... 9

19

*Cox v. Ocean View Hotel Corp.*,
   533 F.3d 1114 (9th Cir. 2008) .................................................................................... 13

20

21

*Coyne v. Grupo Indus. Trieme, S.A. de C.V.*,
   105 F.R.D. 627 (D.D.C. 1985) ............................................................................... 9, 11

22

23

*Creager v. Yoshimoto*,
   Case No. 05-1985-JSW, at 11 (N.D. Cal. Nov. 22, 2005) ........................................... 8

24

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1983) .................................................................................................... 23

25

26

*Elliano v. Assurance Co. of Am.*,
   3 Cal. App. 3d 446 (1970) ........................................................................................... 10

27

28

1

2

### TABLE OF AUTHORITIES
#### (continued)

**Page**

3

4

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995) ........................................................................................... 12

5

*Gateway Coal Co. v. United Mine Workers,*
    414 U.S. 368 (1974) ..................................................................................... 11, 12

6

7

*Gutor Int'l AG v. Raymond Packer Co., Inc.,*
    493 F.2d 938 (1st Cir. 1974) ............................................................................. 21

8

9

*Henkel Corp. v. Degremont,*
    136 F.R.D. 88 (E.D. Pa. 1991) ........................................................................... 8

10

*ITV Direct, Inc. v. Healthy Solutions, LLC,*
    445 F.3d 66, 72 (1st Cir. 2006) ......................................................................... 21

11

12

*Khachatryan v. Toyota Motor Sales, U.S.A., Inc.,*
    578 F. Supp. 2d 1224 (C.D. Cal. 2008) .............................................................. 9

13

14

*Mitsui & Co. (USA) v. C & H Refinery, Inc.,*
    492 F. Supp. 115 (N.D. Cal. 1980) ................................................................... 20

15

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) .............................................................................................. 12

16

17

*NCR Corp. v. Korala Assocs. Ltd.,*
    512 F.3d 807 (6th Cir. 2008) ............................................................................ 12

18

19

*Noodles Dev., LP v. Latham Noodles, LLC,*
    Case No. 09-CV-1094-PHX-NVW, 2011 WL 204818 (D. Ariz. Jan. 20, 2011) ................. 20

20

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982) ................................................................................ 6

21

22

*Rent-A-Center, West, Inc. v. Jackson,*
    -- U.S. --, 130 S. Ct. 2772 (June 21, 2010) ...................................................... 12

23

24

*SGS-Thomson Microelectronics, Inc. v. United Microelectronics Corp.,*
    No. C-92-1098-DLJ, 1993 WL 2999230 (N.D. Cal. July 21, 1993) ................. 8, 11

25

*Steelworkers v. Warrior & Gulf Co.,*
    363 U.S. 574 (1960) .......................................................................................... 17

26

27

*Telenor Mobile Commc'ns AS v. Storm LLC,*
    524 F. Supp. 2d 332 (S.D.N.Y. 2007) .............................................................. 14

28

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*U.S. v. Park Place Assocs., Ltd.*,

4

563 F.3d 907 (9th Cir. 2009) .................................................................................... 20

5

*Umbenhauer v. Wong*,
969 F.2d 25 (3d Cir. 1992) ....................................................................................... 11

6

*United Computer Sys. Inc. v. AT&T Corp.*,

7

298 F.3d 756 (9th Cir. 2002) .................................................................................... 11

8

*United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*,
897 F.2d 1022 (10th Cir. 1990) ................................................................................ 16

9

10

*Van Ness Townhouses v. Mar Indus. Corp.*,
862 F.2d 754 (9th Cir. 1988) .................................................................................... 21

11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,

12

489 U.S. 468 (1989) .................................................................................................. 12

13

14

**STATUTES**

15

9 U.S.C. § 4 .............................................................................................................................. 11

16

17 U.S.C. § 101 ........................................................................................................................ 5

17

28 U.S.C. § 1404(a) .................................................................................................................. 6

18

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 5, 6

19

Cal. Bus. & Prof. Code § 17500 ............................................................................................. 6

20

Cal. Bus. & Prof. Code § 17508 ............................................................................................. 6

21

Cal. Civ. Code § 1648 ....................................................................................................... 16, 19

22

Cal. Corp. Code § 2105 ............................................................................................................ 11

23

24

Lanham Act, 15 U.S.C. § 1125 ............................................................................................. 5, 6

25

26

**OTHER AUTHORITIES**

27

AAA Arb. R-7 ......................................................................................................................... 14

28

Fed. R. Civ. P. 26(f) ................................................................................................................. 7

DLA PIPER LLP (US)
SAN DIEGO

WEST\223252798.4

-iv-
ORACLE'S OPPOSITION TO MYRIAD'S MOTION TO DISMISS (10-CV-5604-SBA)

**TABLE OF AUTHORITIES**
(continued)

Page

ICC Arb. R. Art. 6.......................................................................................................... 14

UNCITRAL Arb. R. Art. 21 (1976)................................................................................. 14

UNCITRAL Arb. R. Art. 21-22 (2010) ........................................................................... 22

UNCITRAL Arb. R. Art. 23 (2010)................................................................................. 13

Plaintiff Oracle America, Inc. ("Oracle") opposes Myriad Group AG's ("Myriad") Motion to Dismiss and/or Quash Service of Process or, in the Alternative, to Stay Action and Compel Arbitration (Doc. No. 18 (hereafter "Mot. to Dismiss")) on the grounds that Oracle has properly served Myriad with process in this action, and none of Oracle's claims are subject to arbitration.

## I. <u>INTRODUCTION</u>

For at least eight years prior to this litigation, Myriad and its predecessors licensed certain Java™ ME technologies under various commercial licensing agreements with Oracle (including Oracle's predecessor, Sun Microsystems, Inc. ("Sun"), the creator and steward of Java™). Those license agreements granted Myriad the right to access and use Oracle's proprietary source code implementing certain Java™ ME specifications in Myriad's own commercial products, as well as the corresponding Technology Compatibility Kits ("TCKs")—software essential to determine whether Myriad's products perform as expected in the Java™ environment and are, therefore, compatible with the relevant Java™ specifications.

In September 2009, just three months after renewing one of its commercial licenses, Myriad ceased reporting and paying the royalties due under its commercial licenses and demanded different licensing terms. In support of its demand, Myriad cited the Java Specification Participation Agreement ("JSPA"), contending—contrary to the JSPA's express terms—that the JSPA granted Myriad a free or extremely low-cost, non-royalty bearing license, to access and make commercial use of the same technologies licensed to it under its existing commercial licenses.

Since September 2009, Myriad has continued to use at least portions of the source code it obtained under its existing licenses with Oracle while refusing to pay royalties under those agreements. Further, in June 2010, Myriad did not renew a separate agreement with Oracle—its Master Support Agreement. Because it did not renew the Master Support Agreement, Myriad was no longer licensed to use Oracle's TCKs or market new products that had not yet passed the relevant TCKs as "Java Compatible™." The TCKs are a critical component of Oracle's software licensed to Myriad as they contain tools essential to test and confirm whether Myriad's products are compatible with the Java™ specifications at issue. Without a TCK license, Myriad cannot

properly market its products as "Java Compatible™."  In June 2010—with the Master Support Agreement having expired and Myriad having failed to pay royalties due under its licenses for nearly a year—Oracle discontinued Myriad's access to the secure site at which Oracle makes its proprietary TCKs (including updates) and source code available to licensees.  Nevertheless, Myriad continues to distribute Sun's proprietary source code and use Oracle's proprietary TCKs to market its products as "Java™ Compatible," claiming it has the right to do so under the JSPA.

