1  JEFFREY M. SHOHET, Bar No. 067529
   jeffrey.shohet@dlapiper.com
2  CHRISTOPHER J. BEAL, Bar No. 216579
   cris.beal@dlapiper.com
3  AMANDA C. FITZSIMMONS, Bar No. 258888
   amanda.fitzsimmons@dlapiper.com
4  DLA PIPER LLP (US)
   401 B Street, Suite 1700
5  San Diego, CA  92101-4297
   Tel:  619.699.2700
6  Fax:  619.699.2701

7  ELIZABETH ROGERS BRANNEN, Bar No. 226234
   elizabeth.brannen@oracle.com
8  500 Oracle Parkway
   Redwood City, CA 94065
9  Tel: 650.506.5200
   Fax: 650.506.7114
10
   Attorneys for Plaintiff
11 Oracle America, Inc.

12                     UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                           OAKLAND DIVISION

15

16 ORACLE AMERICA, INC.,                CASE NO.  10-CV-5604-SBA

17                Plaintiff,            **ORACLE AMERICA INC.'S *EX PARTE*
                                        MOTION FOR (1) TEMPORARY
18        v.                            RESTRAINING ORDER; (2) ORDER TO
                                        SHOW CAUSE REGARDING
19 MYRIAD GROUP AG,                     PRELIMINARY INJUNCTION; AND (3)
                                        PARTIAL STAY OF COURT ORDER;
20                Defendant.            MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT THEREOF**

21
                                        Date:      TBD
22                                      Time:      TBD
                                        Place:     Courtroom 1
23

24

25

26

27

28

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 65 and

3   Local Rules 65-1 and 65-2, Plaintiff Oracle America, Inc. ("Oracle") makes this *ex parte* motion

4   for (1) a temporary restraining order ("Motion"); (2) an order to show cause why a preliminary

5   injunction should not issue; and (3) for a stay of that portion of the Court's September 1, 2011

6   order granting in part and denying in part Myriad's motion to compel arbitration (the "Order")

7   directing Oracle to initiate arbitration of its breach of contract claim following the parties'

8   mandatory settlement conference before Magistrate Judge Elizabeth D. Laporte.  The parties met

9   and conferred prior to Oracle's filing of this motion and thus have complied with this Court's

10  standing order.  (Declaration of Jeffrey M. Shohet ¶¶ 6, 7, Ex. E, F.)

11          With respect to Oracle's request for a TRO, this Motion is made on the grounds that

12  immediate and irreparable injury will result to Oracle unless Myriad is temporarily restrained and

13  enjoined from proceeding with its arbitration demand before the International Centre for Dispute

14  Resolution entitled, *In the Matter of the Arbitration Act 1996 In the Matter of an Arbitration in*

15  *London, England Under the UNCITRAL Arbitration Rules Administered by the American*

16  *Arbitration Association's International Centre for Dispute Resolution Between Myriad Group AG*

17  *and Oracle America, Inc*. (ICDR Case No. 50 117 T 00545 11) (the "Arbitration Demand"),

18  pending a determination of Oracle's Motion for Preliminary Injunction.  In its Arbitration

19  Demand, Myriad seeks an arbitrator's determination of the arbitrability of (1) Oracle's claims

20  asserted in the instant action; and (2) certain claims asserted by Myriad in the District of

21  Delaware as *Myriad Group AG v. Oracle America, Inc*., Case No. 10-1087 (D.C. Del. Dec. 10,

22  2010) (the "Delaware Claims").

23          As demonstrated more fully in the attached Memorandum of Points and Authorities in

24  support hereof:

25          1.      Oracle is likely to succeed on the merits because (1) this Court has already

26  determined that Oracle's non-contract claims are unambiguously not subject to the mandatory

27  arbitration provision contained within the parties' Sun Community Source License (the "SCSL");

28  (2) Myriad's Delaware Claims are separate and distinct from Oracle's breach of contract claim

1    and not subject to the arbitrator's jurisdiction in the first instance; moreover, even if those claims

2    "related to" the SCSL, Myriad has waived its right to arbitrate them by pursuing them through

3    litigation in the District of Delaware.

4        2.    Oracle will suffer irreparable harm if Myriad is not temporarily enjoined from

5    proceeding with its Arbitration Demand and restrained with respect to its request for relief

6    therein;

7        3.    The balance of equities in determining whether to grant a temporary restraining

8    order tips decidedly in favor of Oracle; and

9        4.    A temporary restraining order is in the public interest.

10   Alternatively, Myriad should be restrained and enjoined from pursuing its Arbitration until the

11   Ninth Circuit has ruled on its appeal of this Court's arbitrability determination

12       Further, Oracle respectfully requests that the Court stay that portion of its Order directing

13   Oracle to initiate an arbitration of its breach of contract claim.  Such a stay is warranted because

14   Myriad has appealed this Court's September 1, 2011 order and ruling and is asserting on appeal

15   that the Court erred in not ordering all of Oracle's claims to arbitration.  In the interests of judicial

16   and party efficiency, it simply makes sense to stay arbitration of Oracle's breach of contract claim

17   until the Ninth Circuit rules on Myriad's pending appeal and determines which claims are subject

18   to arbitration.

19   Dated:  November 29, 2011

20                                    DLA PIPER LLP (US)

21                                    By /s/ Jeffrey M. Shohet
                                          _____
22                                        JEFFREY M. SHOHET
                                          Attorney for Plaintiff
23                                        Oracle America, Inc.

