UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MYRIAD GROUP AG,<br><br>Defendant. | Case No: C 10-05604 SBA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Dkt. 59, 64 |

The instant action arises from a software licensing dispute between Plaintiff Oracle America, Inc. ("Oracle") and Defendant Myriad Group AG ("Myriad"). The Court has original jurisdiction based on Oracle's federal claims for trademark and copyright infringement. 28 U.S.C. § 1331. The parties are presently before the Court on: (1) Oracle's motion for preliminary injunction; and (2) Myriad's motion for stay pending appeal. Dkt. 46, 59. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Oracle's motion for preliminary injunction. The Court requires supplemental briefing on Myriad's motion for stay and therefore defers ruling on said motion at this time. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

The parties are familiar with the facts of this case which are summarized herein only to the extent they are relevant to the instant motions. In 2002, Oracle, through its predecessor Sun Microsystems, Inc. ("Sun"), agreed to license its Java technology and trademarks to Myriad, through its predecessor Esmertec AG ("Esmertec"). The parties' agreement was memorialized in a Community Source License ("Source License"), a license for a Technology Compatibility Kit ("TCK"), as well as related agreements.[1] The Source License contains an arbitration clause which states, in relevant part, as follows:

> a) Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, <u>except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your compliance with the TCK license</u>. Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and the United States. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such award.

Source License § 8.6(a), Shohet Decl. Ex. D, Dkt. 59-5 (emphasis added). The arbitration clause further specifies that "[u]nless otherwise agreed, arbitration venue shall be in London, Tokyo, or San Francisco, whichever is closest to defendant's principal place of business." <u>Id.</u> § 8.6(b).

One of the conditions of the Source License was that Esmertec enter into and maintain a separate support agreement, known as a Master Services Agreement, with Sun. Between 2002 and 2009, Sun and Esmertec (and later, Myriad) entered into a series of additional Source Licenses and other agreements. According to Oracle, Myriad's Master Services Agreement expired on June 29, 2010, but Myriad continued to use Java and

---

[1] The TCK is a suite of tests, tools and documentation to determine whether the third party's software complies with the specification, and therefore, qualifies for implementation. 9/1/11 Order at 2-3, Dkt. 42. The right of a third party to use the Java logo is dependent upon the product having passed the applicable TCK. <u>Id.</u>

Oracle's trademarks without authorization, and refused to pay royalties for such use. After settlement discussions between the parties broke down, Oracle filed the instant action against Myriad in this Court on December 10, 2010. Dkt. 1. The Complaint alleges four claims for relief, as follows: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (2) copyright infringement, 17 U.S.C. § 101, et seq.; (3) breach of contract; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Hours later after Oracle filed suit, Myriad commenced a separate action against Oracle in the District of Delaware. Myriad Grp. A.G. v. Oracle Am., Inc., No. 10-1087 (D. Del., filed Dec. 10, 2010), Shohet Decl. Ex. A, Dkt. 33-1. Myriad seeks a declaratory judgment that it has royalty-free access to Oracle's TCKs and therefore is not obligated to pay any licensing fees to Oracle. Id.

In response to Oracle's Complaint, Myriad filed a motion to compel arbitration of all claims alleged in the pleadings. Dkt. 18. Before obtaining a ruling on its motion, on August 15, 2011, Myriad submitted a Demand for Arbitration with the International Centre for Dispute Resolution ("IDR") with respect to the claims alleged by Plaintiff in this action. Shohet Decl. ¶ 4 & Ex. B, Dkt. 59-1, 59-3. Approximately two weeks later, on September 1, 2011, the Court issued its ruling on Defendant's pending motion to compel arbitration. 9/1/11 Order, Dkt. 42. First, the Court found that it—not the arbitrator—decides whether Oracle's claims are arbitrable. Id. at 8-9. Second, the Court concluded that Oracle's intellectual property claims were outside the scope of the arbitration clause set forth in § 8.6 of the Source Agreement. Id. at 10-12. Thus, the Court granted Myriad's motion to compel arbitration as to Oracle's contract claim only, and denied the motion in all other respects. Id. at 12.[2] In addition, the Court referred the parties to a magistrate judge for a mandatory settlement conference, and stayed the action in the interim. Id. at 12. On September 12, 2011, Myriad filed a Notice of Appeal from the Court's ruling and, in

---

[2] Oracle did not dispute that its contract claim was subject to the arbitration clause contained in the Source License.