Having been unable to reach a compromise resolution of the parties' dispute, Oracle filed suit seeking *inter alia* payment of past-due royalties, damages for Myriad's unlawful use of Oracle's proprietary Java™ code and TCKs, and injunctive relief prohibiting any further infringing use of Oracle's intellectual property by Myriad.  Yet, rather than answer the allegations set forth in Oracle's Complaint, Myriad instead filed its own complaint in Delaware asserting claims that are the mirror image of those Oracle asserts here.  It then filed the instant motion in this action, arguing that claims that bear no relation to the SCSL's arbitration provision should nevertheless be arbitrated while levying serious allegations of bad faith and wrongdoing against Oracle and its counsel.  When distilled to its core, however, Myriad's motion is nothing more than a baseless attempt to distract the Court, further delay Oracle from obtaining its requested relief, and most importantly take the focus off Myriad's own wrongful and egregious conduct toward Oracle.  Because Oracle has properly served Myriad and none of Oracle's claims are arbitrable, the Court should deny Myriad's motion.

## II.    <u>STATEMENT OF ISSUES</u>

1.    Whether Oracle properly served Myriad with process.

2.    Whether any of Oracle's claims are subject to the arbitration provision set forth in the parties' Sun Community Source License ("SCSL") agreement, such that they must be compelled to arbitration.

3.    If the Court determines that any of Oracle's claims are arbitrable, whether Myriad's conduct in pursuing a parallel action in Delaware constitutes a waiver of its right to arbitration.

/////

## III.   FACTUAL BACKGROUND

### A.   The Parties

Oracle, the successor-in-interest to Sun Microsystems, Inc. ("Sun"), is a Delaware corporation with its principal place of business in Redwood City, California.  On or about February 15, 2010, Oracle USA, Inc. merged with and into Sun.  Sun, the surviving corporation, was then renamed "Oracle America, Inc."  Oracle designs, manufactures, markets, and services network computing infrastructure solutions worldwide.  Oracle is also the creator, developer, and licensor of Java™ technology.  (Declaration of Rupindera Rai ("Rai Decl."), ¶ 4.)  Myriad characterizes Java™ as a "programming language."  (Mot. to Dismiss at 2:15-18.)  But Java™ is much more than a programming language; it is a standardized application programming environment that affords software developers the opportunity to create and distribute a single version of programming code that is capable of operating on many different, otherwise incompatible systems platforms and browsers.  (Oracle Compl. [Doc. No. 1] at ¶ 1.)  Through its creation of Java™, Sun provided a solution to the widespread incompatibility that had, up until that point, stymied the computer industry.

Myriad is a Swiss corporation with its principal place of business in Dubendorf, Switzerland.  (Myriad Compl. at ¶ 1, attached to Decl. of Jeffrey M. Shohet as Ex. A (hereafter "Myriad Compl.").)  Myriad was formed as the result of a merger between Purple Labs and Esmertec AG ("Esmertec").  Esmertec was also a former licensee of Sun's.  (Rai Decl., ¶ 5.)  Myriad is a mobile software company and licensee of Oracle's Java™ technology.  Myriad provides browsers, messaging, Java™, social networking, user interfaces and middleware for all types of mobile phones, from low cost handsets to advanced smartphones.  (Oracle Compl. at ¶ 3.)  "Myriad Group AG" has not formally designated an agent for service of process in the State of California.  On its website, however, Myriad indicates that it maintains a United States office in San Mateo, California, and conducts business out of that office. (Shohet Decl., ¶¶ 16-21, Ex. B-F.)

/////

/////

### B.     The Underlying Dispute

Over the course of several years, Myriad, through its predecessor Esmertec, entered into various licensing agreements with Oracle, through its predecessor Sun, for the use of certain Java™ technologies.  (Rai Decl., ¶¶ 5-6.)  On or about September 23, 2009, Myriad requested better licensing terms, citing rights it purported to have under the JSPA for certain Java™ technologies for which it was already commercially licensed.  (Oracle Compl. at ¶ 55; Rai Decl., ¶ 9.)  The JSPA is an agreement drafted through the Java Community Process ("JCP"). (Declaration of Patrick Curran ("Curran Decl."), ¶ 3.).  The JCP is a standards-setting body responsible for developing standard technical specifications for Java™ technology.  (Curran Decl., ¶ 2.).  The JSPA, among other things, sets forth certain general principles governing the licensing of Java™ technologies.

Contending that it derived greater rights to use the Java™ technology under the terms of the JSPA than the rights granted under the commercial licenses it had entered into with Oracle, Myriad refused to pay royalties owed under its licensing agreements with Oracle, effectively breaching those agreements.  (Oracle Compl. at ¶ 57.)  Further, Myriad allowed a related agreement with Oracle—its Master Support Agreement ("MSA")—to expire.  Because it allowed the MSA to expire, Myriad was no longer licensed to use Oracle's Java™ software TCKs or market new products that had not yet passed the relevant TCKs as "Java Compatible™." Nevertheless, Myriad continues to distribute Sun's proprietary source code and use Oracle's proprietary TCKs to market its products as "Java Compatible™," claiming it has the right to do so under the JSPA.  (*Id.* at ¶¶ 61-64.)

### C.     Commencement of Litigation

Since September 2009, when Myriad began breaching its commercial licenses, the parties have been engaged in discussions, which Oracle entered into in good faith.  These discussions included a substantial number of written communications and in-person meetings.  On October 27, 2010, Oracle and Myriad, with their counsel, met to discuss a potential settlement. Mr. Sullivan, counsel for Myriad, had suggested that the meeting take place in either Washington D.C. or New York, and Oracle agreed to hold the meeting in New York. (Shohet Decl. at ¶ 4.)  At

the conclusion of that meeting, both parties expressed the opinion that the discussions were constructive and committed to meet again.  (*Id.*)  Although Myriad initially offered to host the next meeting in Europe, that suggestion proved to be impractical in light of the desired time-frame for the meeting (which was to take place during the busy holiday travel season), and the respective schedules of the U.S.-based participants, including Myriad's U.S. counsel.  When it became time to schedule the next meeting, Mr. Sullivan, in a November 17, 2010 email, proposed that the meeting be held at his office in either Washington D.C. or New York.  (*Id.* at ¶ 5.)  The second in-person meeting to discuss settlement went forward on December 10, 2010 at Mr. Sullivan's office in Washington D.C.  (*Id.* at ¶ 6.)

Oracle representatives and counsel attended both of these meetings in the good faith hope that the parties could reach an amicable resolution of the dispute and avoid litigation.  (*Id.* at ¶ 7.)  Unfortunately, the morning session of the December 10 meeting was not productive and by the time it ended and the parties broke for lunch, it appeared that litigation was inevitable and that Myriad was about to file a complaint, if it had not done so already—possibly in Europe.  (*Id.* at ¶ 9.)  After Oracle determined that its settlement efforts with Myriad were not going to result in a compromise resolution and that litigation was inevitable, Oracle filed this action asserting claims for violation of the Lanham Act, 15 U.S.C. § 1125(a), copyright infringement, 17 U.S.C. § 101, et seq., breach of contract, and unfair competition in violation of the California Business and Professions Code § 17200, et seq.  The complaint in this action was filed at 1:13 p.m. EST, after the parties broke for lunch, but before the settlement meeting had concluded.  (Shohet Decl., ¶ 10; *see generally* Oracle Compl. [Doc. No. 1].)  After the lunch break, Oracle representatives and counsel returned to the meeting and continued to work in good faith with Myriad to explore the possibility of reaching agreement on as many issues as possible.  (Shohet Decl. at ¶ 11.)