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3    I.    INTRODUCTION ................................................................................................1

4    II.   STATEMENT OF FACTS ....................................................................................3

5          A.    Myriad Is Litigating Claims Against Oracle in the District of Delaware
                 That It Now Seeks to Assert in a London Arbitration. ...............................3

6          B.    Myriad Submitted the Issue of the Arbitrability of Oracle's Claims to This
                 Court. ..........................................................................................................3

7          C.    Seven Months Later, Myriad Reversed Course and Submitted the Issue of
                 the Arbitrability of Oracle's Claims to a London Arbitration, and Seeks to
8                Include its Delaware Claims As Well..........................................................4

9          D.    This Court's September 1, 2011 Order........................................................5

           E.    Myriad Rejected Oracle's Request to Withdraw Its Arbitration Demand..............6

10   III.  THE STANDARDS FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF
           STRONGLY FAVOR GRANTING ORACLE RELIEF IN THIS CASE..........................7

11         A.    Oracle Is Likely to Succeed on the Merits..................................................7

12               1.     With Respect to Oracle's California Claims, Oracle Is Likely to
                        Succeed on the Merits Because This Court Has Already Determined
13                      the Arbitrability of Those Claims. ..................................................7

14               2.     With Respect to Myriad's Delaware Claims, Oracle Is Likely to
                        Succeed on the Merits Because Myriad Contends That Those
15                      Claims Do Not Arise Out of or Relate to the SCSL. .................................9

16               3.     Alternatively, With Respect to Myriad's Delaware Claims, Oracle
                        Is Likely to Succeed on the Merits Because Myriad Has Waived Its
17                      Right to Arbitrate Its Claims by Proceeding to Litigate Them in
                        Delaware. ......................................................................................10

18         B.    Oracle Will Suffer Irreparable Harm If Myriad Is Not Temporarily
                 Enjoined from Proceeding with Its Arbitration Demand..........................12

19         C.    The Balance of Equities Tips Sharply in Favor of Oracle. ...................................13

20         D.    The Public Interest Favors Oracle's Request for a Temporary Restraining
                 Order. .........................................................................................................14

21   IV.   THE COURT SHOULD STAY ENFORCEMENT OF ITS ORDER DIRECTING
           ORACLE TO INITIATE ARBITRATION PROCEEDINGS ON ITS BREACH
22         OF CONTRACT CLAIM AND STAY MYRIAD'S ARBITRATION DEMAND
           PENDING MYRIAD'S APPEAL. ..................................................................................15

23   V.    CONCLUSION.................................................................................................15

24

25

26

27

28

DLA PIPER LLP (US)
SAN DIEGO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3   CASES

4   *Alliance for the Wild Rockies v. Cottrell*,
5       632 F.3d 1127 (9th Cir. 2011) .................................................................................7

6   *AT&T Techs., Inc. v. Communications Workers*,
        476 U.S. 643 (1986)..............................................................................................14
7
    *BASF Corp. v. Symington*,
8       50 F.3d 555 (8th Cir. 1995) ....................................................................................9

9   *Bear, Stearns & Co., Inc. v. Lavin*,
10      Civil Action No. 92-6785, 1993 WL 56061, at *2-4 (E.D. Pa. Mar. 1, 1993) ...................8, 12

11  *Brookstreet Securities Corp. v. Bristol Air, Inc.*,
        Civil Action No. 02-0863, Slip Op. (N.D. Cal., August 5, 2002) (Illston, J.) ........................13
12
    *Caribbean Ins. Svcs., Inc. v. Am. Bankers Life Assurance Co. of Florida*,
13      715 F.2d 17 (1st Cir. 1983) ...................................................................................11

14  *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*,
15      840 F.2d 701 (9th Cir. 1998) ...................................................................................7

16  *Eagle Traffic Control, Inc. v. James Julian, Inc.*,
        945 F. Supp. 834 (E.D. Pa. 1996) ..........................................................................11
17
    *First Fishery Dev. Serv., Inc. v. Lane Labs USA, Inc.*,
18      Civil Action No. 97-1069-R, 1997 WL 579165, at *3-4 (S.D. Cal. July 21, 1997)................9

19  *Goldman Sachs & Co. v. Becker*,
        Civil Action No. 07-01599, 2007 WL 1982790 (N.D. Cal. 2007) ........................................13
20
    *Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*,
21      969 F.2d 796 (9th Cir. 1992) ................................................................................10

22  *Howsam v. Dean Witter Reynolds*,
23      537 U.S. 79 (2002).................................................................................................5

24  *In re SDDS, Inc.*,
        97 F.3d 1030 (8th Cir. 1996) ................................................................................12
25
    *Innovative Medical Systems, Inc. v. Augustine Medical Inc.*,
26      Civil Action No. 04-4705, 2007 WL 3121033 (D. Minn. 2007).......................................8, 12

27  *Iowa Grain Co., v. Brown*,
28      171 F.3d 504 (7th Cir. 1999) ................................................................................11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Maryland Ca. Co. v. Realty Advisory Bd. on Labor Relations*,
107 F.3d 979 (2d Cir. 1997) ...................................................................................13

*Moncharsh v. Heily & Blase*,
3 Cal. 4th 1 (1992) ...................................................................................................12

*Scott v. Industrial Acc. Comm'n*,
46 Cal. 2d 76 (1956) ..................................................................................................8

*Smith v. McIver*,
22 U.S. 532 (1824) .....................................................................................................8

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*,
240 F.3d 832 (9th Cir. 2001) .....................................................................................7

*Textile Unlimited, Inc. v. A..BMH and Co., Inc.*,
240 F.3d 781 (9th Cir. 2001) ...............................................................................13, 14

*Trs. of IL WU-PMA Pension Plan v. Peters*,
660 F. Supp. 2d 1118 (N.D. Cal. 2009) ...................................................................12

*U.S. v. Int'l Bhd. of Teamsters*,
728 F. Supp. 1032 (S.D.N.Y. 1990) .........................................................................14

*Wachovia Securities, LLC v. Raifman*,
Civil Action No. 10-04573, 2010 WL 4502360 (N.D. Cal., Nov. 1, 2010) ............13

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......................................................................................................7

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
705 F.2d 1515 (9th Cir. 1983) ..................................................................................14