1 violation of the stay and without first meeting and conferring with Oracle, filed a Motion
2 for Stay Pending Appeal. Dkt. 45, 46.
3   The settlement conference took place on November 3, 2011 before Magistrate
4 Judge Laporte, but the case did not settle. Dkt. 57. The next day on November 4, 2011,
5 Myriad, over Oracle's objection, reinitiated the arbitration proceeding before the IDR by
6 designating a proposed arbitrator, thereby triggering a thirty-day period for Plaintiff to
7 agree or propose an alternate arbitrator. Shohet Decl. ¶ 10. Myriad's efforts to proceed
8 with the arbitration prompted Oracle to file an ex parte motion for TRO and order to show
9 cause regarding preliminary injunction. Dkt. 59. In its motion, Oracle seeks to enjoin
10 Myriad from proceeding with the arbitration before the IDR. Id. On December 1, 2011,
11 the Court denied Oracle's application for a TRO and directed the parties to brief Oracle's
12 request as a motion for preliminary injunction. Dkt. 60. That motion, as well as Myriad's
13 motion for stay pending appeal have been fully briefed and discussed in turn.

## II. DISCUSSION

### A. JURISDICTION

Before addressing the merits of Oracle's motion, the Court must address the threshold question of whether Myriad's appeal of the Court Order of September 1, 2011 divests the Court of jurisdiction to consider Oracle's motion for preliminary injunction. It is well settled that "[o]nce a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed." Natural Res. Def. Council, Inc. v. Southwest Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001) (citing Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982)). However, "[t]he principle of exclusive appellate jurisdiction is not . . . absolute" and "[t]he district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo." Id.

Myriad claims that the IDR arbitration commenced on August 15, 2011, when a Demand for Arbitration was made, and therefore, the proposed injunction will impermissibly alter the status quo by enjoining an ongoing proceeding. Opp'n at 6-7, Dkt. 62. As support, Myriad points to Article 3(2) of the 1976 UNCITRAL rules, which

provides that "[a]rbitral proceedings shall be deemed to commence on the date on which the notice of arbitration is received by the respondent."[3] The flaw in Myriad's argument is that it elevates form over substance. Aside from Myriad's decision to file a demand for arbitration, no substantive proceedings in the arbitration have occurred. No arbitrator or venue for the arbitration has been selected, no briefs or evidence has been submitted and no scheduling order has been issued. Given the embryonic stage of the IDR proceeding, the Court finds that the injunction requested by Oracle will not alter the status quo. The Court concludes that it has jurisdiction to consider the instant motion, and now turns to whether Oracle has carried its burden of demonstrating that an injunction preventing Myriad from proceeding with the IDR arbitration.

## B. AUTHORITY TO ENJOIN THE ARBITRATION

A federal court has the discretion to enter an anti-suit injunction enjoining parties before it from proceeding with a parallel action in a foreign country "in circumstances that are unjust." E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 989 (9th Cir. 2006) ("Gallo"). In considering a motion to enjoin a party from pursuing a foreign proceeding, the traditional test for a preliminary injunction is inapt. Id. at 990-991. Instead, the Ninth Circuit has directed district courts to consider: "(1) whether or not the parties and the issues are the same, and whether or not the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the forum issuing the injunction; and (3) whether the impact on comity would be tolerable." Applied Med. Distrib. Corp. v. Surgical Co. BV, 587 F.3d 909, 913 (9th Cir. 2009) (citing Gallo, 446 F.3d at 991, 994). The power to issue a foreign anti-suit injunction should be "used sparingly." Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855 (9th Cir. 1981). The injunction operates *in personam*; in other words, the court enjoins the litigants, not the foreign tribunal. Gallo, 446 F.3d at 989.

---

[3] The 1976 UNCITRAL Rules are available at the following URL: http://case.uncitral.org/uncitral/en/uncitral_texts/arbitration/1976Arbitration_rules.html (last visited Dec. 22, 2011).