By approximately 3 p.m. EST, however, it appeared that both parties were not going to reach an interim agreement, let alone a full settlement and resolution of the disputed issues.  At that point, Oracle's in-house counsel informed Myriad representatives that Oracle had filed a complaint in California, and Oracle's outside counsel handed Malcolm Dawe, one of Myriad's representatives, a service copy of the complaint.  (*Id.* at ¶ 12; Doc. No. 7.)  That same day, Oracle

1    effected service on Myriad by also serving a representative in Myriad's San Mateo office who

2    indicated that he was authorized to accept service for Myriad Group AG, as well as the San

3    Mateo office's registered agent for service of process.  (*Id.* at ¶ 12; Decl. of Scott Lane at ¶ 5;

4    Doc. Nos. 9, 10.)

5          Approximately three hours after Oracle filed and served Myriad with the summons and

6    complaint in the California action, Myriad filed a complaint against Oracle in the District of

7    Delaware.  (Shohet Decl. at ¶ 15; *see generally* Myriad Compl.)  In its complaint, Myriad seeks a

8    declaratory judgment that it is not obligated to pay the royalties owed under the licensing

9    agreements because of its purported rights under the JSPA.  (Myriad Compl. at ¶¶ 3, 35-36, 42,

10   47.)  Myriad also asserts that, because of those rights, it is licensed to create and distribute

11   Java™-branded software products, and that Oracle's assertions otherwise constitute violations of

12   the Lanham Act, 15 U.S.C. § 1125(a)(2) and California's Business and Professions Code

13   §§ 17200, 17500, and 17508(a), and tortious interference with Myriad's prospective economic

14   advantage.  (Myriad Compl. at ¶¶ 16, 49-50, 53.)

15         **D.      Subsequent Proceedings**

16         Despite the fact that this action was the first-filed, thus giving this Court exclusive

17   jurisdiction over the dispute, Myriad seeks to litigate its claims, which are mirror images of those

18   asserted by Oracle in this action, in Delaware.  Shortly after filing its suit in Delaware, Myriad

19   filed a motion for preliminary injunction, contending that it was suffering irreparable harm as a

20   result of Oracle's restricting of Myriad's TCK access.  At or about that same time, Oracle moved

21   to have the Delaware action transferred to the Northern District of California for consolidation

22   with this action under the first-filed rule and 28 U.S.C. § 1404(a).  *See Pacesetter Sys., Inc. v.*

23   *Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) ("Normally sound judicial administration

24   would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the

25   court which first acquired jurisdiction should try the lawsuit and no purpose would be served by

26   proceeding with a second action.").  Myriad opposed Oracle's motion, arguing that the Delaware

27   court should decline to transfer the action because, as asserted in the motion now pending before

28   /////

1   this Court, Oracle's service on Myriad was improper and Oracle's claims are subject to

2   arbitration.

3          On February 4, 2011, the Honorable Sue L. Robinson issued a memorandum order

4   denying Myriad's motion for preliminary injunction on the grounds that Myriad's undue delay

5   precluded its request for relief.  (Mem. Order at 5, attached to Shohet Decl. as Ex. G.)  In that

6   same order, Judge Robinson also denied Oracle's motion to transfer without prejudice on the

7   grounds that this Court's ruling on the instant motion would clarify the issues in dispute in this

8   action.  Judge Robinson therefore gave Oracle leave to renew its motion once this Court issues its

9   ruling on the instant motion.  Nevertheless, Judge Robinson indicated her belief that the parties'

10  business dispute should be resolved by the same judge.  (*Id.*)[1]

11  **IV.    ARGUMENT**

12         In the instant motion, Myriad contends that the Court should dismiss and/or quash

13  Oracle's service of the complaint under the fraudulent enticement doctrine.  In the alternative,

14  Myriad asks that the Court stay the instant litigation and compel all of Oracle's claims to

15  arbitration.  These arguments are incorrect.  Oracle addresses each argument in turn.

16         **A.     Oracle has properly served Myriad.**

17         Myriad argues that the Court should dismiss Oracle's complaint for improper service,

18  contending that Oracle acted in bad faith by "inducing" Myriad's representatives into the

19  jurisdiction under the guise of settlement discussions.  (Doc. No. 18 at 8:13-11:18)  Myriad's

20  argument is incorrect because (1) there was nothing deceptive about Oracle's service on

21  Mr. Dawe, and (2) Oracle also effected service on Myriad's San Mateo agent on the same day as

22  service was effected on Mr. Dawe, rendering any defect in the Dawe service moot.

23                **1.     Oracle's service on Mr. Dawe was proper.**

24         A court, in its discretion, may quash service of process or dismiss an action where a

25  plaintiff has induced a defendant to enter a jurisdiction to effectuate service of process.  *See*

26

27  _____

    [1] Since Judge Robinson issued the memorandum order, the parties have met and conferred
28  pursuant to their obligations under Federal Rule of Civil Procedure 26(f), are in the process of
    making their initial disclosures, and have begun discovery in the Delaware action.

1   *Henkel Corp. v. Degremont*, 136 F.R.D. 88, 94-95 (E.D. Pa. 1991).  "However, where courts

2   quash service or dismiss the action due to plaintiff's trickery in effectuating service of process,

3   this Court has found it is 'where [defendant] ha[s] no prior contacts before litigation begins so

4   that service upon them is a complete surprise."  *Creager v. Yoshimoto*, Case No. 05-1985-JSW, at

5   11 (N.D. Cal. Nov. 22, 2005) (attached to Shohet Decl. as Ex. H) (quoting *SGS-Thomson*

6   *Microelectronics, Inc. v. United Microelectronics Corp.*, No. C-92-1098-DLJ, 1993 WL

7   2999230, at *2 (N.D. Cal. July 21, 1993)).  *See also Comerica Bank-California v. Sierra Sales,*

8   *Inc.*, No. C-94-20229-PVT, 1994 WL 564581, at *3 (N.D. Cal. Sept. 30, 1994) (holding that the

9   doctrine only applies where the defendant would not have otherwise been physically present in

10  the jurisdiction).

11          Here, Myriad has significant contacts with both the United States generally and

12  Washington D.C. and California specifically, such that the fraudulent enticement doctrine is

13  inapplicable.  Myriad cannot dispute that it conducts significant business within the United States

14  because it holds itself out as maintaining one of its "main sales offices" in San Mateo, California.

15  Furthermore, Myriad admits that its representatives, including Mr. Dawe, had already been in the

16  jurisdiction for several days, "using the trip as an opportunity to do some business in the United

17  States."  (*See Decl. of Kevin Sullivan* ("Sullivan Decl."), at ¶ 6.)  Because Myriad has established

18  prior contacts in the United States generally and Washington D.C. and California specifically,

19  service of process was sufficient.  *See Creager*, Case No. 05-1985-JSW, at 11 (finding service of

20  process sufficient where defendant had prior contacts with forum before the litigation began and

21  defendant was conducting other business in the forum).