**STATUTES**

15 U.S.C. § 1125(a)(2) .....................................................................................................3

Business and Professions Code § 17200 ...............................................................1, 3, 9

Business and Professions Code § 17500 .....................................................................3, 9

Business and Professions Code § 17508(a) .................................................................3, 9

**OTHER AUTHORITIES**

UNCITRAL Arb. R. Art. 6(2) (1976)................................................................................6

DLA PIPER LLP (US)
SAN DIEGO

WEST\225397853.4

-iii-
ORACLE'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
(CASE NO. 10-CV-5604-SBA)

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**     **INTRODUCTION**

3       On January 3, 2011, Defendant Myriad Group AG ("Myriad") moved this Court to

4    compel arbitration of Oracle's claims for breach of contract, trademark infringement, copyright

5    infringement, and unfair competition under California Business and Professions Code section

6    17200.  By doing so, Myriad asked this Court to resolve the dispute over the scope of the

7    arbitration clause at issue and determine which, if any, of Oracle's claims were subject to

8    arbitration.  Ultimately, in its Order Denying Defendant's Motion to Dismiss and/or Quash

9    Service of Process, and Granting in Part and Denying in Part Defendant's Alternative Motion to

10   Compel Arbitration (the "Order"), the Court held that <u>only</u> Oracle's contract claim was arbitrable

11   and that the instant litigation would proceed on Oracle's non-contract claims.

12       Two weeks before the issuance of the Order, Myriad initiated a demand for arbitration

13   before the International Centre for Dispute Resolution entitled, *In the Matter of the Arbitration*

14   *Act 1996 In the Matter of an Arbitration in London, England Under the UNCITRAL Arbitration*

15   *Rules Administered by the American Arbitration Association's International Centre for Dispute*

16   *Resolution Between Myriad Group AG and Oracle America, Inc.* (ICDR Case No. 50 117 T

17   00545 11) (the "Arbitration Demand").  In that Arbitration Demand, Myriad seeks an arbitrator's

18   determination that all of Oracle's California claims are within the scope of the arbitration

19   provision and must be arbitrated.  After this Court issued the Order, Oracle requested that Myriad

20   withdraw its Demand for Arbitration as inconsistent with the Order.  Myriad refused, claiming a

21   right to seek, in effect, a conflicting determination from an arbitrator.

22       Further, Myriad's arbitration demand also seeks in the alternative to arbitrate certain

23   claims that it has asserted against Oracle in the District of Delaware in *Myriad Group AG v.*

24   *Oracle America, Inc.*, Case No. 10-1087 (D.C. Del. Dec. 10, 2010) (the "Delaware Claims").

25   Myriad seeks to arbitrate these claims even though (1) the agreement it sues upon in Delaware

26   does not contain an arbitration provision; and (2) it has previously asserted, and apparently still

27   asserts, that its Delaware claims are <u>not related</u> to either the instant action or the Sun Community

28   Source License ("SCSL") that contains an arbitration provision and is the basis of Oracle's

1   contract claim herein.  In addition, Myriad now seeks to arbitrate its Delaware Claims

2   notwithstanding the fact that it has vigorously pursued those same claims in the Delaware

3   litigation for more than eleven months, sought (and was denied) a preliminary injunction in that

4   matter, and obtained significant discovery and documents that it likely would not be able to

5   obtain in an arbitration.

6          Under these circumstances, Oracle respectfully seeks a temporary restraining order

7   ("TRO") from the Court to preserve the status quo pending a hearing on a preliminary injunction.

8   All of the factors warranting such relief are present here:  First, Oracle is likely to succeed on the

9   merits because this Court has already determined the arbitrability of Oracle's claims and Myriad's

10  Delaware Claims—as Myriad itself contends elsewhere—are not related to the SCSL.  Second, it

11  is well-settled law that being forced to re-litigate issues already determined by a Court and being

12  forced to arbitrate claims that are not arbitrable constitutes irreparable harm.  Third, the balance

13  of equities tips in favor of Oracle because of the significant harm it would face having to re-

14  litigate issues already decided by this Court and potentially prosecute and defend claims already

15  pending in two federal courts.  A stay would not harm Myriad since it is currently pursuing its

16  Delaware Claims in the District of Delaware.  Finally, the public interest favors a stay where this

17  Court has already determined the arbitrability of Oracle's claims and Myriad's Arbitration

18  Demand constitutes little more than a collateral attack on the Order resulting from its own

19  motion.

20         Finally, Oracle respectfully requests that the Court stay that part of its Order compelling

21  the parties to initiate arbitration of Oracle's contract claim.  Myriad has appealed that part of the

22  Order denying its motion to compel as to Oracle's non-contract claims.  While Oracle believes

23  Myriad's appeal lacks merit and intends to oppose it, the appeal nevertheless creates the potential

24  for additional claims or issues to be included within the arbitration.  For that reason, it would be

25  appropriate to stay that portion of the Order pending a decision by the Ninth Circuit.

26  /////

27  /////

28  /////

1    **II.      STATEMENT OF FACTS**

2         **A.      Myriad Is Litigating Claims Against Oracle in the District of Delaware That
3                   It Now Seeks to Assert in a London Arbitration.**

4         On December 10, 2010, after Oracle had filed and served Myriad with the summons and

5    complaint in the instant action, Myriad filed a complaint against Oracle in the District of

6    Delaware.  (Declaration of Jeffrey M. Shohet, Ex. A.)  In its complaint, Myriad asserts claims

7    pursuant to an agreement not invoked by Oracle's claims in the present action, the Java

8    Specification Participation Agreement ("JSPA").  A company, organization, or individual can

9    become a member of the Java Community Process ("JCP") by entering into a JSPA with Oracle.

10   The JCP is the official organization for developing standard technical specifications for Java™

11   technology.  The JSPA sets forth rights and obligations of community members when

12   participating on the development of Java™ technology specifications in the JCP.  In its

13   complaint, Myriad alleges that Oracle has breached various provisions of the JSPA by refusing to

14   offer certain licensing terms purportedly required under the JSPA.