- 5 -

**1**  **C.  APPLICATION OF THE GALLO FACTORS**

**2**  **1.  Relationship Between This Action and the Arbitration**

The first inquiry under the Gallo test addresses the relationship between the federal court action and the foreign proceeding. See Applied Med. Distrib. Corp., 587 F.3d at 915. Where, as here, the parties in the two actions are the same, the related questions of whether "the issues are the same" and whether "the domestic action is dispositive of the foreign action" collapse into one. Id. Thus, "the crux of the functional inquiry in the first step of the analysis is to determine whether the issues are the same in the sense that all the issues in the foreign action . . . can be resolved in the local action." Id.

Here, there is no dispute between the parties that the claims presented by Myriad in the IDR arbitration are identical to those being presented in this lawsuit. However, Myriad also seeks to have the IDR address the claims from the Delaware action which allegedly are the "mirror image" of this action. Opp'n at 12-14. While there appears to be significant overlap between the actions, it is not entirely clear that the resolution of this action necessarily will encompass all of the claims and issues in the Delaware action.[4] Accordingly, the first prong of the Gallo test is met only insofar as Oracle seeks to enjoin Myriad from arbitrating the claims alleged herein which the Court previously ruled are outside of the subject arbitration clause.

**2.  Policy of this Forum**

"The second step in deciding if an anti-suit injunction is appropriate is determining if the continuation of the foreign litigation would frustrate a policy of the forum issuing the injunction." Applied Med. Distrib. Corp., 587 F.3d at 918 (internal quotation marks omitted). Though not entirely clear, Oracle appears to argue that permitting Myriad to pursue arbitration of claims which this Court already ruled are not arbitrable contravenes

---

[4] The parties' dispute over whether the Court has jurisdiction over the Delaware claims is misplaced, as the injunction sought by Oracle does not seek to prevent the Delaware court from adjudicating the claims before it. Nonetheless, the matter of whether Myriad should be enjoined from pursuing arbitration of its claims in the Delaware action is a matter best decided by the Delaware district court.

1  the federal policy against piecemeal and duplicative litigation, forum shopping and
2  inconsistent rulings.  See Goss Int'l Corp. v. Man Roland Druckmaschinen
3  Aktiengesellschaft, 491 F.3d 355, 360 (8th Cir. 2007) (noting that anti-suit injunctions are
4  permissible "to prevent duplicative and vexatious foreign litigation and to avoid
5  inconsistent judgments"); see also Seattle Totems Hockey Club, 652 F.2d at 856 (finding
6  that "separate adjudications" in American and Canadian courts "could result in inconsistent
7  rulings or even a race to judgment").
8       Myriad disputes that it is seeking a contradictory ruling on the issue of arbitrability
9  from the arbitrator and claims that the Court previously found that the arbitrator has
10 "concurrent jurisdiction" to consider whether Oracle's non-contract claims are arbitrable.
11 Opp'n at 8.  A fortiori, Myriad argues, there is nothing improper in having this action and
12 the arbitration proceed simultaneously and for the arbitrator to consider the arbitrability
13 issue anew.  Id. at 9-10.  The flaw in Myriad's argument is that it misconstrues the Court's
14 prior ruling.  The threshold issue presented in Myriad's motion to compel arbitration was
15 who decides arbitrability:  the Court or the arbitrator.  The Supreme Court has repeatedly
16 held that the Federal Arbitration Act contains a general presumption that arbitrability
17 should be decided by the court unless there is evidence that "clearly and unmistakably"
18 demonstrates the parties' intent to have the arbitrator decide arbitrability.  Howsam v. Dean
19 Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); First Options of Chicago, Inc. v. Kaplan,
20 514 U.S. 938, 943 (1995).  Myriad argued that the arbitration clause in the Source License
21 incorporated the UNCITRAL rules, the 2010 version of which provide that "[t]he arbitral
22 tribunal shall have the power to rule on its own jurisdiction, including any objections with
23 respect to the existence or validity of the arbitration agreement."   UNCITRAL Arb. R. Art.
24 23(1) (2010), Dkt. 18.  According to Myriad, this provision established that the arbitrator,
25 not the court, decides whether claims are arbitrable.  Id.  The Court, however, concluded
26 that the general incorporation of UNCITRAL rules did not clearly and unmistakably
27 evidence the parties' mutual intent to have the arbitrator determine arbitrability.  9/1/11
28 Order at 8-9.