22          In addition to Myriad's preexisting contacts with the forum, the facts underlying Oracle's

23  service clearly demonstrate that Oracle did not induce Myriad to travel to Washington, D.C.,

24  under the false pretenses of settlement negotiations.  For nearly a year, the parties had been

25  engaged in discussions, which Oracle entered into in good faith.  After the first settlement

26  meeting, which took place in New York, Myriad offered to host the next meeting in Europe, but

27  that suggestion, for all the reasons stated above, proved impractical and was never followed up.

28  /////

1   Instead, <u>Myriad's counsel</u> suggested meeting in either Washington, D.C. or New York.  (Shohet

2   Decl. at ¶ 5.)

3        Moreover, Oracle filed and served its California complaint only after concluding that its

4   settlement efforts with Myriad were not going to result in a compromise resolution, and that

5   litigation was inevitable.[2]  (Shohet Decl. at ¶¶ 9-10.)  "Service can be valid where there was a

6   good-faith effort to settle immediately before service."  *See Coyne v. Grupo Indus. Trieme, S.A.*

7   *de C.V.*, 105 F.R.D. 627, 629 (D.D.C. 1985) (citing *Commercial Mut. Accident Co. v. Davis*, 213

8   U.S. 245, 257 (1909)).  Under these facts, the Court should decline to quash service or dismiss

9   Oracle's complaint.

10           **2.**     **Oracle properly served Myriad's agent in San Mateo, California.**

11        Although there is no basis to find Oracle's service on Mr. Dawe improper, any potential

12   issue with Oracle's service on Mr. Dawe is moot in light of Oracle's separate service on Myriad's

13   agent in San Mateo, California that same day.  (*See* Doc. Nos. 9, 10.)  Despite its public

14   statements made in the course of conducting its business, Myriad now contends that this entity,

15   Myriad Group Mobile Software, Inc., with an office in San Mateo, California, is a wholly-owned

16   subsidiary that is not capable of accepting service on behalf of Myriad.  That contention is simply

17   wrong.

18        On its website, Myriad holds itself out as doing business in San Mateo, California.  (*See*

19   Shohet Decl., ¶¶ 16-21, Ex. B-F.)  These representations include characterizing the San Mateo

20   office as one of its "main sales offices."  (*Id.*)  Based on its representations, even if its San Mateo

21   business is a subsidiary as Myriad contends, it would still be qualified to accept service for

22   Myriad Group AG as a "general manager" under California law.  *See, e.g.*, *Khachatryan v. Toyota*

23   *Motor Sales, U.S.A., Inc.*, 578 F. Supp. 2d 1224, 1227 (C.D. Cal. 2008) (holding that subsidiary

24   was acting as a general manager capable of accepting service on behalf of foreign parent where

25   foreign parent used subsidiary as intended outlet for its products).  Regardless, Myriad's Senior

26

27   [2] Myriad admits that "both parties expected that litigation would follow if a settlement could not

28   be reached."  (Mot. to Dismiss at 9 n.4.)  The fact that Myriad was able to file its complaint a
mere few hours later demonstrates that it too was prepared to file suit immediately if the
settlement negotiations were unproductive.

Manager of Professional Services for its San Mateo office accepted service on behalf of Myriad

Group AG and specifically stated to Oracle's process server that he was authorized to accept such

service on Myriad's behalf.  (Decl. of Scott Lane at ¶ 5.)

### 3.    Myriad is estopped from denying service on its San Mateo agent.

In its pleadings before the Delaware court, Myriad states that it has no office in San

Mateo, California and claims that the San Mateo office is a wholly-owned subsidiary, Myriad

Group Mobile Software, Inc.  Based on its out-of-court representations, however, Myriad is

estopped from taking this position.  "Equitable estoppel is based upon the fundamental principle

that 'one's conduct has induced another to take such a position that he will be injured if the first

party is permitted to repudiate his acts.'"  *Elliano v. Assurance Co. of Am.*, 3 Cal. App. 3d 446,

450 (1970) (citing *Bastanchury v. Times Mirror Co.*, 68 Cal. App. 2d 217, 240 (1945)).

According to its own website and other representations, Myriad holds itself out as

conducting significant business within California out of the same San Mateo office it claims is a

wholly-owned subsidiary.  For example, on its website, Myriad frequently describes itself as

operating "worldwide, with offices in Switzerland, France, UK, <u>USA</u>, Mexico, China, South

Korea, Taiwan, Japan and Australia."  (Shohet Decl., Ex. B (emphasis added).)  Yet the only U.S.

office identified in a map that purports to display Myriad's worldwide offices is in San Mateo,

California.  (*Id.*, Ex. C.)  In addition, on its careers webpage, Myriad states: "Myriad addresses

Device Manufacturers and Mobile Operators worldwide, with main sales offices in: <u>San Mateo</u>

<u>(USA)</u> . . . ."  (*Id.*, Ex. D (emphasis added).)  As set forth in the declaration of Oracle's process

server, Archie Thompson identified himself as the Senior Manager of Professional Services for

the San Mateo office of Myriad Group AG, represented to Oracle's process server that he was

authorized to accept service on behalf of Myriad Group AG, and did accept service on its behalf.

(Lane Decl. at ¶ 5.)  Based on these representations, Oracle effected service on the San Mateo

office reasonably believing that it was effecting service on Myriad Group AG.  Under the

circumstances, Myriad is estopped from denying the effectiveness of Oracle's service on the San

Mateo office on this basis.

/////

1    Moreover, if there were no authorized representative to accept service for Myriad in

2  California, Myriad would be in violation of California law by conducting business within the state

3  without designating an agent for service of process.  California Corporations Code § 2105

4  requires that any foreign corporation transacting intrastate business must first obtain a certificate

5  of qualification from the Secretary of State.  In order to obtain this certificate of qualification, the

6  corporation must designate an agent upon whom process directed to the corporation may be

7  served.  Cal. Corp. Code § 2105(a)(4)-(5)(a).  Myriad's self-proclaimed failure to designate an

8  agent for service of process while conducting business within California would allow it to gain

9  the significant benefits of conducting business in California while avoiding its legal obligation to

10  make itself readily available to be served in any litigation arising out of such business activities.

11  For this additional reason, Myriad should be estopped from denying service.

12    **4.    If the Court finds service ineffective, it should quash the service and give Oracle an opportunity to re-serve.**

13

14    If the Court finds Oracle's service on Myriad ineffective, dismissal is not appropriate.

15  Where service is possible, courts favor quashing the service and providing the plaintiff with an

16  opportunity to re-serve.  *See Umbenhauer v. Wong*, 969 F.2d 25, 30 (3d Cir. 1992).  *See also SGS-*

17  *Thomson Microelectronics, Inc.*, 1993 WL 2999230, at *2 (noting that the *Henkel, K-Mart*, and

18  *Coyne* cases "urge the quashing of service, not dismissal.").  Although Oracle believes its service

19  on Myriad was proper, if the Court disagrees, Oracle respectfully requests the Court to decline to

20  dismiss the action and give Oracle leave to effect service on Myriad by alternative means.