15        Myriad also asserts that, because of the rights it purportedly enjoys under the JSPA, it is

16   licensed to create and distribute Java™-branded software products, and that Oracle's assertions

17   otherwise constitute violations of the Lanham Act, 15 U.S.C. § 1125(a)(2), California's Business

18   and Professions Code §§ 17200, 17500, and 17508(a), and tortious interference with Myriad's

19   prospective economic advantage.  Although discovery is ongoing in the Delaware action,

20   document discovery is nearly complete, both parties have engaged in significant written

21   discovery, and Myriad has sought, but been denied, a preliminary injunction.

22        **B.      Myriad Submitted the Issue of the Arbitrability of Oracle's Claims to This
23                  Court.**

24        On January 3, 2011, in response to Oracle's complaint in the instant action, Myriad moved

25   to dismiss and/or quash service of process or, in the alternative, to stay the action and compel

26   arbitration.  (Doc. No. 18.)  As part of that motion, Myriad submitted for this Court's

27   determination the issue of the arbitrability of Oracle's four pending claims against it for

28   (1) breach of contract; (2) trademark infringement; (3) copyright infringement; and (4) violation

1    of California's Unfair Competition Law.

2           Myriad's motion requested an order compelling arbitration as to the scope of the

3    arbitration provision contained within the parties' SCSL, an issue that Myriad has now submitted

4    to arbitration.  In particular, Myriad's brief stated:  "Under these circumstances, the scope of the

5    arbitration clause—i.e., the question of which claims are subject to arbitration and which (if any)

6    might be litigated—must be decided by the Arbitral Tribunal and not the Court.  Thus, as a

7    threshold matter the Court must stay this litigation and compel arbitration in order to permit the

8    arbitrator to decide the scope of the arbitration agreement."  (Mot. to Compel Arbitration [Doc.

9    No. 18] at 13:11-16.)  Myriad's brief further argued, in the alternative, that "[e]ven if the parties

10   had not incorporated the UNCITRAL Rules into the SCSL's arbitration clause, the Court should

11   still compel arbitration. . . . Any doubts should be resolved in favor of coverage.  Because each

12   of Oracle's claims 'aris[es] out of or relat[es]' to the SCSL, see SCSL, Article 8.6(a), the

13   arbitration clause applies to the instant dispute by its plain terms."  (*Id*. at 15:10-18.)  Briefing

14   was completed on March 22, 2011.

15          **C.      Seven Months Later, Myriad Reversed Course and Submitted the Issue of the**
             **Arbitrability of Oracle's Claims to a London Arbitration, and Seeks to**
16           **Include its Delaware Claims As Well.**

17          On or about August 15, 2011, shortly before this Court issued its ruling on Myriad's

18   motion to compel arbitration, Myriad commenced an arbitration before the International Centre

19   for Dispute Resolution.  (Shohet Decl., Ex. B.)  In its demand, Myriad seeks an award:

20          (1)     declaring that the claims Oracle has brought in the California Court
                    are subject to arbitration pursuant to the SCSL;
21
22          (2)     declaring that the claims Myriad has brought [in the District of
                    Delaware] are separate and distinct and are not subject to the arbitrator's
23                  jurisdiction;

24          (3)     or, in the alternative, if the parties' claims are the "mirror image" of
                    each other, then both parties' claims are subject to arbitration under the
25                  SCSL and that Myriad is entitled to damages and other relief; and

26          (4)     Costs, and any other relief that may be necessary or appropriate.

27   (*Id*. at 9-10.)  Thus, seven months after having submitted the issue of arbitrability to this Court,

28   Myriad submitted the same issue for an arbitrator's determination.  Further, even though Oracle

agrees with Myriad that Myriad's Delaware Claims are not subject to mandatory arbitration under the SCSL, Myriad seeks to have those claims arbitrated as well and has refused to dismiss any portion of its Arbitration Demand.

Moreover, the SCSL provides that any arbitration shall be venued in either London, Tokyo, or San Francisco, "whichever is closest to the defendant's principal business place." (SCSL, attached as Ex. D to Shohet Decl., ¶ 8.6(b).)  Because Oracle is the "defendant" or respondent to Myriad's arbitration demand, Myriad should have commenced its Arbitration in San Francisco, within the jurisdiction of this Court for confirmation of any award resulting from the arbitration.  But the Arbitration Demand claims that Myriad should be treated as the defendant even though it initiated the Arbitration and even though it seeks to have its own affirmative claims heard by the arbitral tribunal.  (Arbitration Demand [Shohet Decl, Ex. B] at 8.)

### D.     This Court's September 1, 2011 Order.

On September 1, 2011, this Court issued its Order Denying Defendant's Motion to Dismiss and/or Quash Service of Process, and Granting in Part and Denying in Part Defendant's Alternative Motion to Compel Arbitration (the "Order").  (Doc. No. 42.)  In its Order, the Court correctly noted that the scope of an arbitration provision is an issue to be determined by the court unless the agreement "clearly and unmistakably" provides otherwise. (*Id.* at 8:24-9:3 (*citing Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) and other authorities).)  The Court found that, contrary to Myriad's contentions otherwise, the SCSL did not clearly and unmistakably grant an arbitral body exclusive authority to determine the scope of the arbitration provision and, therefore, such authority remains with the Court.  (Order at 9:4-20.)

The Court further determined that even though the arbitration agreement is to be broadly construed, the non-contract claims were expressly excluded under the intellectual property "carve-out" provisions and, alternatively, fall within the express exception for disputes relating to "compliance with the TCK license."  (*Id.* at 10:24-12:13.)  Ultimately, the Court granted Myriad's motion to compel arbitration solely as to the breach of contract claim and denied it as to "all other claims."  (*Id.* at 12:25-26.)