1 Despite Myriad's suggestion to the contrary, the Court did not find that both it and
2 the arbitrator could independently and simultaneously decide arbitrability. Id.  Nor would
3 such a finding make logical sense in light of the plain language of the arbitration clause.
4 Section 8.6(a) of the Source License explicitly provides that "[a]ny dispute" relating to
5 Oracle's intellectual property rights or a licensee's compliance with Oracle's TCK license
6 may be brought "in a court of competent jurisdiction (which jurisdiction shall be
7 exclusive)."  (Emphasis added).  The clear intent of this provision is to establish either
8 party's contractual right to file a lawsuit in a court where Oracle's intellectual property
9 rights or compliance with its TCK license are at issue.  Moreover, the provision that the
10 court in which such action is filed shall have "exclusive" jurisdiction evinces the parties'
11 intent to vest that court with the sole authority to determine whether those claims may be
12 litigated in court or are subject to arbitration.  Certainly, had the parties—who expressly
13 agreed to keep certain claims exclusively judicial—intended to divest the courts of
14 authority to decide arbitrability, they would have done so explicitly. See Bridge Fund
15 Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1000 (9th Cir. 2010) ("The
16 arbitrability of a particular dispute is a threshold issue to be decided by the courts, unless
17 that issue is explicitly assigned to the arbitrator") (emphasis added).

18 Myriad's attempt to have the arbitrator decide arbitrability and arbitrate claims
19 which this Court has previously ruled are not arbitrable is little more than a thinly veiled
20 attempt to take a second bite at the apple.  Having moved to compel arbitration and lost,
21 Myriad's remedy is to appeal, see 9 U.S.C. § 16(a)(1)(B), not simultaneously seek a
22 different ruling from the arbitrator.  Thus, under the particular facts of this case, the Court
23 finds that Myriad's efforts to proceed with the arbitration before the IDR frustrate and
24 contravene the policy against avoiding inconsistent judgments, forum shopping and
25 engaging in duplicative and vexatious litigation. See Applied Med. Distrib. Corp., 587
26 F.3d at 918.

27
28

### 3. Comity

"The third step in deciding if an anti-suit injunction is appropriate is determining whether the impact on comity would be tolerable." Id. at 919 (internal quotations omitted). The Court agrees with Oracle that international comity concerns are not implicated under the facts presented. In Gallo, the Ninth Circuit held that a contractual dispute does "not implicate comity at all" where "private parties have previously agreed to litigate their disputes in a certain forum." 446 F.3d at 994. The same holds true in this case. Much like Gallo, the parties are private entities which agreed that either party could bring any intellectual property and TCK license disputes in a "court of competent jurisdiction," and that such court would have "exclusive" jurisdiction over the matter. Source License § 8.6(a) (emphasis added). The parties' express agreement to litigate such claims in a court obviates any impact on international comity. See Gallo, 446 F.3d at 994 ("The case before us deals with enforcing a contract and giving effect to substantive rights. This in no way breaches norms of comity."); Applied Med. Distrib. Corp., 587 F.3d at 919 ("enjoining [defendant]'s subsequently-filed foreign suit which contravenes the Agreement's forum selection clause, a fortiori, does not implicate comity.").

Myriad contends, without any meaningful elaboration, that enjoining it from proceeding further with the arbitration will encroach upon the deference to "the English legal system." Opp'n at 12. Myriad's purported comity concerns are perplexing, given that the arbitration is pending before the IDR, not an English court. And although Myriad has requested that the arbitration take place in London, it is questionable whether such request is proper. The arbitration clause specifies that "[u]nless otherwise agreed, arbitration venue shall be in London, Tokyo, or San Francisco, whichever is closest to defendant's principal place of business." Source License § 8.6(b). Since Myriad is the claimant in the arbitration proceeding, the proper venue for any arbitration is San Francisco, which is the city closest

to Oracle's principal place of business.[5] Moreover, irrespective of where the arbitration is venued, the arbitrator is obligated under the terms of the arbitration clause to apply "the substantive laws of California and the United States." Source License § 8.6(a). In short, the impact of an anti-suit injunction on international comity, if any, will be negligible.