21    **B.      Oracle's claims are not subject to arbitration.**

22    Myriad argues that if the Court does not dismiss Oracle's action for improper service, it

23  should instead stay the action and compel arbitration of all of Oracle's claims.  (Mot. to Dismiss

24  at 11:19-22:10.)  A party seeking to compel arbitration under Section 4 of the Federal Arbitration

25  Act ("FAA") must demonstrate that: (1) a valid arbitration agreement exists; and (2) the particular

26  dispute is within the terms of that agreement.  9 U.S.C. § 4; *see also United Computer Sys. Inc. v.*

27  *AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002).  A motion to compel arbitration should be

28  denied when the scope of the arbitration clause does not cover the claim at issue.  *See Gateway*

1   *Coal Co. v. United Mine Workers*, 414 U.S. 368, 376 (1974) (stating that the "law compels a

2   party to submit his grievance to arbitration only if he has contracted to do so").

3        Indeed, despite the "liberal federal policy favoring arbitration agreements" and the fact

4   that "any doubts concerning the scope of arbitrable issues should be resolved in favor of

5   arbitration" (*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)), "it

6   is beyond cavil that arbitration is a matter of contract and a party cannot be required to submit to

7   any dispute which he has not agreed so to submit." *Comb v. Paypal, Inc*, 218 F. Supp. 2d 1165,

8   1170-71 (N.D. Cal. 2002).  The strong presumption in favor of arbitration "does not confer a right

9   to compel arbitration of any dispute at any time." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland*

10  *Stanford Junior Univ.*, 489 U.S. 468, 474, 479 (1989) (noting that arbitration "is a matter of

11  consent, not coercion"); *see also NCR Corp. v. Korala Assocs. Ltd.*, 512 F.3d 807, 813 (6th Cir.

12  2008) ("one cannot be required to submit to arbitration a dispute which it has not agreed to submit

13  to arbitration.")

14       Myriad's motion to compel arbitration should be denied because none of Oracle's claims

15  are subject to the arbitration provision upon which Myriad relies.  Furthermore, even if the Court

16  finds any of Oracle's claims arbitrable, Myriad has waived its right to arbitration.

17                  **1.      This Court has jurisdiction to determine arbitrability.**

18       In its motion to compel arbitration, Myriad asserts that the arbitrator, and not the Court,

19  must decide the threshold issue of whether all or some of Oracle's claims are subject to arbitration.

20  (Mot. to Dismiss at 15:9-16:10.)  But there is a strong presumption in favor of judicial rather than

21  arbitral resolution of the issue of arbitrability.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

22  938, 944-45 (1995).  Thus, unless the parties <u>clearly</u> and <u>unmistakably</u> provide otherwise, the

23  question whether they agreed to arbitrate the particular dispute is to be decided by the court, not

24  the arbitrator.  *First Options*, 514 U.S. at 944.  *See also Rent-A-Center, West, Inc. v. Jackson*, --

25  U.S. --, 130 S. Ct. 2772, 2778 n.1 (June 21, 2010).  The rationale for this rule is that if the

26  arbitrator had the power to determine its own jurisdiction, the willingness of parties to enter

27  /////

28  /////

1  into arbitration agreements "would be drastically reduced."  *See AT&T Tech., Inc. v. Commc'ns*

2  *Workers of Am.*, 475 U.S. 643, 651 (1986) (internal quotations omitted).[3]

3       Myriad contends that by incorporating the arbitration rules of the United Nations

4  Commission on International Trade Law ("UNCITRAL"), the Court must stay this action and

5  allow the arbitrator to determine whether the entirety of this dispute is arbitrable.  The parties'

6  incorporation of the UNCITRAL rules, however, does not express a <u>clear</u> and <u>unmistakable</u> intent

7  to have an arbitrator rather than a court determine arbitration.  Article 23 of the UNCITRAL

8  Rules of Arbitration provides: "The arbitral tribunal shall have the power to rule on its own

9  jurisdiction, including any objections with respect to the existence or validity of the arbitration

10  agreement."  UNCITRAL Arb. R. Art. 23(1) (2010).[4]  This provision, however, merely gives the

11  arbitral tribunal power to rule on its own jurisdiction; it does not express that a court cannot also

12  make that determination.  The provision later states that the arbitral tribunal may "continue the

13  arbitral proceedings and make an award, notwithstanding any pending challenge to its jurisdiction

14  before a <u>court</u>."  *See* UNCITRAL Arb. R. Art. 23(3) (2010).  This provision makes clear that

15  while the arbitral tribunal can determine its own jurisdiction, so too can a court.

16       In an attempt to meet its burden of showing <u>clear</u> and <u>unmistakable</u> intent, Myriad points

17  to numerous cases from outside the Ninth Circuit involving arbitration provisions incorporating

18  the rules of the American Arbitration Association ("AAA") or the International Chamber of

19  Commerce ("ICC"). While the jurisdictional language from the rules of those arbitral tribunals

20  bears some similarity to the jurisdictional provision found in the UNCITRAL rules, neither of

21  those arbitral tribunals include provisions similar to that found in Article 23(3) of the

22  /////

23  /////

24  

25  [3] Furthermore, Oracle asserts that if this Court determines that any of its claims are arbitrable, Myriad has waived its right to arbitration.  See infra.  It is well-settled within the Ninth Circuit that the court, not the arbitrator, decides challenges to enforcement of an arbitration provision on

26  grounds of waiver.  *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119-21 (9th Cir. 2008).

27  [4] For the Court's reference, the UNCITRAL Arbitration Rules (as revised in 2010) are publicly available at: http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules-revised/pre-arb-rules-

28  revised.pdf.

1  UNCITRAL rules.  *See* AAA Arb. R-7; ICC Arb. R. Art. 6.[5]  Therefore, these cases offer little, if

2  any, guidance to the Court.  Furthermore, Myriad fails to identify any citable Ninth Circuit

3  authority to support its contention that the incorporation of the UNCITRAL rules constitutes a

4  clear and unmistakable intent to have an arbitrator rather than the Court decide the threshold issue

5  of arbitrability.

6       Finally, an intent to incorporate the UNCITRAL rules as they existed in 2002 (the time

7  the parties entered into the SCSL) does not reflect an intent to submit the question of arbitrability

8  to the arbitrator rather than the court.  The UNCITRAL rule governing jurisdiction in effect in

9  2002 was much different from the current rule (adopted in 2010).[6]  In 2002, when Oracle and

10  Myriad executed the SCSL, the UNCITRAL rules provided that "[t]he Arbitral tribunal shall have

11  the power to rule on objections that it has no jurisdiction, including any objections with respect to

12  the existence or validity of the arbitration clause or the separate arbitration agreement."

13  UNCITRAL Arb. R. Art. 21(1) (1976).  In assessing this particular iteration of the UNCITRAL

14  jurisdictional provision, at least one court determined that incorporation of this rule did not

15  demonstrate a clear and unmistakable intent by the parties to submit the issue of arbitrability to an

16  arbitrator rather than the Court.  *See, e.g., Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F.

17  Supp. 2d 332, 350-51 (S.D.N.Y. 2007) ("the UNCITRAL language, standing alone, is insufficient

18  to strip [defendant] of its ability to "present evidence of [the agreement's] . . . invalidity' to this

19  Court.").

20       Because Myriad has not demonstrated a <u>clear</u> and <u>unmistakable</u> intent by the parties to

21  have an arbitrator rather than the Court determine arbitrability, the Court may properly decide the

22  arbitrability of this dispute.

23  /////

24  /////

25  [5] The AAA Arbitration Rules are located at: http://www.adr.org/sp.asp?id=22440.  The ICC's

26  Arbitration Rules are located at:
   http://www.iccwbo.org/uploadedFiles/Court/Arbitration/other/rules_arb_english.pdf.

27  [6] In 2002, when the parties executed the SCSL, the 1976 UNCITRAL Arbitration Rules were in

28  effect.  For the Court's reference, the 1976 UNCITRAL Arbitration Rules are publicly available
   at: http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-rules.pdf.

1

2

     **2.**      **Oracle's non-contract claims arise because Myriad allowed its Master Support Agreement—an agreement which is not part of the SCSL and does not have an arbitration provision—to lapse.**

3

       In asserting that Oracle's claims are subject to arbitration, Myriad relies on the arbitration

4

provision set forth in the SCSL, which comprises the parties' commercial licenses.  While

5

Oracle's claim for royalties owed under Myriad's commercial licenses would arguably fall within

6

the scope of the arbitration agreement if asserted separately, Oracle's non-contract claims clearly

7

do not.  As noted above, Oracle brings claims for trademark and copyright infringement, and

8

claims based on California's unfair competition law.  Those claims arise because Myriad allowed

9

its MSA to lapse in June 2010, yet continued and continues to use Oracle's TCKs to test new

10

Java™ implementations without authorization while representing to its customers and the market

11

that those implementations are "Java Compatible™."  (Compl. at ¶¶ 61-64.)  Thus, Oracle's

12

claims do not arise out of the breach of any agreement; they arise out of Myriad's conduct after it

13

chose to not renew its MSA.

14

       Myriad apparently concedes that Oracle's non-contract claims do not arise out of the

15

SCSL and acknowledges that the MSA itself does not contain an arbitration provision.  Instead,

16

Myriad advances a convoluted argument that (1) Oracle's non-contract claims arise out of the

17

MSA, and (2) because the MSA is related to use of the TCKs, and (3) because the SCSL contains

18

a TCK license, then it must "logically" follow that the SCSL's arbitration provision applies to

19

those non-contract claims as well.   But this is mere sophistry.

20

       While it is true that the TCK license requires the parties to have a valid "support

21

agreement," the MSA is a standalone agreement that is not part of the bundle of agreements

22

comprising the SCSL.  The SCSL expressly provides that it is comprised of just "five distinct

23

licenses: Research Use, TCK, Internal Deployment Use, Commercial Use and Trademark

24

License." (SCSL ¶ 1.)  Clearly, the arbitration provision within the SCSL extends only to

25

disputes arising under the agreements that are expressly included within the scope of the SCSL.

26

The fact that the MSA is referenced in the TCK and must be in force in order for the licensee to

27

use the TCKs to validate its products as "Java Compatible™" does not cause the dispute to arise

28

under the TCK or any other agreement within the ambit of the SCSL's arbitration provision. *See*

1   Cal. Civ. Code § 1648 ("However broad the terms of a contract, it extends only to those things

2   concerning which it appears that the parties intended to contract.").  Because Myriad's MSA is

3   not among the bundle of licenses that together comprise the parties' commercial licenses,

4   Oracle's non-contract claims cannot be compelled to arbitration.

5        Even if resolution of Oracle's claims required reference to the MSA, Myriad's argument

6   that the Court would then also have to refer to the TCK license and SCSL is incorrect.  Neither

7   the TCK license nor the SCSL (or, for that matter, any of the other agreements that are part of the

8   SCSL) have any bearing on Oracle's non-contract claims.  According to the simple and

9   undisputed terms of the MSA, upon its expiration, Esmertec—now Myriad—"must discontinue

10  use of Support and Sun Confidential Information in its control or possession."  (MSA ¶ 2.2.)  The

11  Agreement defines "Confidential Information" as including "all technical information and any

12  source code which Sun discloses to Customer under this Agreement."  (*Id.* ¶ 1.1.)  Because

13  Oracle's non-contract claims allege that Myriad has continued using Oracle's confidential

14  information despite being no longer permitted to do so, the unlawful nature of Myriad's conduct

15  is established because the MSA lapsed.  Put another way, no part of this dispute arises under or

16  relates to the MSA, nor does it depend upon the provisions of the TCK license or the SCSL.

17  Oracle's claims are not, therefore, subject to the arbitration provision contained in the SCSL.

18       Finally, even if the Court determined that the SCSL's arbitration provision also governed

19  disputes arising out of the MSA, Oracle's IP-infringement based claims do not "relate to or arise

20  out of" the MSA.  To the contrary, as already explained, those claims arise because the MSA

21  lapsed and no longer exists.  To argue that those claims somehow "relate to" or "arise out of" an

22  agreement that no longer exists defies logic.  Such a position—that claims accruing after the

23  expiration of an agreement can be compelled to arbitration under that agreement's arbitration

24  provision—has been expressly rejected by other circuits.  Those decisions hold that when

25  considering a previous contract, a dispute can be compelled to arbitration only where it "either

26  involve[s] rights which to some degree have vested or accrued during the life of the contract and

27  merely ripened after termination, or relate[s] to events which have occurred at least in part while

28  the agreement was still in effect."  *United Food & Commercial Workers Int'l Union v. Gold Star*

1  *Sausage Co.*, 897 F.2d 1022, 1024-25 (10th Cir. 1990) (quoting *Chauffeurs, Teamsters and*

2  *Helpers, Local Union v. C.R.S.T., Inc.*, 795 F.2d 1400, 1403 (8th Cir.) (en banc), *cert. denied*, 479

3  U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986)).

4       Here, Oracle's non-contract claims did not arise until Myriad's MSA expired and Myriad

5  began its unauthorized testing of new Java™ implementations, representing to its customers and

6  the market that those implementations are "Java Compatible™."  Myriad cannot rely on the terms

7  of an expired contract to compel Oracle to arbitrate claims that arose after, and because of, the

8  expiration of that contract and involve conduct unrelated to it.

9       The existence of an agreement to arbitrate is a condition precedent to enforcement:

10  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any

11  dispute which he has not agreed so to submit."  *Steelworkers v. Warrior & Gulf Co.*, 363 U.S.

12  574, 582 (1960).  Because Oracle's non-contract claims do not relate to any agreement, or at best

13  relate to the MSA, an agreement that bears no arbitration provision and lapsed prior to Oracle's

14  claims arising, the Court should deny Myriad's motion to compel those claims to arbitration.

15           **3.      The SCSL's arbitration provision does not encompass Oracle's non-
                        contract claims because they are specifically excepted from
16                      arbitration.**

17       The arbitration provision that Myriad relies on is much narrower than Myriad has led the

18  Court to believe.  Therefore, even assuming that the arbitration provision contained in the SCSL

19  applies at all, at most it would only apply to part of the relief sought on one of Oracle's claims—

20  the breach of contract claim for past-due royalties.  The SCSL's arbitration provision states:

21           Any dispute arising out of or relating to this License shall be finally
             settled by arbitration as set out herein, <u>except that either party may</u>
22           <u>bring any action, in a court of competent jurisdiction (which</u>
             <u>jurisdiction shall be exclusive), with respect to any dispute relating</u>
23           <u>to such party's Intellectual Property Rights or with respect to Your</u>
             <u>compliance with the TCK license.</u>
24

25  (SCSL ¶ 8.6(a) (emphasis added).)  The SCSL defines "Intellectual Property Rights" as

26           [w]orldwide statutory and common law rights associated solely
             with (i) patents and patent applications; (ii) works of authorship
27           including copyrights, copyright applications, copyright registrations
             and 'moral rights'; (iii) the protection of trade and industrial secrets
28           and confidential information; and (iv) divisions, continuations,

renewals, and re-issuances of the foregoing now existing or acquired in the future.

(SCSL Glossary ¶ 10.)

Oracle's non-contract claims fall squarely within the exception for disputes relating to "works of authorship including copyrights, copyright applications, copyright registrations and 'moral rights.'"[7]  Myriad first argues that this exception does not apply because Oracle's claims "arise out of or relate to the SCSL and not out of its intellectual property rights."  (Mot. to Dismiss at 18:14-15.)  This argument has no merit.  Indeed, assuming, for sake of argument, that Oracle's non-contract claims did "arise out of or relate to" the SCSL, they fall within the arbitration provision's exception for claims "relat[ed] to such party's Intellectual Property Rights."

The exception is broad in that it excludes "any dispute relating to such party's Intellectual Property Rights . . . ."  Myriad's contention that Oracle's claims do not comprise a "dispute relating to" Oracle's intellectual property rights defies common sense.  *See AT&T Corp. v. Vision One Sec. Sys.*, 914 F. Supp. 392, 396 (S.D. Cal. 1995) (holding that post-contract use of trademarks fell within intellectual property exception to arbitration clause and thus were not arbitrable).  The dispute that Oracle asserts in its non-contract claims clearly relates to its intellectual property rights, and is therefore not arbitrable.

In addition, the dispute also relates to Myriad's compliance with its TCK license, and is therefore specifically excepted from arbitration on that basis as well.  The TCK license states that it "[i]s effective . . . only upon execution of a separate support agreement between [Esmertec/Myriad] and [Sun/Oracle]."  (TCK License Preamble.)  Here, Myriad allowed its support agreement, which expired unless renewed on an annual basis after the initial term, to

---

[7] While this provision does not expressly include trademark rights, Oracle's claims for false designation of origin and unfair competition under the Lanham Act and California Business and Professions Code clearly involve a dispute relating to "a work of authorship," namely Oracle's proprietary Java™ trademark.  Although Myriad does not seem to contest that the scope of the exception includes trademark claims, any attempt to do so in Myriad's reply brief should be rejected.  The parties clearly intended to include disputes arising out of trademark rights, and could not have intended to except from arbitration claims relating to patent, copyright, trade secrets and other confidential information, but then submit trademark claims to arbitration.

-18-

1  lapse, thereby causing its TCK license to become ineffective.  Despite the fact that it was no

2  longer licensed to do so, Myriad continued to brand its products as "Java Compatible™" without

3  an effective TCK license in violation of both Paragraph 2.2 of Myriad's MSA and the preamble

4  of Myriad's TCK license.  Therefore, Oracle's dispute also arises because of Myriad's

5  compliance (or non-compliance in this case) with the TCK license and therefore is not arbitrable

6  on that basis as well.

7       Despite the fact that this dispute falls squarely within the broad exceptions found in the

8  arbitration provision, Myriad asks the Court to "construe the IP Carve-Out narrowly, in light of

9  the presumption in favor of arbitration, to cover only disputes concerning the <u>validity</u> of Oracle's

10  intellectual property." (Mot. to Dismiss at 20:11-13 (emphasis added).)  Myriad states that any

11  interpretation otherwise would "gut the arbitration provision of any meaning." (*Id.* at 18:18-21.)

12  The limitation Myriad urges, however, is not based on any expressed intention by the parties in

13  the contract, and should, therefore, be rejected.  See Cal. Civ. Code § 1648.  Because the parties'

14  intent is clear, the Court should decline to compel arbitration of Oracle's non-contract claims.

15              **4.**        **Oracle's claims for injunctive relief are not arbitrable.**

16       Significantly, Myriad largely ignores the fact that all of Oracle's non-contract claims seek

17  injunctive relief.  The SCSL's arbitration clause provides a specific exemption for such relief:

18  "The arbitrator may award monetary damages only and <u>nothing shall preclude either party from</u>

19  <u>seeking provisional or emergency relief from a court of competent jurisdiction</u>." (SCSL ¶ 8.6(b)

20  (emphasis added).)  Oracle's non-contract claims are all accompanied by requests for injunctive

21  relief, and thus cannot be compelled to arbitration.  Furthermore, while Oracle's breach of contract

22  claim seeks payment of past-due royalties, Oracle will be seeking injunctive relief in the form of

23  specific performance of Myriad's other obligations under its commercial licenses, as well as future

24  royalty payments under those agreements.  Therefore, because Oracle seeks injunctive relief, the

25  Court should decline to compel arbitration of Oracle's claims based on that exception as well.

26              **5.**        **Myriad has waived its right to compel arbitration.**

27       Even if the Court were to find any of Oracle's claims subject to arbitration, Myriad has

28  waived its right to arbitration.  The right to arbitration, like any other contract right, can be

1   waived.  *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009).  To demonstrate

2   waiver of the right to arbitrate, a party must show: "(1) knowledge of an existing right to compel

3   arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing

4   arbitration resulting from such inconsistent acts." *Id.*; *Vision One*, 914 F. Supp. at 395-96.  In

5   addition to undue delay or other factors, "[p]rejudice in this context may consist of expense,

6   duplication of effort in separate forums, or advantage to the other party." *Brooks v. Robert*

7   *Larson Auto. Group*, Case No. C09-5016-FDB, 2009 WL 2853452, at *2 (W.D. Wash. 2009)

8   (citing *Mitsui & Co. (USA) v. C & H Refinery, Inc.*, 492 F. Supp. 115, 118-20 (N.D. Cal. 1980)).

9        All of the circumstances warranting the finding of a waiver exist here.  First, Myriad had

10   knowledge of its existing right to compel arbitration, as demonstrated by the instant motion.  *See*

11   *Noodles Dev., LP v. Latham Noodles, LLC*, Case No. 09-CV-1094-PHX-NVW, 2011 WL

12   204818, at *1 (D. Ariz. Jan. 20, 2011).  Second, Myriad took acts inconsistent with that existing

13   right when it filed parallel proceedings in Delaware.  Shortly after Oracle filed the instant action,

14   Myriad filed suit in the District of Delaware, seeking declaratory relief and asserting claims that

15   are the mirror image of those asserted here by Oracle.  (*See generally* Myriad Compl.)  Oracle

16   and Myriad's dispute, both here and in Delaware, involve the terms and conditions under which

17   Oracle has licensed and may license certain Java™ RIs and TCKs.  In this case, Oracle seeks,

18   *inter alia,* to enforce its commercial use licenses with Myriad for Myriad's use of Oracle's RIs

19   and TCKs.  Oracle expects Myriad to defend against that claim with the same arguments it now

20   asserts against Oracle in the Delaware action—that the JSPA gives it the right to use Oracle's RIs

21   and TCKs on free or FRAND terms and that agreement somehow supersedes its specific licenses

22   with Oracle.  Although Myriad attempts to characterize its complaint as arising out of a contract

23   that is separate and distinct from the contracts at issue in Oracle's complaint, Myriad's complaint

24   seeks a declaratory judgment that it is not obligated to pay the royalties owed under those very

25   licensing agreements which it asserts compel Oracle to arbitrate its claims here.  (*Id.* at ¶¶ 3, 35-

26   36, 42, 47.)

27        In other words, Myriad seeks relief from the Delaware court on claims "relating to" the

28   SCSL.  Although Myriad has chosen to bring its claims in Delaware, there is really one dispute

DLA PIPER LLP (US)
SAN DIEGO

WEST\223252798.4

1  regarding the terms under which Myriad licensed the Java™ technology.  Oracle contends

2  Myriad is bound by the plain terms of its commercial licenses while Myriad claims the terms of

3  its commercial licenses are inconsistent with and trumped by the terms of the JSPA.  Either

4  interpretation implicates the terms and provisions of the commercial licenses—the agreements

5  pursuant to which Myriad seeks to compel arbitration.  Therefore, to the extent the dispute is

6  arbitrable, as Myriad contends, Myriad was required to bring its own claims in arbitration as well.

7  Because it has not done so, and has instead initiated its own litigation in Delaware, it has waived

8  its right to arbitration.  *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th

9  Cir. 1988) (holding litigation indicates "a conscious decision to continue to seek judicial

10  judgment on the merits of [the] arbitrable claims.  This choice [is] inconsistent with the

11  agreement to arbitrate those claims").

12  　　　　Finally, as a result of Myriad's inconsistent acts, Oracle has suffered and will continue to

13  suffer substantial prejudice.  First, if the Court compels Oracle's claims to arbitration, it will be

14  forced to defend in the Delaware action without the ability to assert its own claims as

15  counterclaims in that related action.  As explained more fully above, the claims Myriad asserts in

16  the Delaware action "relate to" and "arise out of" the SCSL agreement.  In fact, Myriad itself

17  contends that: "The central inquiry of the parties' dispute with respect to Oracle's Lanham Act,

18  unfair competition, and copyright infringement claims is whether Myriad's use of certain

19  intellectual property is covered by the SCSL or the JSPA."  (Mot. to Dismiss at 16:6-8; *see also*

20  *id.* at 18:15-18 (arguing that resolution of Oracle's claims requires the court to only consider the

21  SCSL and JSPA).)  Therefore, to the extent Oracle's claims are subject to arbitration, Myriad's

22  claims are subject to arbitration as well.  Yet Myriad improperly seeks to invoke the equitable

23  powers of the courts to be excused from its obligations under its various license agreements with

24  Oracle and at the same time compel Oracle to adjudicate its claims under the same agreements in

25  a foreign arbitration proceeding.  *See Gutor Int'l AG v. Raymond Packer Co., Inc.*, 493 F.2d 938,

26  945 (1st Cir. 1974) *abrogated on other grounds as noted in ITV Direct, Inc. v. Healthy Solutions,*

27  *LLC*, 445 F.3d 66, 72 (1st Cir. 2006) ("Submission of part of an arbitrable matter to a court

28  waives the submittor's right to insist upon arbitration of the remainder.").  Myriad has never

1   sought to arbitrate its half of this dispute, which Myriad itself contends clearly "relates to" and

2   "arises out of" the SCSL.  Allowing Myriad to litigate its portion of this dispute in a court, while

3   compelling Oracle to litigate its portion of the dispute in an arbitration proceeding, would result

4   in substantial prejudice to Oracle.

5          Second, by deciding to file its mirror image claims in the Delaware action after being sued

6   by Oracle here, Myriad has caused Oracle to incur substantial duplicative and unnecessary costs,

7   which will continue if the Court compels Oracle to arbitrate its portion of this dispute.  For

8   example, Oracle incurred significant expense in seeking to have the Delaware action transferred

9   to this Court for consolidation with this action.  Because of the instant motion, however, Judge

10  Robinson denied Oracle's request pending this Court's ruling on the pending motion.  Had

11  Myriad been consistent and invoked the arbitration provision without filing its own action in

12  Delaware, substantial duplicative litigation expenses would have been avoided.

13         Finally, if Myriad's claims are allowed to proceed in Delaware, Myriad will have the

14  advantage of extensive federal court discovery rights while Oracle will be limited to the discovery

15  permitted by the UNCITRAL arbitration rules.  The UNCITRAL rules require that parties

16  exchange statements of claims and defenses, as well as the documents on which they will rely, in

17  advance of the arbitration hearing.  Importantly, there is no requirement to exchange or otherwise

18  produce documents that would support the claims or defenses of the other party.  UNCITRAL

19  Arb. R. Arts. 21-22 (2010).  The rules contain no provisions for interrogatories and depositions.

20  And while the rules permit limited discovery of documents, such discovery is only permitted in

21  very narrow circumstances.  Finally, the UNCITRAL rules do not address non-party discovery—

22  a critical discovery tool to fully and fairly litigate this dispute.  (*See* Curran Decl. at ¶ 4.)

23  Furthermore, the UNCITRAL rules are further limited by the SCSL's arbitration provision, which

24  provides "the arbitrator will order each party to produce identified documents and respond to no

25  more than twenty-five single question interrogatories."  (SCSL ¶ 8.6(b).)

26         In the Delaware action, Judge Robinson has permitted each party to propound 40

27  interrogatories and 50 requests for admission, as well as conduct a maximum of 175 hours of fact

28  depositions.  (*See* Scheduling Order at 3-4, attached to Shohet Decl. as Ex. G.)  Myriad stands to

-22-

1  obtain far more discovery in connection with its claims pending in Delaware than Oracle would

2  be entitled to in arbitration under the UNCITRAL rules (and the additional limitations to those

3  rules set forth in the SCSL's arbitration provision).

4        For these reasons, Myriad's failure to submit the claims it asserts in the Delaware action

5  to arbitration has resulted and will continue to result in substantial prejudice to Oracle.  Because

6  Myriad knew of its existing right to arbitration, took actions inconsistent with that right, and those

7  inconsistent acts have and will continue to prejudice Oracle, Myriad has waived its right to

8  arbitration.

9       **6.**    **If the Court finds that any of Oracle's action must be arbitrated, it**
            **should permit the non-arbitrable claims to proceed concurrently.**

10

11        If the Court determines that Myriad has not waived its right to arbitration and one or more

12  (but not all) of its claims must be arbitrated, it should reject Myriad's invitation to stay the entire

13  action.  Under the FAA, where an arbitration clause makes only some claims arbitrable and others

14  not, the Act permits the litigation to proceed concurrently with the arbitration in the discretion of

15  the court.  *Vision One*, 914 F. Supp. at 397 (ordering a stay pending arbitration of the arbitral

16  claims and expediting trademark claims excepted from arbitration provision).  *See also Dean*

17  *Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-21 (1983) (holding that even where some claims

18  are arbitrable, 'piecemeal' litigation is required).  As demonstrated above, all but one of Oracle's

19  claims are clearly outside the scope of the arbitration provision.  The contract based claim for

20  unpaid royalties comprises a very small and distinct portion of the dispute and could be arbitrated

21  concurrently with the litigation of Oracle's non-contract claims in this Court.

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1   **V.**      **CONCLUSION**

2          For the foregoing reasons, Oracle respectfully requests that the Court deny Myriad's

3   motion to dismiss and/or quash service of process and its motion to stay the action and compel

4   arbitration and order Myriad to file an answer to Oracle's complaint.

5   Dated:  March 15, 2011

6                                              DLA PIPER LLP (US)

7

8                                              By  /s/ Jeffrey M. Shohet
                                                   JEFFREY M. SHOHET
9                                                  Attorney for Plaintiff
                                                   Oracle America, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28