/////

1        **E.        Myriad Rejected Oracle's Request to Withdraw Its Arbitration Demand.**

2              Following the Court's Order, Oracle requested that Myriad dismiss or stay its pending

3    arbitration.  (Shohet Decl. ¶ 6, Ex. E.)  After repeated requests, on September 26, 2011, Myriad

4    responded that it would not dismiss its demand for arbitration.  Among other arguments in

5    support of its refusal, Myriad argued that the Order held that the arbitrator's jurisdiction to

6    determine the arbitrability issue was "concurrent" with the Court's.  (Shohet Decl. ¶ 7, Ex. F.)

7    That is, Myriad contended that despite the Court's decision limiting the scope of the arbitration

8    clause to only Oracle's breach of contact claim—an issue *Myriad* submitted to the Court for

9    determination—Myriad could seek a different ruling from an arbitrator because an arbitrator

10   would have "concurrent" jurisdiction over the issue of arbitrability.  Of course, as explained in

11   more detail below, concurrent jurisdiction means that either tribunal could consider and resolve

12   the issue in the first instance.  However, once submitted to the court for resolution (and here

13   actually resolved by the Court), that court retains jurisdiction to the exclusion of all other

14   tribunals and another tribunal may be restrained from proceeding.  Myriad also noted that it had

15   appealed the Court's ruling on the arbitrability issue, somehow implying that the appeal validated

16   its collateral attack on the order in an arbitration.

17             Finally, Myriad contended that the Order did not contemplate a stay of the Myriad

18   Arbitration, but acknowledged that the Court may not have been cognizant of the Myriad

19   Arbitration at the time it issued its Order.  For that reason, Myriad was agreeable to a temporary

20   abatement of proceedings in the Myriad Arbitration until the parties completed the November 3,

21   2011 mandatory settlement conference ordered by the Court.

22             The dispute did not resolve at the conference.  On November 4, 2011, Myriad re-initiated

23   the proceedings on its arbitration demand by designating a proposed candidate to serve as the

24   arbitrator.  (Shohet Decl., ¶ 10.)  Doing so triggered a thirty-day period for Oracle to agree or

25   propose an alternative arbitrator.  If it does not do so, under the UNCITRAL rules, Myriad may

26   then ask the Secretary-General of the Permanent Court of Arbitration at The Hague to empanel an

27   arbitrator and commence arbitration proceedings on all of Oracle's California claims and

28   potentially Myriad's Delaware claims as well.  UNCITRAL Arb. R. Art. 6(2) (1976).

**III.   THE STANDARDS FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF STRONGLY FAVOR GRANTING ORACLE RELIEF IN THIS CASE**

Plaintiff Oracle seeks a TRO, and ultimately a preliminary injunction, restraining and enjoining Myriad from proceeding with its Arbitration Demand.  Oracle satisfies each requirement for such injunctive relief.  The purpose of temporary injunctive relief is to preserve the status quo until a court determines the underlying action on its merits.  *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1998).  The standard for a TRO is the same as for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, the moving party must show:  (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A court may apply a sliding scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Here, as discussed in detail below, all of the factors that a court must consider in granting preliminary relief favor Oracle.

**A.   Oracle Is Likely to Succeed on the Merits.**

**1.   With Respect to Oracle's California Claims, Oracle Is Likely to Succeed on the Merits Because This Court Has Already Determined the Arbitrability of Those Claims.**

As noted in Section II.C, above, Myriad seeks an arbitrator's award, in part, declaring that all of the claims Oracle has brought in the instant action are subject to arbitration pursuant to the SCSL.  Myriad submitted the same issue to this Court in its alternative motion to compel arbitration, and this Court resolved that issue in its September 1, 2011 Order.  There, the Court held that only Oracle's breach of contract claim was arbitrable and found Oracle's non-contract claims to be within the exceptions to the SCSL's arbitration provision.  Myriad's Arbitration Demand seeks yet another bite at the apple notwithstanding the Court's lawful Order which Myriad is challenging on appeal to the Ninth Circuit.  In similar circumstances, federal courts

-7-

1   have enjoined parties seeking to arbitrate issues and disputes already determined by a court. *See*

2   *Bear, Stearns & Co., Inc. v. Lavin*, Civil Action No. 92-6785, 1993 WL 56061, at *2-4 (E.D. Pa.

3   Mar. 1, 1993) (issuing injunction where party demanding arbitration sought to relitigate issues

4   already determined by the court); *Innovative Medical Systems, Inc. v. Augustine Medical Inc.*,

5   Civil Action No. 04-4705, 2007 WL 3121033, at *3 (D. Minn. 2007) ("The Court's power to

6   enjoin relitigation extends to relitigation in state courts and in other forums, including

7   arbitration.").

8          As noted above, Myriad contends that because an arbitrator has "concurrent jurisdiction"

9   to determine the arbitrability of claims relating to the SCSL, Myriad may now seek to have the

10  arbitrator assert jurisdiction over Oracle's non-contract claims.  (Shohet Decl. ¶ 7, Ex. F.)  And

11  Myriad contends that it may do so despite this Court's ruling and its appeal from the ruling on the

12  arbitrability of the California claims.  But "concurrent jurisdiction" simply means that either the

13  Court or an arbitrator could consider and resolve the issue in the first instance.  It does not mean

14  that having submitted the issue to the Court for resolution, Myriad could seek a different ruling

15  from an arbitrator.  *See Smith v. McIver*, 22 U.S. 532, 535 (1824) ("In all cases of concurrent

16  jurisdiction, the Court which first has possession of the subject must decide it.") (J. Marshall);

17  *Scott v. Industrial Acc. Comm'n*, 46 Cal. 2d 76, 81 (1956) ("When two or more tribunals in this

18  state have concurrent jurisdiction, the tribunal first assuming jurisdiction retains it to the

19  exclusion of all other tribunals in which the action might have been initiated.  Thereafter another

20  tribunal, although it might have originally taken jurisdiction, may be restrained by prohibition if it

21  attempts to proceed.")

22         Moreover, Oracle selected this Court as the forum for the resolution of its claims.  By

23  filing a motion to compel arbitration, Myriad tendered the issue of arbitrability to this Court as a

24  defense.  It is well-settled that even if Oracle had not already commenced its action in this Court,

25  Myriad would not be able to preempt Oracle's forum selection by filing a declaratory relief action

26  on the issue of arbitrability in another forum with concurrent jurisdiction.  The right to choose the

27  forum for the litigation of a claim as between alternative forums or venues with concurrent

28  jurisdiction belongs primarily to the claimant.  The defendant may not displace that decision by

-8-

1    raising its defense in the form of a declaratory relief action in an alternative forum.  *See First*

2    *Fishery Dev. Serv., Inc. v. Lane Labs USA, Inc.*, Civil Action No. 97-1069-R, 1997 WL 579165,

3    at *3-4 (S.D. Cal. July 21, 1997) (citing strong public policy against declaratory judgment actions

4    filed in attempt to displace true plaintiff's choice of forum); *BASF Corp. v. Symington*, 50 F.3d

5    555, 559 (8th Cir. 1995) ("[W]here a declaratory plaintiff raises chiefly an affirmative defense,

6    and it appears that granting relief could effectively deny an allegedly injured party its otherwise

7    legitimate choice of the forum and time for suit, no declaratory judgment should issue.").

8                    **2.     With Respect to Myriad's Delaware Claims, Oracle Is Likely to
                              Succeed on the Merits Because Myriad Contends That Those Claims**
9                    **Do Not Arise Out of or Relate to the SCSL.**

10           In its Arbitration Demand, Myriad seeks an award "declaring that the claims Myriad has

11   brought [in the Delaware action] are separate and distinct and are not subject to the arbitrator's

12   jurisdiction."  (Arbitration Demand [Shohet Decl., Ex. B] at 9.)  As an <u>alternative</u> award,

13   Myriad's demand seeks a declaration that "if the parties' claims are the 'mirror image' of each

14   other, then both parties' claims are subject to arbitration under the SCSL."  (*Id.* at 10.)  As an

15   initial matter, Oracle agrees with Myriad that the claims Myriad has asserted in Delaware are

16   separate and distinct from the legal claims Oracle is asserting in this action, and that they are not

17   subject to mandatory arbitration under the SCSL.  In fact, Oracle so stipulated in its response to

18   the Arbitration Demand.  (Shohet Decl., ¶ 8, Ex. G at ¶ 21.)  On the basis of that stipulation,

19   Oracle separately requested that Myriad withdraw its demand for inclusion of the Delaware

20   claims in its arbitration.  Myriad refused that request.  (Shohet Decl., ¶ 9, Ex. H.)

21           In the Delaware action, Myriad asserts claims for (1) breach of contract; (2) violation of

22   the Lanham Act; (3) tortious interference with prospective economic advantage, and (4) violation

23   of California Business and Professions Code sections 17200, 17500, and 17508(a).  But its breach

24   of contract claim is not based upon the SCSL, which forms the basis for Oracle's breach of

25   contract claim asserted in this action.  Rather, Myriad alleges that Oracle has breached the JSPA.

26   In its Arbitration Demand, Myriad acknowledges that it "has initiated a separate lawsuit, pursuant

27   to a separate agreement [from the SCSL] <u>that does not contain an arbitration clause</u>, against

28   Oracle in the United States District Court for the District of Delaware . . . ."  (Arbitration Demand

-9-

1   [Shohet Decl., Ex. B] at 1 (emphasis added).)

2        In fact, nowhere in its Delaware complaint does Myriad even mention its commercial

3   licenses with Oracle.  (Shohet Decl., Ex. A.)  The premise of Myriad's position in the parties'

4   business dispute is that Myriad should be permitted to sell its Java™ implementations under

5   terms it contends the JSPA obligates Oracle to provide, and that it should ***not*** be compelled to

6   honor the terms of the SCSLs.  Myriad's legal claims arise out of the attempt to negate the

7   applicability of everything in the SCSL save its arbitration clause.  Moreover, Myriad recently

8   described its position on the "relatedness" of its claims to the SCSL as follows in briefing

9   submitted to the Delaware Court:

10         The California and Delaware proceedings are not "mirror images" of one another,
           but rather concern distinct claims arising under different contracts.  Myriad's
11         claims are based on Oracle's grant to Myriad of licenses to Oracle's and other
           cross-licensees' intellectual property ("IP") related to the Java language for free
12         or on fair, reasonable, and non-discriminatory terms under the Java Specification
           Participation Agreement ("JSPA"), which does not contain an arbitration clause.
13         Oracle's California claims against Myriad are based on the allegation that Myriad
           has not complied with the SCSL, under which Myriad is allegedly required to pay
14         high fees for different Oracle software products that Myriad neither wants nor
           needs.  As discussed above, these claims are subject to the SCSL's arbitration
15         clause.  Myriad did not need or want to enter into the SCSL, and has not used the
           Oracle software products provided under it.  Myriad is developing a different
16         product under a different contractual framework.  The products and the terms of
           the contracts are distinct.
17

18   (Myriad Opp'n to Mot. to Amend [Shohet Decl., Ex. C] at 4-5.)  Myriad should be estopped from

19   seeking to arbitrate its claims where it has consistently taken the position that those claims are

20   separate and distinct from Oracle's.

21              **3.     Alternatively, With Respect to Myriad's Delaware Claims, Oracle Is
                         Likely to Succeed on the Merits Because Myriad Has Waived Its Right**
22              **to Arbitrate Its Claims by Proceeding to Litigate Them in Delaware.**

23        Even if Myriad's Delaware claims were subject to the SCSL's arbitration clause, Myriad

24   has waived any right to arbitrate those claims now.  The party asserting waiver of a contractual

25   right to arbitrate, here Oracle, has the burden of proof, and must demonstrate:  (1) knowledge of

26   an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3)

27   prejudice to the party opposing arbitration resulting from such inconsistent acts.  *Hoffman Constr.*

28   *Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th. Cir. 1992).  Here, the

-10-

1  evidence establishes each of these elements.

2      First, Myriad cannot credibly claim to have been unaware of the arbitration provision in

3  question or any purported right to arbitrate under that provision before initiating the Delaware

4  litigation in December 2010.  Myriad invoked the arbitration provision in its alternative motion to

5  compel arbitration of Oracle's claims in the instant action on January 3, 2011, less than a month

6  after having filed its complaint in the District of Delaware.

7      Second, Myriad has taken acts inconsistent with its purported right to arbitrate its

8  Delaware claims by pursuing those claims in Delaware, and continuing to pursue them even after

9  having filed its Arbitration Demand on August 15, 2011.  Although filing a complaint alone may

10  not waive the right to pursue arbitration, intentionally electing a judicial forum rather than an

11  arbitral forum is "an important factor of the district court's waiver inquiry."  *See Iowa Grain Co.,*

12  *v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999).  Continuing to litigate those claims, even after

13  initiating arbitration, is also inconsistent with its purported right to arbitrate those claims.

14      Third, Myriad's inconsistent acts will have prejudiced Oracle if Myriad is now permitted

15  to arbitrate its Delaware claims.  Through the Delaware litigation, Myriad has been able to

16  demand, and has received, burdensome discovery, including third party discovery, that it would

17  not have been able to obtain under the limited discovery provisions within the arbitration clause

18  and the applicable UNCITRAL rules.  Courts have found such conduct to constitute a clear

19  waiver of a contractual right to arbitrate.  *See, e.g., Caribbean Ins. Svcs., Inc. v. Am. Bankers Life*

20  *Assurance Co. of Florida*, 715 F.2d 17, 19 (1st Cir. 1983) (finding waiver where party obtained

21  extensive discovery on an accelerated schedule adopted at its urging and six months later sought

22  to compel arbitration); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F. Supp. 834, 835

23  (E.D. Pa. 1996) (finding waiver after a seven-month delay when extensive discovery had taken

24  place).  Myriad has subjected Oracle to extensive document demands and written discovery, and

25  Oracle has produced more than 450,000 pages of documents in response to those demands.

26      Thus, Myriad knew of its claimed right to compel arbitration, but acted and continues to

27  act inconsistently with that right, prejudicing Oracle if it is now permitted to arbitrate its

28  Delaware claims.  For these reasons, it has waived any such right it might otherwise have had.

-11-

**B.**     **Oracle Will Suffer Irreparable Harm If Myriad Is Not Temporarily Enjoined from Proceeding with Its Arbitration Demand.**

Absent a TRO, Oracle will likely be irreparably harmed by having to relitigate issues this Court has already decided. *See Trs. of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009) (finding irreparable harm where "there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already decided in federal court"); *In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996) (finding that the cost of relitigation constitutes irreparable harm).

As noted, federal courts have also found irreparable harm where a party seeks to relitigate issues in an arbitration that have already been determined by a court, and have enjoined the party seeking arbitration on that basis. *Bear, Stearns & Co., Inc.*, 1993 WL 56061 at *2-4 (finding irreparable harm and issuing injunction where party demanding arbitration sought to relitigate issues already determined by court); *Innovative Medical Systems, Inc.*, 2007 WL 3121033 at *3 (finding irreparable harm where arbitration would require relitigation of dismissed claims).

The potential for irreparable harm here is particularly acute where the arbitrator's decision on its own jurisdiction would be subject to very limited judicial review and potentially no review by this Court since Myriad has improperly initiated its arbitration in London. *See Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 12-13 (1992) (noting that limited grounds for judicial review reflects that arbitrators ordinarily need not follow the law and may base their decisions on "broad principles of justice and equity . . . paths neither marked nor traceable by judicial review"). Under the SCSL arbitration clause, San Francisco is the proper forum for an arbitration initiated by Myriad against Oracle.

Moreover, an arbitrator may conclude that it is not bound by this Court's prior Order or the decision of the Ninth Circuit.  Although it ought not to do so, Oracle is aware of nothing that would prevent an arbitrator located in London from simply ignoring this Court's lawful ruling and determining that it has jurisdiction to re-evaluate and reach inconsistent determinations on all of the claims placed before it by Myriad.  Its decision could then be confirmed by a foreign court that could disregard comity.

1    Furthermore, courts have repeatedly confirmed that the time and resources spent

2    defending an arbitration are not compensable by a monetary award.  *See, e.g., Maryland Ca. Co.*

3    *v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984-85 (2d Cir. 1997) ("Although an

4    injury that is adequately compensated by a monetary award is not considered 'irreparable,' . . .

5    here the time and resources [plaintiff] would expend in arbitration is not compensable by any

6    monetary award of attorneys' fees or damages pursuant to the provisions of the Agreement or the

7    Arbitration Act."); *see also Wachovia Securities, LLC v. Raifman*, Civil Action No. 10-04573,

8    2010 WL 4502360, at *10 (N.D. Cal., Nov. 1, 2010) (J. Armstrong) (finding irreparable harm

9    absent stay of arbitration); *Brookstreet Securities Corp. v. Bristol Air, Inc.*, Civil Action No. 02-

10   0863, Slip Op. at 11 (N.D. Cal., August 5, 2002) (Illston, J.) (finding that a party will suffer

11   irreparable harm if arbitration is not stayed); *Goldman Sachs & Co. v. Becker*, Civil Action No.

12   07-01599, 2007 WL 1982790 at *5 (N.D. Cal. 2007).  For this additional reason, Oracle will

13   suffer irreparable harm unless Myriad is enjoined.

14   The risk that Oracle could be forced to arbitrate in London claims it never agreed to

15   arbitrate anywhere likewise constitutes irreparable harm.  *See Textile Unlimited, Inc. v. A..BMH*

16   *and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (finding irreparable harm and affirming issuance

17   of injunction where party would be required to submit to arbitration a contractual dispute that it

18   had never agreed to arbitrate).  For this and the above reasons, if Myriad is not restrained and

19   enjoined from proceeding with its Arbitration Demand, Oracle will likely suffer irreparable harm.

20   **C.**   **The Balance of Equities Tips Sharply in Favor of Oracle.**

21   While Oracle will suffer irreparable harm in the absence of a TRO, Myriad, on the other

22   hand, is not likely to suffer any harm if the Court temporarily restrains and enjoins it from

23   proceeding with its Arbitration Demand.  Myriad waited seven months after the lawsuits began to

24   initiate arbitration.  An incremental delay to preserve the status quo pending a hearing on Oracle's

25   motion for a preliminary injunction is immaterial by comparison.

26   Nor would a permanent injunction cause Myriad irreparable harm.  With respect to

27   Myriad's request that an arbitrator determine the arbitrability of Oracle's California claims, this

28   Court has already decided that issue.  Thus, Myriad would suffer no harm from being

1    permanently enjoined and restrained from proceeding as to that issue.

2            With respect to its request that an arbitrator determine that "the claims Myriad has brought

3    [in the Delaware action] are separate and distinct and are not subject to the arbitrator's

4    jurisdiction," Oracle agrees and stipulates to that determination.  (Shohet Decl., ¶ 8, Ex. G at ¶

5    21.)  Thus, Myriad would suffer no harm from being enjoined and restrained from proceeding as

6    to that issue.  Logically, a determination (or stipulation) that Myriad's Delaware claims are "not

7    subject to the arbitrator's jurisdiction" forecloses Myriad's alternative request that "if the parties

8    claims are the 'mirror image' of each other, then both parties' claims are subject to arbitration

9    under the SCSL and that Myriad is entitled to damages and other relief."

10            More importantly, however, Myriad would suffer no harm in being enjoined and

11    restrained from proceeding on its Delaware claims in a London arbitration because it is currently

12    pursuing those same claims in the District of Delaware.

13        **D.      The Public Interest Favors Oracle's Request for a Temporary Restraining
                    Order.**

14

15            An injunction is in the public interest for at least two important reasons.  First, the public

16    interest in sound administration of the law and judicial economy favors granting relief.  *See, e.g.*,

17    *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983)

18    (stating that "[o]ne advantage of dispensing injunctive relief against relitigation [is] . . . the

19    preservation of judicial resources."); *U.S. v. Int'l Bhd. of Teamsters*, 728 F. Supp. 1032, 1048

20    (S.D.N.Y. 1990) ("judicial economy demands that similar issues not be litigated multiple times in

21    different jurisdictions and weigh toward issuing this injunction.").

22            Second, while federal policy favors arbitration, "[o]ne of the threads running through

23    federal arbitration jurisprudence is the notion that 'arbitration is a matter of contract and a party

24    cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"

25    *Textile Unlimited*, 240 F.3d at 787 (citing *AT&T Techs., Inc. v. Communications Workers*, 476

26    U.S. 643, 648 (1986)).  Here, Oracle did not agree to arbitrate Myriad's Delaware claims.  Nor, as

27    the Court has already found, did it agree to arbitrate its non-contract California claims.

28    Permitting Myriad to flout this Court's determination by proceeding with its arbitration could

-14-

1    chill the willingness of parties to agree to limited arbitration clauses with express exclusions such

2    as those in the SCSL and would violate the important public policy against requiring a party to

3    arbitrate a dispute it has not agreed to submit to arbitration.

4    **IV.   THE COURT SHOULD STAY ENFORCEMENT OF ITS ORDER DIRECTING
         ORACLE TO INITIATE ARBITRATION PROCEEDINGS ON ITS BREACH OF
5         CONTRACT CLAIM AND STAY MYRIAD'S ARBITRATION DEMAND
         PENDING MYRIAD'S APPEAL.**
6

7         In light of Myriad's pending appeal before the Ninth Circuit, Oracle respectfully requests

8    that the Court stay that portion of its Order compelling the parties to initiate arbitration

9    proceedings on Oracle's contract claim.  A stay is appropriate where Myriad's pending appeal,

10   although meritless, creates some uncertainty as to the claims that must ultimately be arbitrated.

11   For these same reasons, if the Court does not enjoin and restrain Myriad from pursuing its

12   Arbitration Demand on any of the grounds stated above, Oracle respectfully requests that

13   Myriad's Arbitration likewise be stayed and that Myriad be enjoined and restrained from pursuing

14   its Arbitration Demand pending its appeal.  If a stay of arbitration is granted, Oracle will

15   withdraw its opposition to Myriad's motion to stay the litigation pending resolution of the appeal.

16   Oracle respectfully submits that either the litigation and arbitration should both be stayed or

17   should both proceed pending the Ninth Circuit's decision.

18   **V.    CONCLUSION**

19        For the reasons set forth above, Oracle respectfully requests that the Court (1) issue a

20   temporary restraining order restraining and enjoining Myriad from proceeding with its Arbitration

21   Demand; (2) issue an order to show cause why a preliminary injunction should not issue; and (3)

22   stay that part of the Court's Order directing Oracle to initiate arbitration of its breach of contract

23   claim pending resolution of Myriad's appeal.

24   Dated:  November 29, 2011                          DLA PIPER LLP (US)

25

26                                                  By /s/ Jeffrey M. Shohet
                                                        JEFFREY M. SHOHET
27                                                      Attorney for Plaintiff
                                                        Oracle America, Inc.
28