### *a)* *Conclusion*

Each of the three considerations set forth in <u>Gallo</u> weigh in favor of enjoining Myriad from proceeding further with the arbitration of the claims alleged in this action. This Court has already ruled that Oracle's non-contract claims are not arbitrable. Myriad's attempt to relitigate that determination before the arbitrator is improper and wasteful. The Court therefore grants Oracle's request to enjoin Myriad from proceeding further with its Demand for Arbitration with respect to the claims alleged in this lawsuit.

### D. REQUEST TO STAY ARBITRATION OF CONTRACT CLAIM AND MYRIAD'S MOTION FOR STAY PENDING APPEAL

The final issue presented in Oracle's motion is its request to stay the portion of the Court's September 1, 2011 Order compelling arbitration as to Oracle's claim for breach of contract. Mot. at 15. Oracle contends that Myriad's appeal of the Court's decision to deny its motion to compel arbitration has "create[d] some uncertainty as to the claims that must ultimately be arbitrated." <u>Id.</u> Thus, Oracle contends that rather than risk the potentially piecemeal arbitration of its claims, the better course of action is to hold the arbitration of all Oracle's claims in abeyance pending the Ninth Circuit's consideration of Myriad's appeal. <u>Id.</u> To that end, Oracle states that "[i]f a stay of arbitration is granted, Oracle will withdraw its opposition to Myriad's motion to stay the litigation pending resolution of the appeal." <u>Id.</u> The Court concurs that the interests of judicial economy support Oracle's proposal to stay the arbitration of contract claim until such time as the Court of Appeal resolves

---

[5] In its unauthorized surreply, Myriad asserts that "the arbitration will almost certainly not take place in San Francisco" because under UNCITRAL rules it is "unlikely" that the IDR will select a seat of arbitration in the home country of either party. Surreply at 1-2. Myriad's speculation regarding what the IDR may decide cannot be reconciled with the plain language of the Source License, which plainly directs that San Francisco is the appropriate venue for the arbitration.

Myriad's appeal. See Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936) (the power to stay proceedings is "incidental to the power inherent in every court to manage the schedule of cases on its docket to ensure fair and efficient adjudication."); Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir.1990) (district court has the discretion to stay an action pending the appeal of an order denying a motion to compel arbitration).

The above notwithstanding, the Court notes that Oracle's proposal appears to assume that the Court will enjoin Myriad from proceeding with the arbitration in its entirety. As set forth above, the Court is enjoining Myriad from seeking to arbitrate Oracle's claims in this action only. The Court is not enjoining Myriad from pursuing the arbitration with respect to claims presented in the Delaware action, since it is more appropriate for the Delaware district court to make such a determination. Accordingly, the Court, at this juncture, declines to rule on Oracle's request to stay the arbitration of its contract claim and Myriad's motion for stay pending appeal. As set forth below, the Court directs the parties to meet and confer on these remaining issues.

### III.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.   Oracle's motion for preliminary injunction is GRANTED. Myriad is hereby enjoined from proceeding with its arbitration demand before the International Centre for Dispute Resolution entitled, In the Matter of the Arbitration Act 1996 In the Matter of an Arbitration in London, England Under the UNCITRAL Arbitration Rules Administered by the American Arbitration Association's International Centre for Dispute Resolution Between Myriad Group AG and Oracle America, Inc. (ICDR Case No. 50 117 T 00545 11) and must take all necessary measures to abate those proceedings insofar as they seek to adjudicate any claims or issues presented in the instant action, except as to Oracle's claim for breach of contract, pending further order of this Court.

2.	The parties shall meet and confer regarding a stay of the instant action and the arbitration of Oracle's breach of contract claim.  If the parties are able to reach an agreement on such a stay, the parties shall submit a stipulation and proposed order to the Court.  If no agreement is reached, each party shall simultaneously submit a supplemental memorandum, not to exceed five (5) pages stating their position with respect to Myriad's motion for stay and Oracle's request to stay the arbitration of its breach contract claim.  The stipulation or supplemental briefs shall be filed within ten (10) days of the date this Order is filed.

3.	This Order terminates Docket 64.

IT IS SO ORDERED.

Dated:  January 17, 2012

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge